IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
2009 JAN 13 P 4: 52
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| THE SCOOTER STORE, INC. | § | |
| | § | |
| Plaintiff | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| SPINLIFE.COM, LLC | § | |
| | § | |
| Defendant. | § | |

SA09CA0033 FB

**ORIGINAL COMPLAINT**

**I.
PARTIES**

1.  Plaintiff, The Scooter Store, Inc. is a Texas corporation having its principal place of business in Comal County, Texas, the Western District of Texas, San Antonio Division.

2.  Plaintiff is informed and believes that Defendant, SpinLife.com LLC, is an Ohio corporation having its principal place of business in Columbus, Ohio.

**II.
JURISDICTION**

3.  Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, and 15 U.S.C. § 1121.

4.  The amount in controversy exceeds the minimal jurisdictional requirements.

5.  Venue is proper in this District pursuant to 28 U.S.C. § 1391.

6.  This Court has personal jurisdiction over the Defendant since Defendant has sufficient minimum contact with this State and, in particular, this Judicial District, and maintenance of the suit in this Judicial District does not offend traditional notions of fair play and substantial justice. Defendant is offering to sell and is selling goods and services in Texas and same are the subject of Plaintiff's allegations set forth herein.

7.  Plaintiff's claims arise in this Judicial District.

8. This Court has pendant jurisdiction over all of the claims asserted herein, these claims being necessarily determinable together with the federal claims.

### III.
### FACTS

A. **PLAINTIFF THE SCOOTER STORE, INC.**

9. Doug Harrison established The Scooter Store, Inc. in 1991 to help people with limited mobility lead more active lives. Due to the hard work of Mr. Harrison and The Scooter Store, Inc.'s thousands of dedicated employees, The Scooter Store, Inc. has above-industry average customer satisfaction indexes, and The Scooter Store, Inc. has grown into the nation's leading provider of insurance claims processing for and delivery of power mobility equipment (power chairs, lift chairs, motorized scooters). Part of its success is due to The Scooter Store, Inc. deliberately making its THE SCOOTER STORE trade name and trademark into a nationally known brand. The Scooter Store, Inc. accomplished this by extensively advertising THE SCOOTER STORE mark in its direct communications with prospective and actual customers; using it on delivery vehicles; using it in direct mail advertisements, other print advertisements and promotions; on power mobility equipment; using it on internet and T.V. advertising; and in connection with its public service projects and donations. The Scooter Store, Inc. does business through numerous store-front facilities identified by a THE SCOOTER STORE marquee, and through The Scooter Store, Inc.'s internet domain name www.thescooterstore.com, which incorporates its THE SCOOTER STORE mark. **(Exhibit A)**. The Scooter Store, Inc. has helped over 350,000 mobility-impaired persons regain a measure of their lost freedom of mobility.

10. The Scooter Store, Inc. currently does more insurance claims processing for power mobility equipment and delivers more power mobility equipment to mobility impaired persons in the United States in association with its THE SCOOTER STORE mark than any competitor selling such goods and services.

2

11. To average mobility impaired customers and prospective customers in the United States for insurance claims processing for power mobility equipment and delivery of power mobility equipment, The Scooter Store, Inc.'s THE SCOOTER STORE mark identifies and distinguishes The Scooter Store, Inc.'s business and such goods and services from competitive businesses, goods, and services.

12. The Scooter Store, Inc.'s investment and effort over many years to associate its THE SCOOTER STORE mark with its business, goods, and services has made its THE SCOOTER STORE mark an asset of substantial value as the public symbol of The Scooter Store, Inc.'s business, goods, and services.

13. Maintaining its THE SCOOTER STORE MARK AND brand is important to The Scooter Store, Inc.'s future success.

14. The Scooter Store, Inc. or its related companies own the following federal trademark registrations, among others (**Exhibit B**):

| TRADEMARK | REGISTRATION/ SERIAL NO. |
|---|---|
| THE SCOOTER STORE | Registration No. 2,710,502 |
| THE SCOOTER STORE & Design | Registration No. 2,714,979 |
| THE SCOOTER STORE (Stylized) | Registration No. 2,912,774 |
| THE SCOOTER STORE & Design | Registration No. 3,017,227 |

15. These registrations are each for the "insurance claims processing for others;" "maintenance and repair services for wheelchairs, power chairs, lift chairs and motorized scooters;" and "delivery of wheelchairs, power chairs, lift chairs and motorized scooters" lines of commerce.

16. These registrations are each on the Principal Register of the United States Trademark Office. These registrations give The Scooter Store, Inc. the *prima facie* exclusive right to use the registered THE SCOOTER STORE marks for the recitation goods and services.

17. Registration Nos. 2,710,502 and 2,714,979 are additionally "incontestable" registrations.

18. Title 15, United States Code, Section 1065 makes incontestable federal registrations more powerful than regular federal registrations.

> To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, <u>the registration shall be **conclusive evidence**</u> of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and <u>of the registrant's **exclusive right** to use the registered mark in commerce</u>. [Emphasis added.]

19. Title 15, United States Code, Section 1114(1) makes unauthorized use of The Scooter Store Inc.'s THE SCOOTER STORE federally registered marks in a way likely to cause confusion or to cause mistake unlawful.

20. Title 15, United States Code, Section 1125(a), makes unauthorized use of The Scooter Store, Inc.'s THE SCOOTER STORE mark in a way likely to cause confusion or to cause mistake unlawful.

B. **DEFENDANT SPINLIFE.COM, LLC**

21. Defendant is an Ohio Limited Liability Company. Defendant was formed on or about 1999.

22. Defendant's scooter goods and services are offered and sold in an area of its internet website located at www.spinlife.com/category.cfm?categoryID=4. **(Exhibit C)**. Defendant offers and sells scooter goods and services in competition with The Scooter Store, Inc.'s scooter goods and services.

23. On information and belief, Defendant did not use THE SCOOTER STORE as a trademark to identify insurance claims processing for others; maintenance and repair services for

4

wheelchairs, power chairs, lift chairs and motorized scooters; or delivery of wheelchairs, power chairs, lift chairs and motorized scooters prior to The Scooter Store, Inc.'s claimed 1991 date of use of THE SCOOTER STORE as a trademark to identify such goods and services.

24. On information and belief, Defendant has no right to use THE SCOOTER STORE mark as a trademark which Defendant acquired from any third party, whether by license, assignment, transfer, or otherwise, which gives Defendant any relevant THE SCOOTER STORE trademark use priority rights to a date prior to Defendant's formation.

25. On information and belief, Defendant has no right to use THE SCOOTER STORE mark as a trademark which Defendant acquired from any third party, whether by license, assignment, transfer, or otherwise, which gives Defendant any relevant THE SCOOTER STORE trademark use rights.

26. On information and belief, Defendant's right to use THE SCOOTER STORE as a trademark to identify insurance claims processing for others; maintenance and repair services for wheelchairs, power chairs, lift chairs and motorized scooters; or delivery of wheelchairs, power chairs, lift chairs and motorized scooters, if any, is legally inferior to The Scooter Store, Inc.'s right to exclusively use THE SCOOTER STORE as a trademark to identify such goods and services.

C. **THE DISPUTE'S FACTS**

27. Internet search engines such as Google sell keywords for use in advertising.

28. Google describes its sale of keywords as an advertising tool as follows: "Once you activate your account, your ads would be eligible to appear. That is, the AdWords system would constantly seek out search queries related to the keywords you've selected, then display your ads to highly targeted audiences. In short, you'd be advertising directly to an audience already looking for you." [Google, AdWords Help, Lesson 1a, Emphasis added.]

5

29. Defendant sometimes uses the term "The Scooter Store" to attract the attention of prospective customers to Defendant's business.

30. Defendant has purchased "the scooter store" as a paid keyword for use on one or more internet search engines, such as Google. (**Exhibit D**).

31. When an internet user searches for "the scooter store" in Google, advertisements created by Defendant sometimes appears in a Google Sponsored Links advertising box located above or to the side of Google's search results. (**Exhibit E**).

32. Defendant created one of the Google Sponsored Links advertisements shown in **Exhibit E**.

33. In Defendant's Google Sponsored Links advertisement in **Exhibit E**, Defendant's name is <u>not</u> stated in the Identification Headline for Defendant's advertisement to be "SpinLife."

34. On the Google Sponsored Links advertisement of **Exhibit E**, Defendant's Identification Headline for Defendant's advertisement appears as "The Scooter Store."

35. Persons who click on Defendant's "The Scooter Store" Identification Headline of **Exhibit E** are directed to Defendant's website of **Exhibit C**.

36. The term "The Scooter Store" in Defendant's Identification Headline of the Google Sponsored Links advertisement of **Exhibit E** is used in a place and manner to identify Defendant's business.

37. The term "The Scooter Store" in the Identification Headline of **Exhibit E** identifies Defendant's business offered through Defendant's website of **Exhibit C**.

38. The term "The Scooter Store" in Defendant's Identification Headline of the Google Sponsored Links advertisement of **Exhibit E** is used in a place and manager to distinguish Defendant's business from competitive businesses.

6

39. There are ways of identifying Defendant's business in Defendant's Identification Headline for Defendant's advertisement of **Exhibit E** other than "The Scooter Store."

40. Google's Sponsored Links advertising box, such as shown on **Exhibit E**, displays advertisements of paid advertisers before Google's natural search results responsive to the user's entry of the user's search term for a Google search.

41. Due to Defendant's purchase of "the scooter store" as a keyword, when internet users enter The Scooter Store, Inc.'s "THE SCOOTER STORE" mark into at least one online search engine, such as Google, the users are sometimes directed to Defendant's Sponsored Links advertisement, and some such users then access Defendant's website.

42. The presentation of "The Scooter Store" in the Google Sponsored Link advertisement of **Exhibit E** is likely to cause at least some persons seeking the Scooter Store, Inc.'s THE SCOOTER STORE to be confused into believing there is a sponsorship, connection, or affiliation between Defendant's "The Scooter Store" advertisement and The Scooter Store, Inc.'s THE SCOOTER STORE business.

43. In the top center area of Defendant's http://www.spinlife.com/category.cfm?categoryID=4 website, the term "the Mobility Scooter Store" is displayed. (**Exhibit C**).

44. The term "the Mobility Scooter Store" as displayed at http://www.spinlife.com/category.cfm?categoryID=4 (**Exhibit C**) identifies Defendant's business.

45. The term "the Mobility Scooter Store" displayed on Defendant's website http://www.spinlife.com/category.cfm?categoryID=4 is not used as part of a sentence describing Defendant's business. (**Exhibit C**).

7

46. The term "the Mobility Scooter Store" in the top center area of Defendant's website of **Exhibit C**, identifies Defendant's business offered through that website.

47. Internet websites sometimes use meta tags, including meta descriptions and meta keywords, in the HTML code to convey meta information about their websites. Some search engines use meta descriptions to describe websites in search results. Some search engines use meta keywords to locate for rank websites in the search results.

48. Defendant's website http://www.spinlife.com/category.cfm?categoryID=4 (**Exhibit C**) uses a meta description in the HTML code. (**Exhibit F**).

49. Defendant's meta description for its website of Exhibit F includes in part:

> Free Shipping on our large selection of Mobility Scooters at <u>the Scooter Store</u>. Shop Electric Scooter brands including Pride Mobility, Golden Technologies, and more.

(**Exhibit F**) (emphasis added).

50. Google's search result description of Defendant's website states in part:

> Free Shipping on our large selection of Mobility Scooters at <u>the Scooter Store</u>. Shop Electric Scooter brands including Pride Mobility, Golden Technologies, ...

(**Exhibit E**) (emphasis added).

51. Google uses at least "the Scooter Store" _____ of Defendant's meta description to describe Defendant's website http://www.spinlife.com/category.cfm?categoryID=4 in Google search result display. (**Exhibit E**).

52. The term "the Scooter Store" in Defendant's meta description of **Exhibit F** is used in a place and manner to identify Defendant's business.

53. There are ways of identifying Defendant's business in Defendant's meta description of **Exhibit F** other than "the Scooter Store."

8

54. When internet users search for The Scooter Store, Inc.'s "THE SCOOTER STORE" in an online search engine, at least one search engine (Google) displays to users Defendant's meta description with "the Scooter Store." (**Exhibit E**).

55. The presentation of "the Scooter Store" in Google's search result description of **Exhibit E** is likely to cause at least some persons seeking the Scooter Store, Inc.'s THE SCOOTER STORE to be confused into believing there is a sponsorship, connection, or affiliation between Defendant's "the Scooter Store" and The Scooter Store, Inc.'s THE SCOOTER STORE business.

56. Defendant's website http://www.spinlife.com/category.cfm?categoryID=4 (**Exhibit C**) uses meta keywords in the HTML code. (**Exhibit F**).

57. Defendant's meta keywords include the term "Scooter Store."

58. Some search engines use the "Scooter Store" meta keyword to locate and rank Defendant's website http://www.spinlife.com/category.cfm?categoryID=4.

59. Defendant pays Google for use of "the scooter store" as a search keyword for Google's "Sponsored Links" advertising.

60. On information and belief, Defendant pays Google per click when a unique internet user clicks Defendant's Sponsored Links advertisement found within the Google Sponsored Link's advertising site shown on **Exhibit E**.

61. On information and belief, Defendant pays Google per click when an internet user searches for "the scooter store" and then clicks Defendant's Sponsored Links advertisement found within the Google Sponsored Link's advertising site shown on **Exhibit E**.

62. Defendant is using the "the scooter store" as a keyword to attract prospective customers seeking "the scooter store."

9

63. Defendant's use of "the scooter store" as a keyword is likely to attract at least some persons seeking "the scooter store."

64. Defendant's use of "the scooter store" as a keyword is likely to attract at least some persons seeking THE SCOOTER STORE.

65. Defendant's use of "the scooter store" as a keyword is likely to attract at least some persons seeking The Scooter Store, Inc.'s THE SCOOTER STORE.

66. Defendant purchased "the scooter store" as a search keyword to obtain initial interest from prospective customers, at least some of whom are likely searching for The Scooter Store, Inc.

67. Defendant knew of The Scooter Store, Inc.'s use of THE SCOOTER STORE as a trademark before Defendant purchased use of "the scooter store" as a keyword.

68. Defendant knowingly purchased "the scooter store" as a search keyword to obtain initial interest from prospective customers searching for The Scooter Store, Inc.'s THE SCOOTER STORE website.

69. On information and belief, Defendant intentionally purchased the "the scooter store" keyword to trade on the public recognition The Scooter Store, Inc. has established in The Scooter Store, Inc.'s THE SCOOTER STORE mark.

70. Defendant purchased and is using "the scooter store" as a keyword in online advertising to compete with The Scooter Store, Inc.

71. Google's description of its keyword advertising quoted above states in part, "You'd be advertising directly to an audience already looking for you." Defendant's "the scooter store" keyword is advertising directly to an audience, at least some of whose members are looking for THE SCOOTER STORE.

72. Defendant's use of "the scooter store" is likely to initially confuse at least some persons familiar with THE SCOOTER STORE business, goods and services into believing that there is some sponsorship, connection or affiliation with THE SCOOTER STORE business, goods, and services.

73. Defendant's use of the "the scooter store" in the same line of commerce in which The Scooter Store, Inc. uses THE SCOOTER STORE mark is likely to cause and has caused customer confusion.

74. Defendant offers to sell, has sold, and currently sells power mobility equipment goods and services in Texas.

75. Defendant offers to sell, has sold, and currently sells power mobility equipment goods and services in Texas due to sales through Defendant's http://www.spinlife.com/category.cfm?categoryID=4 website.

76. Defendant has sold and currently sells power mobility equipment goods and services in Texas due to sales through Defendant's http://www.spinlife.com/category.cfm?categoryID=4 website initiated by users who entered the site through Google's Sponsored Links advertising activated by a user searching for "the scooter store."

77. On information and belief, due to Defendant using "the scooter store" as a keyword, Defendant has sold and currently sells power mobility equipment goods and services to customers located in Texas through Defendant's http://www.spinlife.com/category.cfm?categoryID=4 website, which customers found Defendant's http://www.spinlife.com/category.cfm?categoryID=4 website by searching for "the scooter store," the customers being presented with Defendant's "The Scooter Store"

advertisement in Google's Sponsored Links, and the customers entering Defendant's http://www.spinlife.com/category.cfm?categoryID=4 website.

78. It is fair to conclude from the correspondence between Defendant's Google Sponsored Links advertisement and The Scooter Store, Inc.'s "THE SCOOTER STORE" mark that Defendant knowingly or with conscious indifference to The Scooter Store, Inc.'s rights, purchased the "the scooter store" search keyword and designed Defendant's Google Sponsored Links advertisement to be confusingly similar to The Scooter Store, Inc.'s THE SCOOTER STORE business when viewed by persons who enter "the scooter store" as a search term to locate The Scooter Store, Inc. and who then access Defendant's http://www.spinlife.com/category.cfm?categoryID=4 website.

79. On information and belief, Defendant's acts have been committed knowingly and willfully to deprive The Scooter Store, Inc. of its rights and property and with reckless disregard for the rights of The Scooter Store, Inc. The Scooter Store, Inc. was thereby injured and Defendant's acts will continue unless enjoined by this Court.

80. On information and belief, Defendant's acts have injured and are likely to injure the business reputation and to dilute the distinctive quality of The Scooter Store, Inc.'s THE SCOOTER STORE mark.

81. On information and belief, Defendant does not currently intend to cease using "the scooter store" as a search keyword or using THE SCOOTER STORE as a trademark to identify Defendant's business.

82. Unless Defendant's acts are enjoined, The Scooter Store, Inc. will suffer great, incalculable, and irreparable harm.

83. On information and belief, Defendant has been unjustly enriched due to its unlawful acts as set forth herein.

## IV.
## CAUSES OF ACTION

A. **FEDERAL UNFAIR COMPETITION.**

84. Defendant has been and is continuing to use a false description of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person and, in commercial advertising or promotion, has misrepresented and is misrepresenting the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, all in violation of 15 U.S.C. § 1125(a).

B. **STATE UNFAIR COMPETITION.**

85. Defendant's acts complained of herein comprise unfair competition against Plaintiff under the laws of the State of Texas.

C. **STATE DILUTION.**

86. Defendant's acts complained of herein dilute the distinctive quality of Plaintiff's trademark in violation of Texas Business & Commerce Code § 16.29.

D. **FEDERAL TRADEMARK INFRINGEMENT**

87. Defendant has been and is continuing to use in commerce a reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or

advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

E. **STATE TRADEMARK INFRINGEMENT.**

88. The Defendant's acts complained of herein comprise trademark infringement against Plaintiff under the laws of the State of Texas.

F. **UNJUST ENRICHMENT AND MISAPPROPRIATION**

89. Defendant's acts complained of herein have unjustly enriched Defendant and have misappropriated Plaintiff's property.

G. **PUNITIVE AND EXEMPLARY DAMAGES**

90. On information and belief, Defendant's above-described acts have been done willfully and with reckless disregard for Plaintiff's rights. Plaintiff requests punitive and exemplary damages in an amount not less than ten times Plaintiff's actual damages.

H. **DECLARATORY JUDGMENT**

91. Defendant is irrevocably committed to pursuing in the future the above-described courses of conduct to Plaintiff's great immediate and incalculable harm.

92. Plaintiff seeks declaratory judgment that Defendant's above-described courses of conduct are unlawful.

93. Plaintiff seeks permanent injunctive relief ordering the Defendant to cease the described unlawful courses of action.

## V.
## CONSOLIDATED ALLEGATIONS

94. Each of the facts alleged above is alleged with regard to each and every cause of action herein.

## VI.
## PRAYER FOR RELIEF

NOW, THEREFORE, Plaintiff prays for the following relief:

  A. A permanent injunction mandating and/or enjoining Defendant, its agents, servants, employees, attorneys, or anyone acting in concert with Defendant:

   a. from representing to anyone or committing any acts calculated to cause members of the public to believe that Defendant's goods or services have any authority, sponsorship, affiliation, or any connection with Plaintiff or Plaintiff's goods and services.

   b. from using in any manner the mark THE SCOOTER STORE or any other words similar thereto that may cause, or may be likely to cause, confusion, mistake, or deception by the public, alone or in combination with any other word or words.

   c. From unfairly competing with Plaintiff.

   d. from continuing Defendant's unlawful acts as complained of herein.

  B. Defendant be required to pay to Plaintiff such damages, together with pre-judgment interest and post-judgment interest, as Plaintiff has sustained as a consequence of Defendant's wrongful acts.

  C. Defendant be required to account for and return pay Plaintiff all monies, gains, profits, and advantages obtained by Defendant due to Defendant's wrongful acts, together with pre-judgment interest and post-judgment interest.

  D. Defendant be required to pay exemplary damages to Plaintiff in an amount at least ten times the amount of Plaintiff's actual damages plus Defendant's wrongfully-obtained profits.

  E. Defendant be required to pay to Plaintiff, Plaintiff's costs of this action, including, without limitation, Plaintiff's attorney's fees and expenses.

  F. A judgment that Defendant's courses of conduct set forth hereinabove are unlawful.

G. An award to Plaintiff for such other and further relief as this court may deem just.

## VII.
## JURY DEMAND

Plaintiff respectfully requests a trial by jury.

Respectfully submitted,

JACKSON WALKER L.L.P.
112 East Pecan Street, Suite 2400
San Antonio, Texas 78205
(210) 978-7700
(210) 978-7790 Facsimile
mmiller@jw.com

By:_____
Mark H. Miller
TSB #14099200
William B. Nash
TSB #14812200

## EXHIBITS

**Exhibit A** – The Scooter Store, Inc.'s www.thescooterstore.com Internet Home Page

**Exhibit B** – The Scooter Store, Inc.'s THE SCOOTER STORE Federal Trademark Registrations

**Exhibit C** – Defendant's http://www.spinlife.com/category.cfm?categoryID=4 Internet Website

**Exhibit D** – Defendant's paid keywords

**Exhibit E** – First page of Google search results for "the scooter store"

**Exhibit F** – First page of HTML Code for Defendant's http://www.spinlife.com/category.cfm?categoryID=4 Internet Website