**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **THE SCOOTER STORE, INC., et al.,** | **CASE NO.   2:10-CV-0018-ALM-MRA** |
| **Plaintiff,** | **JUDGE ALGENON L. MARBLEY** |
| **vs.** | **MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS** |
| **SPINLIFE.COM, LLC,** | |
| **Defendant.** | |

<u>**PLAINTIFFS' PARTIAL MOTION TO DISMISS DEFENDANT'S**</u>
<u>**FIRST AMENDED COUNTERCLAIM**</u>

Plaintiffs, The Scooter Store, Inc. and The Scooter Store, Ltd., hereby respectfully move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Counts One, II, IV and VI of Defendant's First Amended Counterclaim for failure to state claims upon which relief can be granted against Plaintiffs.[1]   The grounds for this Motion are set forth in the accompanying Memorandum in Support.

---

[1] While Defendant labels the first claim of its First Amended Counterclaim as "Count One," it labels the remaining claims of its First Amended Counterclaim with Roman numerals, and Plaintiffs will use those same labels in this Motion and Memorandum in Support.

Respectfully submitted,

_/s/ Stephen D. Jones_
Stephen D. Jones (0018066)
Jeremy S. Young (0082179)
Roetzel & Andress, LPA
155 East Broad Street, 12th Floor
Columbus, OH 43215
Telephone: 614.463.9770
Facsimile: 614.463.9792
E-mail:  sjones@ralaw.com
             jyoung@ralaw.com

Donald Scherzer (0022315)
Roetzel & Andress, LPA
1375 East Ninth Street
One Cleveland Center, Suite 900
Cleveland, OH 44114
Telephone:  216.615.7418
Facsimile:  216.623.0134
E-mail:    dscherzer@ralaw.com

_Trial Attorneys for Plaintiffs, The Scooter Store, Inc. and The Scooter Store, Ltd._

**COMBINED TABLE OF CONTENTS AND SUMMARY
PURSUANT TO LOCAL RULE 7.2(A)(3)**

I.     **INTRODUCTION** ................................................................ 1

II.    **FACTUAL AND PROCEDURAL BACKGROUND** .................................. 1

SpinLife's Amended Counterclaim is largely based upon two claims that are wholly without basis or merit, both of which fail as a matter of law – namely, SpinLife's claims that (1) TSS's trademark infringement suit against SpinLife constitutes wrongful anticompetitive conduct and (2) TSS committed fraud on the USPTO.

15 U.S.C. § 1114(1)(a)................................................................ 4

Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., 515 F. Supp. 2d 622 (N.D. Tex. 2009) ................................................................ 4

PDK Labs, Inc. v. Proactive Labs, Inc., 325 F. Supp. 2d 176 (E.D.N.Y. 2004)............... 4

III.   **LAW AND ANALYSIS** ................................................................ 5

    A.    **Fed. R. Civ. P. 12(b)(6) Standard**................................................ 5

        Summit Health, Ltd. v. Pinhas, 500 U.S. 322 (1991).............................. 5

        Craighead v. E.F. Hutton & Coe, 899 F.2d 485 (6th Cir. 1990)........................ 5

        Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) ........................................ 5-6

        Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) .............................. 5-6

        Yanacos v. Lake County, 935 F. Supp. 187 (N.D. Ohio 1996) ....................... 6

    B.    **SpinLife's Count One, alleging a Sherman Act violation, fails because a trademark infringement suit does not violate antitrust law, because SpinLife insufficiently pleads facts supporting attempts to monopolize the relevant market, and because TSS is immune to such liability.** ............... 6

        Spectrum Sports Inc. v. McQuillan, 506 U.S. 447 (1993) ........................... 7

        Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984) ................. 7

        Richter Concrete Corporation v. Hilltop Concrete Corporation, 691 F.2d 818 (6th Cir. 1982) ........................................................ 7

        United States v. Aluminum Co. of America, 148 F.2d 416 (2nd Cir. 1945).......... 7

        1.    **TSS's trademark infringement lawsuit against SpinLife does not constitute an antitrust violation.**........................................ 7

            TSS's trademark infringement suit against SpinLife is a legitimate effort to protect TSS's valid trademark rights, and as such, it is not a violation of antitrust laws.

            Amp, Inc. v. Foy, 540 F.2d 1181 (4th Cir. 1976)..................................... 7

            Application of Honeywell, Inc., 497 F.2d 1344 (C.C.P.A. 1974).......... 7-8

Weber v. National Football League, 112 F. Supp. 2d 667 (N.D. Ohio 2000) ............................................................................................. 8

Clorox Co. v. Sterling Winthrop, Inc., 117 F.3d 50 (2nd Cir. 1997) ......... 8

Drop Dead Co. v. S.C. Johnson & Son, Inc., 326 F.2d 87 (9th Cir. 1963) ....................................................................................................... 8

Car Freshener Corp. v. Auto Aid Mfg. Corp., 438 F. Supp. 82 (N.D.N.Y. 1977) ...................................................................................... 8

**2.    SpinLife fails to allege the requisite elements of its Count One attempted monopolization claim.** .......................................... 8

SpinLife has failed to sufficiently allege any of the following requisite elements of its attempted monopolization claim: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed to accomplish an unlawful purpose; and (3) a dangerous probability of success.

Spectrum Sports Inc. v. McQuillan, 506 U.S. 447 (1993) ......................... 8

Tarrant Service Agency, Inc. v. American Standard, Inc., 12 F.3d 609 (6th Cir. 1993) ...................................................................................... 8

**a.    SpinLife has not sufficiently alleged that TSS possessed the specific intent to monopolize.** ...................................................... 9

TSS's efforts to protect its trademark rights by filing its trademark infringement suit against SpinLife constitute legitimate business practices from which specific intent to monopolize cannot be inferred.

United States v. Empire Gas Corporation, 537 F.2d 296 (8th Cir. 1976) ........................................................................................... 9

United States v. Du Pont & Co., 351 U.S. 377 (1956) ................... 9

White and White, Inc. v. American Hospital Supply Corp., 723 F.2d 495 (6th Cir. 1983) ........................................ 9-10

Times-Picayune Publishing Co. v. United States, 345 U.S. 594 (1953) ................................................................................ 9-10

Arthur S. Langenderfer, Inc. v. S.E. Johnson Co., 917 F.2d 1413 (6th Cir. 1990) .................................................... 9-10

Weber v. National Football League, 112 F. Supp. 2d 667 (N.D. Ohio 2000) ............................................................ 10

Clorox Co. v. Sterling Winthrop, Inc., 117 F.3d 50 (2nd Cir. 1997) ........................................................................ 10

**b.    SpinLife has not sufficiently alleged that TSS has performed any wrongful anticompetitive conduct.** ................. 10

i. **The filing of this lawsuit does not constitute anticompetitive conduct.**................................................ 10

TSS's trademark infringement suit against SpinLife is a legitimate business practice, and it does not constitute predatory or anticompetitive conduct.

Richter Concrete Corporation v. Hilltop Concrete Corporation, 691 F.2d 818 (6th Cir. 1982) .......... 10

United States v. Aluminum Company of America, 148 F.2d 416 (2nd Cir. 1945) ................................... 10

ii. **TSS did not commit fraud on the USPTO.** .................. 11

TSS did not commit fraud on the USPTO by failing to disclose the 1995 registration of an Ohio trade name. An Ohio trade name registration confers no federal trademark rights. Moreover, the Lanham Act does not require one seeking federal registration of a mark to investigate and report all other possible users of a identical or similar mark. Additionally, TSS was the senior user of "The Scooter Store."

Brenton Production Enterprises, Inc. v. Motion Media, No. 96-6044, 1997 WL 603412 (6th Cir. Sept. 30, 1997)........................................................ 11-12

V & V Food Products, Inc. v. Cacique Cheese Co., 683 F. Supp. 662 (N.D. Ill. 1988)......................... 12-14

Whirlpool Properties, Inc. v. LG Electronics U.S.A., Inc., No. 1:03-cv-414, 2005 WL 3088339 (W.D. Mich. Nov. 17, 2005)............................... 12

15 U.S.C. § 1051(a)(1) .................................................. 12

37 C.F.R. 2.33(b) ......................................................... 12

Rosso and Mastracco, Inc. v. Giant Food Inc., 720 F.2d 1263 (Fed. Cir. 1983) ..................................... 12-13

The Money Store v. Harriscorp. Finance, Inc., 689 F.2d 666 (7th Cir. 1982)................................. 12-13

eCash Technologies, Inc. v. Guagliardo, 210 F. Supp. 2d 1138 (C.D. Cal. 2001) .............................. 12-13

Official Airline Guides, Inc. v. Churchfield Publications, Inc., 756 F. Supp. 1393 (D. Ore. 1990)............................................................... 12-13

McCarthy, TRADEMARK AND UNFAIR COMPETITION, FOURTH EDITION § 22.2................................... 12-13

iii

Purolator, Inc. v. EFRA Distributors, Inc., 687 F.2d 554 (1st Cir. 1982) ......................................... 12-13

Citibank N.A. v. Citibanc Group, Inc., 215 U.S.P.Q. 884 (N.D. Ala. 1982).......................................... 13

**c.    SpinLife has not sufficiently alleged that TSS has a dangerous probability of success.** ............................. 14

SpinLife's failure to allege any market share held by TSS precludes SpinLife from adequately alleging the requisite element of the dangerous probability of success.

Richter Concrete Corporation v. Hilltop Concrete Corporation, 691 F.2d 818 (6th Cir. 1982)...................................... 14-16

Eastman Kodak Company v. Image Technical Services, Inc., 504 U.S. 451 (1992).................................... 14-15

Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495 (1969) ..................................................................... 14

United States v. Empire Gas Corporation, 537 F.2d 296 (8th Cir. 1976) ............................................................. 15-16

American Tobacco Co. v. United States, 328 U.S. 781 (1946).... 15

Arthur S. Langenderfer, Inc. v. S.E. Johnson Co., 917 F.2d 1413 (6th Cir. 1990) ................................................. 15-16

White and White, Inc. v. American Hospital Supply Corp., 723 F.2d 495 (6th Cir. 1983)...................................... 15-16

Smith Wholesale Company, Inc. v. Phillip Morris USA, Inc., No. 05-6481, 2007 WL 614237 (6th Cir. Feb. 27, 2007) .. 16

Hennessy Industries, Inc. v. FMC Corporation, 779 F.2d 402 (7th Cir. 1985) ............................................................. 16

Sun Micro Systems, Inc. v. Versata Enterprises, Inc., 630 F. Supp. 2d 395 (D. Del. 2009) ........................................... 16

CCBN.com, Inc. v. Thomson Financial, Inc., 270 F. Supp. 2d 146 (D. Mass. 2003) ....................................................... 16

Barnes Group, Inc. v. Connell, 793 F. Supp. 1277 (D. Del. 1992) ............................................................................. 16

**3.    Under the Noerr-Pennington doctrine, TSS is immune from antitrust liability.** .................................................................. 17

Pursuant to the Noerr-Pennington doctrine and SpinLife's failure to adequately allege the sham exception thereto, TSS's filing of its trademark suit against SpinLife is immune from antitrust liability.

Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) ................................................................. 17

iv

United Mine Workers of America v. Pennington, 381 U.S. 657 (1965) .. 17

California Motor Co. v. Trucking Unlimited, 404 U.S. 508 (1972)......... 17

Hartford Life Insurance Company v. Variable Annuity Life Insurance Company, Inc., 964 F. Supp. 624 (D. Conn. 1997.) ............... 17-18

W.H. Brady Co. v. Lem Products, Inc., 659 F. Supp. 1355 (N.D. Ill. 1987).................................................................................... 17

Dell, Inc. v. 3K Computers, LLC, No. 08-80455-CIV, 2008 WL 6600766 (S.D. Fla. Oct. 7, 2008)........................................... 17-18

Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49 (1993) ........................................... 18

**C.** **Count II of SpinLife's Amended Counterclaim, unfair competition, fails to state a claim upon which relief may be granted against TSS, and therefore, it should be dismissed.**.................................................................... 19

SpinLife's unfair competition claim, which is based on TSS's filing of its trademark infringement suit against SpinLife, fails as a matter of law because that trademark infringement suit has not yet terminated. Moreover, TSS's filing of this lawsuit is an objectively reasonable exercise of its federal trademark rights, and it is not unfair competition.

Water Management, Inc. v. Stayanchi, 15 Ohio St.3d 83 (1984) ........................ 19

Henry Gehring Co. v. McCue, 23 Ohio App.3d 281 (Ohio App. 8th Dist. 1926) ........................................................................................... 19

Baxter Travenol Laboratories, Inc. v. LeMay, 536 F. Supp. 247 (S.D. Ohio 1982) ........................................................................................... 19-20

Weber v. National Football League, 112 F. Supp. 2d 667 (N.D. Ohio 2000)...... 20

**D.** **Count IV of SpinLife's Counterclaim, seeking declaratory judgment that TSS's trademarks are invalid, fails to state a claim upon which relief may be granted against TSS, and therefore, it should be dismissed.**............. 20

SpinLife's claim for a declaratory judgment as to the invalidity of the trademarks at issue fails because of SpinLife's inability to adequately allege the purported underlying fraud on the USPTO.

**E.** **Count VI of SpinLife's Amended Counterclaim seeking declaratory judgment that trademarks are unenforceable, fails to state a claim upon which relief may be granted against TSS, and therefore, it should be dismissed.**.................................................................... 21

SpinLife's claim for a declaratory judgment as to the unenforceability of the trademarks at issue fails because of SpinLife's inability to adequately allege the purported underlying fraud on the USPTO.

**IV.** **CONCLUSION** ......................................................... 21

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **THE SCOOTER STORE, INC., et al.,** | **CASE NO.   2:10-CV-0018-ALM-MRA** |
| **Plaintiff,** | **JUDGE ALGENON L. MARBLEY** |
| **vs.** | **MAGISTRATE JUDGE MARK R. ABEL** |
| **SPINLIFE.COM, LLC,** | |
| **Defendant.** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' PARTIAL MOTION TO DISMISS
DEFENDANT'S FIRST AMENDED COUNTERCLAIM**

**I.      INTRODUCTION**

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs, The Scooter Store, Inc. ("TSSI") and The

Scooter Store, Ltd. ("TSSL") (collectively referred to as "TSS"), now move this Court to dismiss

Counts One, II, IV and VI of the First Amended Counterclaim ("Amended Counterclaim") of

Defendant SpinLife.com, LLC ("SpinLife").  Counts One, II, IV and VI of SpinLife's Amended

Counterclaim fail to state claims upon which relief can be granted against TSS.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

TSS is the nation's leading provider of insurance claims, processing for and delivery of

power mobility equipment – namely, power chairs, lift chairs and motorized scooters.  (Amended

Complaint [Doc. 4] at ¶ 12.)  TSS obtained its leading position by deliberately making its "The

Scooter Store" mark and trademark into a nationally known brand to the relevant consuming public.

(Id.)  To that end, TSS and its related companies own four federal trademark registrations –

Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227 – for the "insurance claims

1

processing for others; maintenance and repair services for wheelchairs, power chairs, lift chairs and motorized scooters; delivery of wheelchairs, power chairs, lift chairs and motorized scooters" lines of commerce. (Id. at ¶¶ 17-18.)  Two of these trademarks (Registration Nos. 2,710,502 and 2,714,979) are "incontestable" under the terms of the Lanham Act. (Id. at ¶¶ 20-21.)

SpinLife offers and sells power mobility equipment and services in competition with TSS's goods and services, and in so doing, SpinLife has admittedly used "The Scooter Store" to attract the attention of the consuming public. (Id. at ¶¶ 25, 38-39; Answer [Doc. 29] at ¶¶ 38-39.)  TSS maintains that SpinLife has used "The Scooter Store" in the promotion of its goods and services in order to create confusion with TSS's protected trademarks.

TSSI sued SpinLife in the United States District Court for the Western District of Texas on January 13, 2009. See Doc. 1. With the filing of the Amended Complaint on April 23, 2009, TSSL was added as a party-Plaintiff herein.  In its Amended Complaint, TSS asserts the following causes of action against SpinLife: (1) Federal Unfair Competition; (2) State Unfair Competition (based upon Texas law); (3) State Dilution (based upon Texas law); (4) Federal Trademark Infringement; (5) State Trademark Infringement (based exclusively upon Texas law); (6) Unjust Enrichment and Misappropriation; (7) Punitive and Exemplary Damages; (8) Declaratory Judgment; and (9) Injunctive Relief.  In its Amended Complaint, TSS alleges that: SpinLife purchased the words "the scooter store," and other permutations of The Scooter Store's name, from Google AdWords, as part of a plan to pass them off and confuse TSS's customers, which constitutes actionable infringement and unfair competition; and SpinLife has conducted unauthorized and infringing actions of placing these words in meta tags on its website www.spinlife.com, and other places on the internet.

On June 26, 2009, SpinLife filed its Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue, or in the Alternative, to Transfer Venue [Doc. 9].  On December 18, 2009, the

Texas Court denied SpinLife's motion to dismiss, but transferred venue to the Southern District of Ohio based on 28 U.S.C. 1404(a).

On January 8, 2010, SpinLife filed its Answer and Counterclaim of Defendant/Counterclaim Plaintiff SpinLife.com, LLC [Doc. 29].  Then, on February 22, 2010, TSS filed its Partial Motion to Dismiss SpinLife's Counterclaim ("Partial Motion to Dismiss" [Doc. 37]), seeking dismissal of Counts One, II, IV and VI of SpinLife's Counterclaim, and its Answer to Counts III and V of SpinLife's Counterclaim [Doc. 38].  In turn, on April 15, 2010, SpinLife filed its Memorandum in Opposition to TSS's Partial Motion to Dismiss SpinLife's Counterclaim ("Memorandum in Opposition" [Doc. 52]) and its Motion for Leave to File First Amended Counterclaim, *Instanter* ("Motion for Leave" [Doc. 53]).  Since much of SpinLife's Memorandum in Opposition was improperly predicated on its proposed Amended Complaint, for which leave of Court had not yet been obtained, TSS determined not to respond to the Memorandum in Opposition, notwithstanding its legal and factual shortcomings.  Subsequently, on May 3, 2010, TSS filed its Combined Response to SpinLife's Motion for Leave to File First Amended Counterclaim and Withdrawal, Without Prejudice, of Plaintiffs' Motion to Dismiss [Doc. 58], expressing TSS's lack of opposition to SpinLife's Motion for Leave and withdrawing its Partial Motion to Dismiss, without prejudice. On May 12, 2010, the Court issued an Order granting SpinLife's Motion for Leave [Doc. 60], and the Amended Counterclaim was filed on that same date [Doc. 61].

In its Amended Counterclaim, SpinLife asserts the following counts against TSS:  (One) "Sherman Act Violation"; (II) "Ohio Unfair Competition"; (III) "Declaratory Judgment of Non-Infringement of Trademark Registration Nos. 2,710,502; 2,714,979; 2,912,774 and 3,017,227 Under The Lanham Act"; (IV) "Declaratory Judgment That U.S. Registration Nos. 2,710,502; 2,714,979; 2,912,774 and 3,017,227 Are Invalid"; (V) "Declaratory Judgment that Purchase of 'The,' 'Scooter'

3

and 'Store' Keywords And Phrases Does Not Infringe Trademark Registration Nos. 2,710,502; 2,714,979; 2,912,774 and 3,017,227"; and (VI) "Declaratory Judgment That Registration Nos. 2,710,502; 2,714,979; 2,912,774 and 3,017,227 Are Unenforceable."  As will be demonstrated herein, SpinLife's allegations and theories are legally and factually deficient, and they are nothing more than a desperate attempt to shield SpinLife from its admitted longtime use of TSS's trademarks to sell its products and services.

In its Amended Counterclaim, SpinLife relies heavily on a 2001 non-final office action by the USPTO.  SpinLife extrapolates from this inconsequential action that TSS is owed no protection for its registered trademarks.  SpinLife illogically concludes that TSS's lawsuit against SpinLife is conclusive evidence that TSS intends to monopolize the entire market in the United States and Canada for durable medical equipment including power wheelchairs and scooters.  This claim is not supported by any authority, and it is simply not the law.  Trademark infringement, as codified in the Lanham Act, is not limited to situations where the infringing mark has been used in connection with the sale of a product.  The Lanham Act imposes liability on any person who "uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a); *see also* Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., 515 F. Supp. 2d 622 (N.D. Tex. 2009); PDK Labs, Inc. v. Proactive Labs, Inc., 325 F. Supp. 2d 176, 180 (E.D.N.Y. 2004).

In its Amended Counterclaim, SpinLife also heavily relies on its baseless claim that TSS committed fraud on the United States Patent and Trademark Office ("USPTO") by failing to disclose a 1995 registration of an Ohio trade name in applying for its trademarks at issue and in subsequently applying for incontestable status for two of those trademarks.  As set forth in detail below, as a matter of law, TSS was the senior user of "The Scooter Store," and it was not obligated

4

to research and/or disclose all potential junior users.  Moreover, the law is clear that the Ohio trade name at issue conferred no federal trademark rights.  Quite simply, SpinLife cannot adequately allege the requisite elements of fraud on the USPTO, and as such, the multiple claims for relief that it has based on those allegations of fraud fail as a matter of law.

For these and other reasons, TSS seeks dismissal of Counts One, II, IV and VI of SpinLife's Amended Counterclaim for failure to state a claim upon which relief may be granted.

## III.    LAW AND ANALYSIS

### A.    Fed. R. Civ. P. 12(b)(6) Standard

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must take all well-pleaded allegations in the complaint [in this instance, the Amended Counterclaim] as true and construe those allegations in a light most favorable to the plaintiff.  *See* Summit Health, Ltd. v. Pinhas, 500 U.S. 322 (1991); Craighead v. E.F. Hutton & Coe, 899 F.2d 485, 489 (6th Cir. 1990).  However, to survive a Rule 12(b)(6) motion to dismiss, a complaint must state a "plausible claim for relief" and contain more than "an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (further citation omitted)).  A "plausible claim for relief" is one where "the plaintiff pleads ***factual content*** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citation omitted and emphasis added).  Such a claim "asks for more than a sheer possibility that a defendant has acted unlawfully," and requires more than assertion of facts "that are 'merely consistent with' a defendant's liability."   Id. (quoting Twombly, 550 U.S. at 556-57).

"In keeping with these principles," the United States Supreme Court has identified a "two-pronged approach" for courts to employ in evaluating motions to dismiss under Rule 12(b)(6). Id. at 1949-50.  As an initial matter, the plaintiff must provide the grounds of his entitlement to relief

through "more than labels and conclusions." Twombly, 550 U.S. at 555 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555). A court should therefore identify and reject legal conclusions unsupported by factual allegations because they "are not entitled to the assumption of truth." Id. at 1950. After having engaged in this vetting exercise, the court can focus on the remaining "well-pleaded factual allegations, . . . assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In short, a complaint cannot survive when it simply recites over and over again, in cookie-cutter fashion, conclusory allegations of statutory and common law violations and liability.

When deciding a motion brought pursuant to Fed. R. Civ. P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits may also be taken into account. *See* Yanacos v. Lake County, 935 F. Supp. 187, 191 (N.D. Ohio 1996). TSS respectfully incorporates by reference the parties' venue and jurisdiction briefings that were originally filed in the Western District of Texas, before this suit was transferred to this Ohio district court.

> **B.     SpinLife's Count One, alleging a Sherman Act violation, fails because a trademark infringement suit does not violate antitrust law, because SpinLife insufficiently pleads facts supporting attempts to monopolize the relevant market, and because TSS is immune to such liability.**

In Count One, SpinLife claims a Sherman Act violation because TSS filed this trademark infringement lawsuit against SpinLife, "knowing" that its registered trademarks were "limited, invalid and unenforceable."[2] (Amended Counterclaim at ¶¶ 63-86.)

---

[2] TSS notes that, in the middle of SpinLife's attempted monopolization claim, SpinLife alleges an entirely unrelated instance of supposed fraud on the USPTO. (Amended Counterclaim at ¶¶ 84-85.) Setting aside this baseless claim for fraud, which TSS will address separately in this Memorandum, the sole remaining basis for SpinLife's attempted monopolization claim is TSS's filing of the Complaint in this litigation.

"The purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market." Spectrum Sports Inc. v. McQuillan, 506 U.S. 447, 454 (1993). Section 2 of the Act prohibits monopolization and attempted monopolization, whether concerted or unilateral. *See* Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 767 (1984). Pursuant to § 2, it is unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. "In order to be found liable for attempted monopolization, a firm must possess market strength that approaches monopoly power – the ability to control prices and exclude competition." Richter Concrete Corporation v. Hilltop Concrete Corporation, 691 F.2d 818, 826 (6th Cir. 1982). A requisite element of a § 2 violation is the presence of actual or potential monopoly power, and courts have established that the degree of proof necessary to establish a § 2 violation is greater than that required under § 1. *See* United States v. Aluminum Co. of America, 148 F.2d 416, 428 (2nd Cir. 1945).

Dismissal of SpinLife's attempted monopolization claim is warranted for at least three reasons. First, filing a trademark infringement lawsuit is not a violation of antitrust laws. Second, SpinLife fails to sufficiently plead the requisite elements of its attempted monopolization claim. Third, even if SpinLife had properly pled the elements, TSS is immune from antitrust liability under the Noerr-Pennington doctrine.

### 1. TSS's trademark infringement lawsuit against SpinLife does not constitute an antitrust violation.

A trademark is not an unlawful monopoly. *See* Amp, Inc. v. Foy, 540 F.2d 1181, 1183 (4th Cir. 1976). Trademark laws were intended to protect the consuming public from deception and confusion, oftentimes resulting from imitation of the distinguishing trademarks of established

7

products, and to protect the integrity of the trademark owner's product identity. *See* Application of Honeywell, Inc., 497 F.2d 1344, 1348 (C.C.P.A. 1974). Courts have found that efforts to protect trademark rights, even those that go as far as bringing suit against a party who has allegedly infringed upon or diluted the trademark owner's rights, represent fair competition, further general trademark policies, and do not constitute violations of antitrust laws. *See* Weber v. National Football League, 112 F. Supp. 2d 667, 672-73 (N.D. Ohio 2000) (citing Clorox Co. v. Sterling Winthrop, Inc., 117 F.3d 50, 61 (2nd Cir. 1997) (noting that in almost every instance where the antitrust misuse of a trademark has been raised as a defense to infringement, it has been rejected)); Drop Dead Co. v. S.C. Johnson & Son, Inc., 326 F.2d 87, 96 (9th Cir. 1963) (holding that registering multiple marks, mass advertising, mass sales, and the bringing of infringement suits are lawful acts which constitute the sort of aggressive competition and promotion that antitrust law seeks to protect); Car Freshener Corp. v. Auto Aid Mfg. Corp., 438 F. Supp. 82, 87 (N.D.N.Y. 1977) (holding that trademark enforcement is fair and aggressive competition which does not violate antitrust laws). Therefore, SpinLife's attempted monopolization claim, which is based on TSS's filing of its trademark infringement claims in this action, fails to state a claim for relief.

### 2. SpinLife fails to allege the requisite elements of its Count One attempted monopolization claim.

A plaintiff alleging an unlawful attempt to monopolize must establish three elements: (1) a specific intent to control prices or destroy competition in some part of commerce; (2) predatory or anticompetitive conduct directed to accomplish an unlawful purpose; and (3) a dangerous probability of success. *See* Spectrum Sports, 506 U.S. at 456; *see also* Tarrant Service Agency, Inc. v. American Standard, Inc., 12 F.3d 609, 615 (6th Cir. 1993). Because SpinLife has failed to sufficiently allege *any* of the requisite elements of its attempted monopolization claim – let alone all of them – Count One must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

> **a.** **SpinLife has not sufficiently alleged that TSS possessed the specific intent to monopolize.**

"Specific intent to monopolize or to obtain monopoly power may be defined for purposes of Section 2 of the Sherman Act as intent to control prices or to restrict competition unreasonably." United States v. Empire Gas Corporation, 537 F.2d 296, 302 (8th Cir. 1976) (quoting United States v. Du Pont & Co., 351 U.S. 377, 389 (1956)). "Specific intent to monopolize may be inferred from evidence of anticompetitive conduct…but not from legitimate business practices aimed only at succeeding in competition." White and White, Inc. v. American Hospital Supply Corp., 723 F.2d 495, 507 (6th Cir. 1983) (citing Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 626 (1953)); *see also* Arthur S. Langenderfer, Inc. v. S.E. Johnson Co., 917 F.2d 1413, 1432 (6th Cir. 1990).

SpinLife alleges that TSS's filing of its purportedly baseless trademark infringement case against SpinLife evidences TSS's "specific intent to violate United States antitrust laws," and that this lawsuit, if "unchecked," would provide TSS with a monopolistic share of the relevant market. (Amended Counterclaim at ¶ 80.) However, it is undisputed that TSS ***has not sued*** any of the other five (5) competitors "in the relevant market" that SpinLife identified[3], which directly refutes SpinLife's "specific intent" allegations. (Id. at ¶ 81.)[4]

---

[3] Interestingly, while SpinLife only identified five (5) other sellers in the relevant product and geographic markets in its Amended Counterclaim, in its Answers to TSS's First Set of Interrogatories, which Answers were served on May 18, 2010, SpinLife identified an additional seven (7) internet sellers, which SpinLife failed to identify in its Amended Counterclaim. Beyond these twelve (12) internet sellers, SpinLife has not yet identified any of the actual store-based sellers in the relevant markets.

[4] SpinLife also alleges that TSS's purported preparation of 35 additional claims or complaints to serve upon other retailers somehow demonstrated anti-competitive intent and conduct. (Amended Counterclaim at ¶ 70.) However, these allegations, even if taken to be true, fall woefully short of establishing the anti-competitive intent or conduct needed for a Section 2 claim. As a preliminary matter, SpinLife does not allege that any of these purported claims or complaints were actually filed. Moreover, SpinLife does not allege that any such claim or complaint was objectively baseless or prepared in bad faith. Accordingly, these allegations fail to establish any anti-competitive intent or conduct.

Moreover, "Trademark laws were intended to protect the consuming public from deception and confusion, oftentimes resulting from imitation of the distinguishing trademarks of established products, and to protect the integrity of the trademark owner's product identity." Weber, 112 F. Supp. 2d at 672.  Accordingly, efforts to protect one's trademark rights, such as TSS's lawsuit against SpinLife, "represent fair competition, further general trademark policies, and do not constitute violations of antitrust laws." Id. (citing Clorox, 117 F.3d at 61).  Because the requisite specific intent to monopolize cannot be inferred from such legitimate business practices, SpinLife has failed to sufficiently plead facts supporting even the first element of attempted monopolization claim, and its claim should be dismissed. See id.; see also Times-Picayune, 345 U.S. at 626; Langenderfer, 917 at F.2d at 1432; White and White, 723 F.2d at 507.

> **b.**    **SpinLife has not sufficiently alleged that TSS has performed any wrongful anticompetitive conduct.**
>
> > **i.**    **The filing of this lawsuit does not constitute anticompetitive conduct.**

"Anticompetitive conduct is conduct designed to destroy competition, not just to eliminate a competitor." Richter, 691 F.2d at 823;  United States v. Aluminum Company of America, 148 F.2d 416, 430 (2nd Cir. 1945) ("The successful competitor, having been urged to compete, must not be turned upon when he wins.").  SpinLife alleges that TSS's anticompetitive conduct was the filing of its trademark suit against SpinLife as leverage to force SpinLife to stop using permutations of TSS's name in its promotional and marketing activities.  (Amended Counterclaim at ¶ 67.)[5]  SpinLife also suggests that TSS is attempting to expand its (valid) rights under its registered trademarks to eliminate any competitors' use of generically describing itself as a scooter store.  To the contrary, TSS's filing this lawsuit does not constitute anticompetitive conduct – rather, filing this suit

---

[5] To the extent that SpinLife also alleges that TSS's purported preparation of 35 additional claims or complaints to serve upon other retailers somehow constituted anti-competitive conduct, those allegations fail for the reasons set forth above in footnote 4, *supra*.

demonstrates TSS's rightful exercise of its constitutional right to seek relief from the court for protection of its trademark rights, making it immune under the Noerr-Pennington doctrine, as set forth in Section III(B)(3) of this Memorandum, *infra*.

### ii.     TSS did not commit fraud on the USPTO.

The groundless nature of SpinLife's Section 2 claim is further demonstrated by its allegation that TSS fraudulently misled the USPTO by not reporting Mr. Trautman's 1995 State of Ohio trade name registration.  (Id. at ¶¶ 84-85.)  SpinLife alleges that this purported fraud "will support an antitrust claim."  (Id. at ¶ 85.)  In fact, SpinLife bases much of its Counterclaim on its allegations of fraud – not only its Count One Sherman Act claim, but also its Count IV and VI claims for declaratory judgment regarding the purported invalidity and unenforceability of the trademarks at issue.  (Id. at ¶¶ 48-62, 84-85, 107-110, 125-128.).  Therefore, at this point, TSS will address SpinLife's oft-repeated allegations of purported misconduct before the USPTO.

As for TSS's purported misconduct, SpinLife claims that: (1) in its application for federal trademarks, TSS failed to disclose a 1995 discussion between Mr. Trautman and Doug Harrison, President and CEO of TSS, during which Mr. Trautman indicated that his company was doing business as "Ohio Mobility, The Scooter Store"; and (2) in its 2008 submissions for incontestable status for two of the trademarks at issue, TSS failed to disclose the 1995 conversation between Mr. Trautman and Mr. Harrison, certain cease and desist letters that Mr. Trautman's attorneys had sent to TSS (claiming that TSS's use of the term "The Scooter Store" was violating the Ohio trade name rights of Mr. Trautman's company) and additional information obtained in 2006 and 2008 regarding Mr. Trautman's company's use of "The Scooter Store."  (Id. at ¶¶ 48-62.)

In order to prevail on a fraudulent registration claim, the claimant must show "false representation of a material fact, knowledge of its falsity, and intent to induce reliance on the misrepresentation."  Brenton Production Enterprises, Inc. v. Motion Media, No. 96-6044, 1997 WL

603412, at *3 (6th Cir. Sept. 30, 1997).  "In order to prove fraud in the procurement of a registration, the plaintiff must prove that the applicant made knowingly false and misleading statements in the application.  Mistakes resulting from inadvertence or ignorance of the law of trademarks do not give rise to liability for fraud." Id.  Moreover, the burden of proof on a claim for fraudulent procurement is clear and convincing evidence.  *See* V & V Food Products, Inc. v. Cacique Cheese Co., 683 F. Supp. 662, 666 (N.D. Ill. 1988); Whirlpool Properties, Inc. v. LG Electronics U.S.A., Inc., No. 1:03-cv-414, 2005 WL 3088339, *25 (W.D. Mich. Nov. 17, 2005).  Both courts and commentators have criticized routine allegations of fraud by plaintiffs in trademark cases.  *See* Whirlpool Properties, 2005 WL 3088339, at *27. Here, as a matter of law, SpinLife has failed to allege fraudulent registration.

The oath made during a USPTO registration requires that an applicant aver that "no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use such mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive," 15 U.S.C. § 1051(a)(1); 37 C.F.R. 2.33(b).  However, the Lanham Act, which governs federally registered trademarks, does not obligate "one seeking federal registration of a mark to investigate and report all other possible users of an identical or confusingly similar mark." Rosso and Mastracco, Inc. v. Giant Food Inc., 720 F.2d 1263, 1265 (Fed. Cir. 1983) (quoting The Money Store v. Harriscorp. Finance, Inc., 689 F.2d 666, 670 (7th Cir. 1982)); *see also* V & V Food Products, 683 F. Supp. at 666 (citing Money Store); eCash Technologies, Inc. v. Guagliardo, 210 F. Supp. 2d 1138, 1149 (C.D. Cal. 2001) (citing Money Store); Official Airline Guides, Inc. v. Churchfield Publications, Inc., 756 F. Supp. 1393, 1399 (D. Ore. 1990) (citing Money Store).  Moreover, it is axiomatic that an Ohio trade name registration confers no federal

trademark rights. "[S]tate law cannot narrow the rights of a federal registrant or permit confusion of customers which federal law seeks to prevent." McCarthy, TRADEMARKS AND UNFAIR COMPETITION, FOURTH EDITION § 22:2 (citing Purolator, Inc. v. EFRA Distributors, Inc., 687 F.2d 554 (1st Cir. 1982)).

In this case, SpinLife cannot even adequately allege the existence of a duty to disclose. While SpinLife quotes certain language from TSS's federal trademark application, SpinLife fails to cite to the portion of the application in which TSS states use of "The Scooter Store" continuously since 1991. (Amended Counterclaim at ¶ 55.) Notably, as per SpinLife's own Amended Counterclaim, the earliest alleged use of the Ohio trade name at issue is the 1995 registration. (Id. at ¶ 48.) Under such a senior/junior user scenario – TSS being the senior user – "the failure to reveal junior users is not fraudulent." Citibank N.A. v. Citibanc Group, Inc., 215 U.S.P.Q. 884, 901 (N.D. Ala. 1982). Ordinarily, a senior user need not identify junior users in the oath underlying an application for registration. Only in the rare circumstance that another user of the same mark's rights are "clearly established" must this use be disclosed. See Rosso and Mastracco, 720 F.2d at 1266. Another user's rights may be "clearly established" by "a court decree, by…a settlement agreement, or by a [trademark] registration." Id. However, here, SpinLife has not alleged, and cannot allege, that Mr. Trautman had any such "clearly established" rights. Mr. Trautman's 1995 registration was not a federal trademark registration, but rather, a registration for an Ohio trade name that conferred no federal trademark rights.

Quite simply, even if the Ohio trade name was granted status as a trademark, Trautman was the junior user, and as such, TSS had no duty to disclose the existence of the trade name registration. See Rosso and Mastracco, 720 F.2d at 1266 ; Money Store, 689 F.2d at 671; eCash Technologies, 210 F. Supp. 2d at 1149; Official Airline Guides, 756 F. Supp. at 1399; V & V Food

Products, 683 F. Supp. at 666.  Accordingly, TSS had no duty to proactively research, locate and report the Ohio trade name upon which SpinLife bases its fraud and inequitable conduct allegations. Therefore, any alleged failure to conduct such a search does not constitute fraud and/or inequitable conduct, and SpinLife's claim for declaratory judgment on this issue must be dismissed.

Aside from failing to adequately allege even the preliminary requirement of a duty to disclose the existence of the 1995 Ohio trade name, even assuming there was such a duty, SpinLife also fails to adequately allege that TSS was even aware of the registered trade name when it applied for its federal trademarks.  While SpinLife alleges that, in 1995, Mr. Trautman told Mr. Harrison that his company was doing business as "Ohio Mobility, The Scooter Store," SpinLife does not allege, and cannot allege, that TSS was aware of the actual 1995 registration of the trade name when it applied for its trademarks.  (Amended Counterclaim at ¶ 51.)

For these reasons, SpinLife has failed to sufficiently allege that TSS committed fraud on the USPTO.  Accordingly, its allegations of purported fraud fail to support its contention of anticompetitive conduct, thereby further warranting dismissal of its Count One counterclaim.

### c.  SpinLife has not sufficiently alleged that TSS has a dangerous probability of success.

The third element of an attempt to monopolize claim is a dangerous probability of success. As the Sixth Circuit has held, "The greater a firm's market power, the greater the probability of success for monopolization.  In order to be found liable for attempted monopolization, a firm must possess market strength that approaches monopoly power – the ability to control prices and exclude competition."  Richter, 691 F.2d at 826.  The Supreme Court has defined "monopoly power" as "the ability of a single seller to raise price and restrict output."  Eastman Kodak Company v. Image Technical Services, Inc., 504 U.S. 451, 464 (1992) (quoting Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 503 (1969)).

"Proof of dangerous probability of success to monopolize must include a showing of the relevant market within which that probability occurred."  Empire Gas, 537 F.2d at 302.  The concept of the relevant market encompasses two components – the relevant product market and the relevant geographic market.  See id.  Here, SpinLife alleges that, "The relevant [product] market consists of power mobility devices, such as wheelchairs, power chairs, lift chairs, and motorized scooters which are sold at retail," and the relevant geographic market is "the United States and Canada."  (Amended Counterclaim at ¶¶ 72-73.)  Accordingly, in order to satisfy its pleading obligation with respect to the third element of its attempted monopolization claim, SpinLife must allege that TSS possessed a market strength in the power mobility device retail market in the United States and Canada that approached monopoly power, but it failed to do so.  See Richter, 691 F.2d at 826.  However, SpinLife has failed to do so.  "Market strength is often indicated by market share."  Empire Gas, 537 F.2d at 302.  The Supreme Court has found that a company's holding of a share of two-thirds of the market constitutes monopoly power.  See Eastman, 504 U.S. at 481 (citing American Tobacco Co. v. United States, 328 U.S. 781, 797 (1946)).

Here, SpinLife merely alleges, without further detail, that TSS claims to "already sell more power mobility equipment to mobility impaired persons than any competitor who sells such comparative goods and services," and that TSS "claimed to the USPTO in 2002 that persons with limited mobility have purchased hundreds of millions of dollars in goods and services offered by them."  (Amended Counterclaim at ¶ 74.)  Tellingly, SpinLife *never* alleges any specific market share held by TSS.[6]  Courts have entered judgment against plaintiffs bringing attempted monopolization claims where the alleged monopolizer's market share fell short of two-thirds of the market.  See, e.g., Langenderfer, 917 F.2d at 1431 (reversing findings in favor of claimant on an

---

[6] SpinLife's failure to provide any information with regard to the market share that it believes TSS holds continued in its Answers to TSS's First Set of Interrogatories, in which it did not provide any such information in response to TSS's request for market share percentages for all sellers within the relevant product and geographic markets.

attempted monopolization claim where the defendant's market share was, at most, around 30% and decreasing); White and White, 723 F.2d at 508 (reversing a judgment for a claimant on an attempted monopolization claim and finding that the district courts conclusion that any market share above 25% presented dangerous probability of success was untenable); Richter, 691 F.2d at 826 (affirming directed verdict in favor of defendant on attempted monopolization claim where the defendant's market share declined from approximately 40% to approximately 30% during the relevant timeframe); Empire Gas, 537 F.2d at 305 (finding that a market share of 47% to 50% alone is not sufficient to show a dangerous probability of success); Smith Wholesale Company, Inc. v. Phillip Morris USA, Inc., No. 05-6481, 2007 WL 614237, at *10 (6th Cir. Feb. 27, 2007) (affirming summary judgment for the defendant on a claim of attempted monopolization where the defendants market share was approximately 50%).

Because SpinLife has failed to allege any market share held by TSS, or any other factual allegations that would support TSS's actions as having "a dangerous probability of success," SpinLife's attempted monopolization claim must be dismissed.  *See, e.g.,* Hennessy Industries, Inc. v. FMC Corporation, 779 F.2d 402, 405 (7th Cir. 1985) (affirming dismissal of an attempted monopolization claim where the complaint did not set forth any facts from which the court could infer whether the defendants had sufficient market power to have been able to create a monopoly); *see also* Sun Micro Systems, Inc. v. Versata Enterprises, Inc., 630 F. Supp. 2d 395, 403-404 (D. Del. 2009); CCBN.com, Inc. v. Thomson Financial, Inc., 270 F. Supp. 2d 146, 157 (D. Mass. 2003); Weber, 112 F. Supp. 2d at 673-674; Barnes Group, Inc. v. Connell, 793 F. Supp. 1277, 1304-1305 (D. Del. 1992).

3.   Under the <u>Noerr-Pennington</u> doctrine, TSS is immune from antitrust liability.

Even if SpinLife's pleadings could be read to establish that TSS's lawsuit was actionable antitrust conduct, SpinLife's Sherman Act claim still fails because immunity from antitrust liability attaches to TSS's filing.  The United States Supreme Court established the <u>Noerr-Pennington</u> doctrine in three antitrust cases – <u>Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961), <u>United Mine Workers of America v. Pennington</u>, 381 U.S. 657 (1965), and <u>California Motor Co. v. Trucking Unlimited</u>, 404 U.S. 508 (1972).  *See* <u>Hartford Life Insurance Company v. Variable Annuity Life Insurance Company, Inc.</u>, 964 F. Supp. 624, 626 (D. Conn. 1997.).  The doctrine, derived from First Amendment principles guaranteeing the right to petition the government, "immunizes legislative, executive and judicial activity from antitrust liability even if the activity is designed to eliminate competition."  <u>Id.</u>  Stated otherwise, "The *Noerr-Pennington* doctrine, based on the First Amendment, immunizes from antitrust liability bona fide lobbying and litigation efforts, regardless of any anticompetitive motive behind those efforts."  <u>W.H. Brady Co. v. Lem Products, Inc.</u>, 659 F. Supp. 1355, 1371 (N.D. Ill. 1987).  Thus, "Since *Trucking Unlimited*, it has been settled that the filing of a lawsuit generally cannot expose a party to Sherman Act liability."  <u>Dell, Inc. v. 3K Computers, LLC</u>, No. 08-80455-CIV, 2008 WL 6600766, at *2 (S.D. Fla. Oct. 7, 2008).

While the <u>Noerr-Pennington</u> doctrine generally protects claimants from antitrust liability, it "does not immunize 'sham' litigation, suits brought for the purpose of harming one's competitors not by the result, but by the process of the litigation."  <u>Brady</u>, 659 F. Supp. at 1371.  Consequently, unless SpinLife can plausibly plead that TSS's lawsuit fits the limited sham exception to the <u>Noerr-Pennington</u> doctrine, TSS's lawsuit is within its constitutional right to petition, and TSS is immunized from antitrust liability on SpinLife's attempted monopolization claim.

17

In establishing a two-part definition of "sham" litigation the Supreme Court has held that:

First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merit.  If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail.  Only if challenged litigation is objectively meritless may a court examine the litigants subjective motivation.  Under the second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationship of a competitor," through the "use [of] the governmental *process* – as opposed to the *outcome* of that process – as an anticompetitive weapon."

Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60-61 (1993) (citations omitted and emphasis in the original).

Here, SpinLife cannot satisfy even the first prong of showing sham litigation.  SpinLife does not dispute that it uses TSS's registered trademarks, including "The Scooter Store," to generate business and revenues.  Because TSS may protect its trademarks through an infringement suit, an objective litigant could easily conclude "that the suit is reasonably calculated to elicit a favorable outcome."  Therefore, TSS's claims are not "objectively baseless," and its Complaint does not fit within the sham exception to the Noerr-Pennington doctrine.  *See* Dell, 2008 WL 6600766, at *2-3 (finding that the trademark owner's infringement claims did not constitute sham litigation and granting judgment on the pleadings in favor of the trademark owner on the defendant's counterclaim for attempted monopolization under the Sherman Act); *see also* Hartford Life Insurance, 964 F. Supp. at 627-628 (dismissing the defendant's attempted monopolization counterclaim against the trademark owner for failure to satisfy the sham exception to the Noerr-Pennington doctrine).

**C.      Count II of SpinLife's Amended Counterclaim, unfair competition, fails to state a claim upon which relief may be granted against TSS, and therefore, it should be dismissed.**

In Count II of its Counterclaim, SpinLife alleges a claim for "Ohio Unfair Competition." (Amended Counterclaim at ¶¶ 87-94.)  The sole basis of SpinLife's unfair competition claim is that TSS's commencement of this litigation constitutes "unfair competition against SpinLife and others."  (Id. at ¶ 91.)

"Unfair competition ordinarily consists of representations by one person, for the purpose of deceiving the public, that his goods are those of another," but the concept of unfair competition "may also extend to unfair commercial practices such as malicious litigation, circulation of false rumors, or publication of statements, all designed to harm the business of another." Water Management, Inc. v. Stayanchi, 15 Ohio St.3d 83, 85 (1984) (citing Henry Gehring Co. v. McCue, 23 Ohio App.3d 281 (Ohio App. 8th Dist. 1926)).  However, where as here, a party bases its unfair competition claim upon allegations of malicious prosecution, this Court has noted that, "Under Ohio law, it is well settled that in order to bring an action for malicious prosecution, the prosecution of a civil proceeding must be at an end and must terminate in favor of the person bringing the claim." Baxter Travenol Laboratories, Inc. v. LeMay, 536 F. Supp. 247, 248-249 (S.D. Ohio 1982). Accordingly, this Court has held that, where the litigation being sued upon has not terminated, a party cannot adequately plead an "unfair competition" claim.  Id. at 249 (granting judgment on the pleadings in favor of the plaintiffs on the defendants' counterclaims, including the defendants' counterclaim for "unfair competition").

In the case at hand, SpinLife clearly does not, and cannot, allege that the supposed malicious civil prosecution at issue – namely, TSS's filing of its claims in this case, which claims remain pending – has been terminated in its favor.  Accordingly, SpinLife has not sufficiently alleged the

requisite elements of malicious prosecution that are needed to support its Count II claim for unfair competition, and therefore, Count II must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *See* id.

Moreover, SpinLife's unfair competition claim fails for the additional reason that TSS's trademark infringement action at issue constitutes an objectively reasonable exercise of TSS's constitutional right to petition the government to protect its trademark rights, as set forth above in Section III(B)(3) of this Memorandum, *supra*.  Accordingly, TSS's initiation of the suit does not amount to unfair competition.  *See* Weber, 112 F. Supp. 2d at 672 (finding that efforts to protect one's trademark rights "represent ***fair*** competition" [emphasis added]).  To hold otherwise would contravene not only TSS's rights in its trademarks, two of which are incontestable, but also its constitutional right to petition the government.  For all of these reasons, SpinLife has failed to allege a claim for unfair competition, thereby warranting dismissal of Count II of its Counterclaim.

**D.  Count IV of SpinLife's Counterclaim, seeking declaratory judgment that TSS's trademarks are invalid, fails to state a claim upon which relief may be granted against TSS, and therefore, it should be dismissed.**

In Count IV, SpinLife seeks a declaratory judgment that TSS's trademarks are invalid due to fraud and inequitable conduct by TSS during the prosecution of the trademarks at the USPTO. (Amended Counterclaim at ¶¶ 104-115.)  Here again, SpinLife's claim of fraud and inequitable conduct is based on TSS's alleged failure to disclose Mr. Trautman's 1995 Ohio trade name registration to the USPTO during TSS's application for its trademarks at issue and during its subsequent application for incontestable status for two of those trademarks.  (Id. at ¶¶ 106-110.)  In an effort to avoid unnecessary duplication of arguments herein, TSS refers this Court to Section III(B)(2)(b)(ii) of this Memorandum, *supra*, which explains, in detail, how SpinLife has failed to adequately allege fraud on the USPTO.  Accordingly, SpinLife's Count IV claim for declaratory judgment regarding invalidity, which claim is based entirely upon those insufficient allegations of fraud, fails as a matter of law, and it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**E.    Count VI of SpinLife's Amended Counterclaim seeking declaratory judgment that trademarks are unenforceable, fails to state a claim upon which relief may be granted against TSS, and therefore, it should be dismissed.**

SpinLife seeks a declaratory judgment that TSS's trademarks are unenforceable due to fraud and inequitable conduct during their prosecution at the USPTO. (Amended Counterclaim at ¶¶ 123-132.)  Here again, SpinLife's claim of fraud and inequitable conduct is based on TSS's alleged failure to disclose Mr. Trautman's 1995 Ohio trade name registration to the USPTO during TSS's application for its trademarks at issue and during its subsequent application for incontestable status for two of those trademarks.  (Id. at ¶¶ 125-128.)  In an effort to avoid unnecessary duplication of arguments herein, TSS refers this Court to Section III(B)(2)(b)(ii) of this Memorandum, *supra*, which explains, in detail, how SpinLife has failed to adequately allege fraud on the USPTO. Accordingly, SpinLife's Count VI claim for declaratory judgment regarding unenforceability, which claim is based entirely upon those insufficient allegations of fraud, fails as a matter of law, and it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.    CONCLUSION

For all of the foregoing reasons, TSS respectfully submits that Counts One, II, IV and VI of SpinLife's Amended Counterclaim fail to state claims upon which relief may be granted against TSS.  Accordingly, pursuit to Fed. R. Civ. P. 12(b)(6), TSS is entitled to, and hereby requests, the issuance of an Order dismissing those claims.

Respectfully submitted,


 /s/ *Stephen D. Jones*
Stephen D. Jones (0018066)
Jeremy S. Young (0082179)
Roetzel & Andress, LPA
155 East Broad Street, 12th Floor
Columbus, OH 43215
Telephone: 614.463.9770
Facsimile: 614.463.9792
E-mail:  sjones@ralaw.com
             jyoung@ralaw.com

Donald Scherzer (0022315)
Roetzel & Andress, LPA
1375 East Ninth Street
One Cleveland Center, Suite 900
Cleveland, OH 44114
Telephone:  216.615.7418
Facsimile:  216.623.0134
E-mail:    dscherzer@ralaw.com

*Trial Attorneys for Plaintiffs, The Scooter
Store, Inc. and The Scooter Store, Ltd.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing has been served upon the following parties via the Court's electronic filing system this 1st day of June, 2010:

Michael Hiram Carpenter, Esq.
Angela M. Paul Whitfield, Esq.
Timothy R. Bricker, Esq.
Carpenter Lipps & Leland LLP
280 Plaza Suite 1300
280 North High Street
Columbus, Ohio  43215

*Counsel for Defendant, SpinLife.com, LLC*

/s/ Stephen D. Jones
Stephen D. Jones

467093 v_01 \ 122865.0001