IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE SCOOTER STORE, INC., et al., | CASE NO.   2:10-CV-0018-ALM-MRA |
| Plaintiff, | JUDGE ALGENON L. MARBLEY |
| vs. | MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |
| SPINLIFE.COM, LLC, | |
| Defendant. | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS DEFENDANT'S FIRST AMENDED COUNTERCLAIM**

**I.    INTRODUCTION**

Plaintiffs, The Scooter Store, Inc. ("TSSI") and The Scooter Store, Ltd. ("TSSL") (collectively referred to as "TSS") submit Plaintiffs' Reply Brief in Support of Their Partial Motion to Dismiss Defendant's First Amended Counterclaim ("Reply Brief").  Plaintiffs right to a partial dismissal is only reinforced by the arguments contained in the  Memorandum of Defendant/Counterclaim Plaintiff SpinLife.com, LLC in Opposition to Plaintiffs' Partial Motion to Dismiss Defendant's First Amended Counterclaim ("Opposition," Doc. 69)  Accordingly, TSS respectfully requests that this Court grant the relief sought in its Partial Motion to Dismiss.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

Apparently recognizing the merit of TSS's Partial Motion to Dismiss,, SpinLife resorts to a shameful and misleading smear campaign in an effort to divert this Court's attention from the merits of the motion.  First, SpinLife's utterly false suggestion that TSS changed its business practices in

any way as a result of the 2005 investigation by the United States Department of Justice ("DOJ") is offensive. The fact that TSS's business model did ***not*** change, and the fact of the company's success has only continued, demonstrates the total lack of any proper purpose in raising this completely irrelevant subject matter.[1] While SpinLife sanctimoniously castigates TSS for supposed misrepresentations, SpinLife itself has no qualms about bending facts to suit its purpose.

Second, SpinLife makes the equally irrelevant argument that, in the course of their representation of other parties in other lawsuits, TSS's current and former counsel have purportedly made arguments that are inconsistent with the arguments that have been made on behalf of TSS in this litigation. (Id. at 3.) However, it is beyond doubt that the actions and arguments of TSS's counsel in other cases (in which its counsel are ***not*** representing TSS) are wholly irrelevant to the case at hand.

Third, SpinLife claims as fact that, through its filing of the instant lawsuit, TSS "improperly seeks to obtain a judicial expansion of its trademarks to include retail sales, even though the USPTO expressly refused to grant it the same." (Id. at 6-8.) However, the plain fact that SpinLife repeatedly ignores is that TSS possesses four valid federal trademarks for the "insurance claims processing for others; maintenance and repair services for wheelchairs, power chairs, lift chairs and motorized scooters; [and] delivery of wheelchairs, power chairs, lift chairs and motorized scooters" lines of commerce. (Amended Complaint at ¶¶ 17-18.) Moreover, while SpinLife contends that its services are limited to retail sales (such that its admitted use of TSS's marks does not constitute infringement of those non-retail-sales marks), the fact of the matter is that SpinLife's own website

---

[1] TSS filed a Partial Motion to Dismiss (Doc. 37) the original Counterclaim (Doc. 29) that was filed by SpinLife in this action. Recognizing the inadequacies of its original Counterclaim, SpinLife sought leave of Court to amend its Counterclaim (Doc. 53), and TSS did not oppose the request for leave to amend. However, the Amended Counterclaim fails for the same reasons that the original Counterclaim failed.

covers far more than retail sales. SpinLife's website clearly references: "FREE Shipping"; "we bill Medicare"; and "we will arrange for a service technician to come to your home" (Amended Complaint at Exhibit C-1 and Exhibit C-2.) As such, SpinLife's website, on which SpinLife concedes that it uses TSS's marks, pertains not only to sales, but also to claims processing, delivery, repair and maintenance.

Quite simply, SpinLife's Opposition is littered with utterly irrelevant and baseless purported "facts." SpinLife's having to resort to the inclusion of such red herrings and non-truths is telling about its inability to address – let alone refute – the merits of TSS's Partial Motion to Dismiss.

### III. LAW AND ANALYSIS

**A. TSS remains entitled to the dismissal of Count One of SpinLife's Amended Counterclaim, alleging a Sherman Act violation, for failure to state a claim because: TSS's trademark infringement suit does not violate antitrust law; SpinLife insufficiently pleads facts supporting attempts to monopolize the relevant market; and TSS is immune to such liability.**

As set forth in TSS's Partial Motion to Dismiss, dismissal of SpinLife's Count One attempted monopolization claim is warranted for at least three distinct reasons: (1) TSS's trademark infringement lawsuit is not a violation of antitrust laws; (2) SpinLife fails to sufficiently plead the requisite elements of its attempted monopolization claim; and (3) even if SpinLife had properly pled the elements, TSS is immune from antitrust liability under the Noerr-Pennington doctrine. (Partial Motion to Dismiss at 7-18.) As set forth in detail below, SpinLife fails to refute any – let alone all – of these independent bases for dismissal, and TSS remains entitled to the dismissal of Count One of SpinLife's Amended Counterclaim.

**1. TSS's trademark infringement lawsuit against SpinLife does not constitute an antitrust violation.**

In its Partial Motion to Dismiss, TSS presented well-supported arguments that its trademark infringement lawsuit against SpinLife does not constitute an antitrust violation. (Id. at 7-8.)

Tellingly, in its Opposition, SpinLife mischaracterizes this argument, claiming that, "The Scooter Store incorrectly argues that as a matter of law an infringement claim cannot provide the basis for a Sherman Act claim." (Opposition at 15.) TSS made no such proclamation. Rather, TSS argued, and it maintains, that this particular infringement suit against SpinLife, where SpinLife is undoubtedly using TSS's marks, does not constitute an antitrust violation.

It remains well-settled that efforts to protect trademark rights, even those that go as far as bringing suit against a party who has allegedly infringed upon or diluted the trademark owner's rights, represent fair competition, further general trademark policies, and do not constitute violations of antitrust laws. *See* Weber v. National Football League, 112 F. Supp. 2d 667, 672-73 (N.D. Ohio 2000) (citing Clorox Co. v. Sterling Winthrop, Inc., 117 F.3d 50, 61 (2nd Cir. 1997) (noting that in almost every instance where the antitrust misuse of a trademark has been raised as a defense to infringement, as SpinLife has raised it here, it has been rejected)); Drop Dead Co. v. S.C. Johnson & Son, Inc., 326 F.2d 87, 96 (9th Cir. 1963); Car Freshener Corp. v. Auto Aid Mfg. Corp., 438 F. Supp. 82, 87 (N.D.N.Y. 1977). Therefore, SpinLife's attempted monopolization claim, which is based on TSS's filing of its trademark infringement claims in this action, fails to state a claim for relief.

> **2.  SpinLife fails to allege the requisite elements of its Count One attempted monopolization claim.**

SpinLife does not dispute that, in alleging its unlawful attempt to monopolize claim, it must establish three elements: (1) a specific intent to control prices or destroy competition in some part of commerce; (2) predatory or anticompetitive conduct directed to accomplish an unlawful purpose; and (3) a dangerous probability of success. (Opposition at 17 (citing Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993)).). As set forth below, SpinLife has failed to sufficiently

4

allege *any* of the requisite elements of its attempted monopolization claim – let alone all of them – thereby warranting dismissal of Count One pursuant to Fed. R. Civ. P. 12(b)(6).

> a. **SpinLife has not sufficiently alleged that TSS possessed the specific intent to monopolize.**

In its Amended Counterclaim, SpinLife bases its allegation of specific intent to monopolize solely on TSS's "filing of this lawsuit." (Amended Counterclaim at ¶ 80.) Now, in an effort to save its Count One claim from dismissal, SpinLife broadly contends that, "Specific intent to monopolize may be inferred from evidence of anticompetitive conduct." (Opposition at 22 (quoting Arthur S. Langenderfer, Inc. v. S.E. Johnson Co., 917 F.2d 1413, 1432 (6th Cir. 1990)). TSS does not dispute this legal premise – in fact, TSS cited it in its Partial Motion to Dismiss. (Partial Motion to Dismiss at 9.) However, in partially quoting Langenderfer, SpinLife fails to note the Sixth Circuit's finding that, while specific intent may be inferred from evidence of anticompetitive conduct, it may *not* be inferred from legitimate business practices. *See* Langenderfer, 917 F.2d 1413, 1432; *see also* White and White, Inc. v. American Hospital Supply Corp., 723 F.2d 495, 507 (6th Cir. 1983) (citing Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 626 (1953)).

Thus, where, as here, one attempts to protect its trademark rights by filing suit against an infringer, those actions "represent fair competition, further general trademark policies, and do not constitute violations of antitrust laws." Weber, 112 F. Supp. 2d at 672 (citing Clorox, 117 F.3d at 61). Quite simply, such actions constitute "legitimate business practices," from which specific intent to monopolize cannot be inferred. *See* id.; *see also* Times-Picayune, 345 U.S. at 626; Langenderfer, 917 at F.2d at 1432; White and White, 723 F.2d at 507.

SpinLife's attempts to paint the instant infringement case as something other than a legitimate business practice fail. SpinLife stresses that the USPTO "denied The Scooter Store's attempts to obtain a trademark for retail sales," purportedly making SpinLife's use of TSS's mark

5

acceptable, and rendering the filing of the instant lawsuit illegitimate. (Opposition at 24 (emphasis in original).) However, as set forth in Section II of this Reply Brief, *supra*, SpinLife simply ignores the realities that: (1) TSS has valid trademarks for insurance claims processing, delivery, repair and maintenance; and (2) SpinLife's own website, which utilizes TSS's marks, also pertains to claims processing, delivery, repair and maintenance. (Amended Complaint at Exhibit C-1 and Exhibit C-2.) Accordingly, the fact remains that TSS's filing of its infringement action, which is the sole basis of SpinLife's allegation of specific intent, constitutes a legitimate business practice from which specific intent cannot be inferred. Consequently, dismissal of Count One remains warranted.

> **b.**   **SpinLife has not sufficiently alleged that TSS has performed any wrongful anticompetitive conduct.**
>
> > **i.**   **The filing of this lawsuit does not constitute anticompetitive conduct.**

In its Opposition, SpinLife does not contest, and cannot contest, the well-settled principle of law that "anticompetitive conduct is conduct designed to destroy competition, not just to eliminate a competitor." Richter Concrete Corporation v. Hilltop Concrete Corporation, 691 F.2d 818, 823 (6th Cir. 1982); *see also* United States v. Aluminum Company of America, 148 F.2d 416, 430 (2nd Cir. 1945). Moreover, SpinLife does not dispute that, in its Amended Counterclaim, it alleges that TSS's anticompetitive conduct was the filing of its trademark suit against SpinLife as leverage to force SpinLife to stop using permutations of TSS's name in its promotional and marketing activities. (Amended Counterclaim at ¶ 67.)

However, in response to TSS's Partial Motion to Dismiss, SpinLife mischaracterizes yet another one of TSS's arguments. SpinLife contends that, "The Scooter Store would have this Court dismiss Count I based on the bald assertion [that] 'filing this lawsuit does not constitute anticompetitive conduct.'" (Opposition at 25 (quoting Partial Motion to Dismiss at 10).) In fact, TSS argued that, "TSS's filing of this lawsuit does not constitute anticompetitive conduct – rather,

6

filing this suit demonstrates TSS's rightful exercise of its constitutional right to seek relief from the court for protection of its trademark rights, making it immune under the Noerr-Pennington doctrine, as set forth in Section III(B)(3) of this Memorandum, *infra*." (Partial Motion to Dismiss at 10-11.) SpinLife's distortion of this indisputable argument only shows the lack of merit of its own position. Therefore, TSS maintains that, as a matter of law, SpinLife cannot base its Count One claim on TSS's filing of this lawsuit.

### ii. TSS did not commit fraud on the USPTO.

SpinLife further attempts to base the anticompetitive conduct element of its Count One Sherman Act claim on its allegation that TSS fraudulently misled the USPTO in applying for the trademarks at issue and in subsequently applying for incontestable status for two of those marks. (Amended Counterclaim at ¶¶ 48-62, 84-85.) These same allegations of fraudulent misconduct also form the bases of SpinLife's Count IV and Count VI claims for declaratory judgment regarding the purported invalidity and unenforceability of the trademarks at issue. (Id. at ¶¶ 107-110, 125-128.) However, as set forth in detail below, SpinLife has failed to adequately allege fraud on the USPTO, such that dismissal of Counts One, IV and VI remains warranted.

As for TSS's purported misconduct, in its Amended Counterclaim, SpinLife claims that: (1) in TSS's 2000 application for federal trademarks, TSS failed to disclose a 1995 discussion between Mr. Trautman and Doug Harrison, President and CEO of TSS, during which Mr. Trautman indicated that his company was doing business as "Ohio Mobility, The Scooter Store," and Mr. Trautman's 1995 State of Ohio trade name registration; and (2) in its 2008 submissions for incontestable status for two of the trademarks at issue, TSS failed to disclose the 1995 conversation between Mr. Trautman and Mr. Harrison, the 1995 Ohio trade name registration, certain cease and desist letters that Mr. Trautman's attorneys had sent to TSS (claiming that TSS's use of the term "The Scooter Store" was violating the Ohio trade name rights of Mr. Trautman's company) and

7

additional information obtained in 2006 and 2008 regarding Mr. Trautman's company's use of "The Scooter Store." (Id. at ¶¶ 48-62.)

However, now, in its Opposition, SpinLife baselessly and inappropriately treats these alleged instances of misconduct as one in the same, ignoring the fact that they occurred eight years apart. For instance, SpinLife contends that, due to TSS's purported "clandestine investigations" of Mr. Trautman, TSS knew about Mr. Trautman's trade name registration and should have disclosed it to the USPTO when applying for its trademarks. (Opposition at 12.) The obvious shortcoming of SpinLife's argument is that, by its very own allegations, those purported investigation occurred in 2006, 2008 and 2010, well *after* TSS applied for its trademarks in 2000. (Amended Counterclaim at ¶ 61.) Therefore, the investigations could not have provided TSS with the knowledge that SpinLife alleges, thereby exposing SpinLife's argument as wholly disingenuous and meritless. When treating the purported instances of misconduct separately, it remains clear that SpinLife's claims of fraud fail as a matter of law.

As SpinLife recognizes, in order to prevail on a claim for fraudulent procurement, a claimant must establish that the registrant made "knowingly inaccurate or knowingly misleading statements in the verified declaration forming part of the application for registration." (Opposition at 10 (quoting Torres v. Cantine Torresella S.r.l., 808 F.2d 46, 48 (Fed. Cir. 1986)); *see also* Brenton Production Enterprises, Inc. v. Motion Media, No. 96-6044, 1997 WL 603412, at *3 (6th Cir. Sept. 30, 1997) (a fraudulent registration claimant must show "false representation of a material fact, knowledge of its falsity, and intent to induce reliance on the misrepresentation.") Then, SpinLife disingenuously attempts to shift the burden of proof on its fraudulent procurement claim to TSS, claiming that, "The Scooter Store is unable to demonstrate that its knowing failure to disclose Mr. Trautman's registration does not amount to fraud on the USPTO." (Opposition at 14.)

However, the law, *including the case law cited by SpinLife*, is perfectly clear that *the burden of proof on a claim for fraudulent procurement rests on the claimant, and that burden is clear and convincing evidence*. See City of New York v. Tavern on the Green, L.P., 427 B.R. 233, 242 (S.D.N.Y. 2010); *see also* V & V Food Products, Inc. v. Cacique Cheese Co., 683 F. Supp. 662, 666 (N.D. Ill. 1988); Whirlpool Properties, Inc. v. LG Electronics U.S.A., Inc., No. 1:03-cv-414, 2005 WL 3088339, *25 (W.D. Mich. Nov. 17, 2005).

With respect to TSS's 2000 application for the trademarks at issue, the oath made during a USPTO registration requires that an applicant aver that "no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use such mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive," 15 U.S.C. § 1051(a)(1); 37 C.F.R. 2.33(b).  Moreover, SpinLife does not dispute, and cannot dispute, that the Lanham Act does not obligate "one seeking federal registration of a mark to investigate and report all other possible users of an identical or confusingly similar mark." Rosso and Mastracco, Inc. v. Giant Food Inc., 720 F.2d 1263, 1265 (Fed. Cir. 1983) (quoting The Money Store v. Harriscorp. Finance, Inc., 689 F.2d 666, 670 (7th Cir. 1982)); *see also* V & V Food Products, 683 F. Supp. at 666 (citing Money Store); eCash Technologies, Inc. v. Guagliardo, 210 F. Supp. 2d 1138, 1149 (C.D. Cal. 2001) (citing Money Store); Official Airline Guides, Inc. v. Churchfield Publications, Inc., 756 F. Supp. 1393, 1399 (D. Ore. 1990) (citing Money Store).

Instead, unable to refute the above-cited law, SpinLife erroneously challenges well-established law holding that, as a senior user of "The Scooter Store," TSS was not required to disclose use by a junior user (here, Mr. Trautman).  Despite SpinLife's efforts to contort the same, the facts remain that: (1) in its federal trademark application, TSS stated use of "The Scooter Store"

9

continuously since 1991; and (2) Mr. Trautman did not use "The Scooter Store" until 1995. In his 1995 Ohio registration of the trade name "The Scooter Store" (a copy of which is attached hereto as **Exhibit A**), Mr. Trautman clearly declared that he "had been using the trade name since" January 12, 1995.[2] (Ex. A at 3.) Accordingly, TSS's status as a senior user could not be any clearer, and SpinLife's argument that "this Court should not…accept The Scooter's Store's claim it is the senior user" is wholly without basis. (Opposition at 13.) Accordingly, TSS maintains that SpinLife has failed to even adequately allege a duty of disclosure to the USPTO.

Putting aside SpinLife's unsuccessful attempt to impose on TSS a duty of disclosure, and assuming the existence of such a duty in TSS's application for its trademarks, SpinLife's fraud claim is further condemned by its inability to allege TSS's knowledge of Mr. Trautman's trade name registration. Again, while SpinLife alleges that, in 1995, Mr. Trautman told Mr. Harrison that his company was doing business as "Ohio Mobility, The Scooter Store," SpinLife does not allege, and cannot allege, that TSS was aware of the actual 1995 registration of the trade name when it applied for its trademarks. (Amended Counterclaim at ¶ 51.) And as noted above, while SpinLife now tries to impute knowledge via TSS's after-the-fact purported "clandestine investigations" of Mr. Trautman, that argument defies logic and common sense. Therefore, SpinLife's claims of fraud with regard to TSS's 2000 application for the trademarks at issue fail as a matter of law.

With respect to TSS's 2008 application for incontestable status for two of the marks at issue, in its Amended Counterclaim, SpinLife alleges that, despite the 1990s conversations between Mr. Harrison and Mr. Trautman, the 2006 and 2008 cease and desist letters that were sent on behalf of

---

[2] In its Motion of Defendant/Counterclaim Plaintiff SpinLife.com, LLC to Strike, or, in the Alternative, for Leave to File Surreply ("Motion to Strike," Doc. 59), SpinLife previously provided this Court with a copy of this very Ohio trade name registration, which is available on the Ohio Secretary of State's website. (Motion to Strike at 1 and Exhibit 1 thereto.) Accordingly, contrary to the arguments set forth in its Opposition, SpinLife should be acutely aware of the realities of Mr. Trautman's declaration of first use of "The Scooter Store."

Mr. Trautman, and the 2006 and 2008 investigations of Mr. Trautman's company, TSS failed to disclose Mr. Trautman's Ohio trade name registration, thereby defrauding the USPTO. (Amended Counterclaim at ¶ 62.)  SpinLife now claims that TSS's marks should not be incontestable because they infringe on Mr. Trautman's Ohio trade name, which TSS did not disclose to the USPTO, in violation of 15 U.S.C. § 1065.  However, as set forth above, SpinLife cannot change the fact that TSS is the undeniable senior user of "The Scooter Store," such that its use of the same does not infringe upon any rights of the Mr. Trautman, the junior user, and such that it was not fraudulent for SpinLife to omit Mr. Trautman's purported Ohio trade name rights in its application for incontestable status for its federal trademarks.  Quite simply, SpinLife's baseless allegations of fraud are the very type of allegations that "both courts and commentators have decried," and "like most allegations of fraud in this area," SpinLife's allegations are "weak and ill-founded." Whirlpool, 2005 WL 3088339, at *27.

For these reasons, SpinLife has failed to adequately allege that TSS committed fraud on the USPTO.  Accordingly, its allegations of purported fraud fail to support its contention of anticompetitive conduct, thereby further warranting dismissal of Counts One.

        **c.    SpinLife has not sufficiently alleged that TSS has a dangerous probability of success.**

The third element of an attempt to monopolize claim is a dangerous probability of success. "The greater a firm's market power, the greater the probability of success for monopolization.  In order to be found liable for attempted monopolization, a firm must possess market strength that approaches monopoly power – the ability to control prices and exclude competition." Richter, 691 F.2d at 826.  "Market strength is often indicated by market share." United States v. Empire Gas Corporation, 537 F.2d 296, 302 (8th Cir. 1976).  Accordingly, to satisfy its pleading obligation with respect to the third element of its attempted monopolization claim, SpinLife must allege that TSS

11

possessed a market strength in the relevant market – which SpinLife has defined as the power mobility device retail market in the United States and Canada – that approached monopoly power. *See* Richter, 691 F.2d at 826.

In its Opposition, SpinLife does not dispute the well-settled law regarding this third requisite element of its Sherman Act claim. And tellingly, SpinLife fails to address or contest the simple facts that: (1) it has not alleged any market share that is purportedly held by TSS; and (2) this failure alone warrants the dismissal of its Count One claim.

With regard to TSS's share of the alleged market at issue, SpinLife does not cite, and cannot cite, to any allegations in its deficient Amended Counterclaim that satisfy its obligation to plead TSS's purported market share. Then, in a feeble effort to resist the dismissal of its Count One, which is warranted as matter of law in light of SpinLife's failure to allege any market share, SpinLife misleadingly contends that, "Not a single one of the cases cited by The Scooter Store involved a motion to dismiss." (Id. at 20 [emphasis in original].) However, the fact of the matter is that TSS's Partial Motion to Dismiss is full of citations to cases in which courts dismissed attempted monopolization claims because, as here, the claimant failed to adequately plead market share. (Partial Motion to Dismiss at 16 [citing Hennessy Industries, Inc. v. FMC Corporation, 779 F.2d 402, 405 (7th Cir. 1985) (affirming dismissal of an attempted monopolization claim where the complaint did not set forth any facts from which the court could infer whether the defendants had sufficient market power to have been able to create a monopoly); Sun Micro Systems, Inc. v. Versata Enterprises, Inc., 630 F. Supp. 2d 395, 403-404 (D. Del. 2009); CCBN.com, Inc. v. Thomson Financial, Inc., 270 F. Supp. 2d 146, 157 (D. Mass. 2003); Weber, 112 F. Supp. 2d at 673-674; Barnes Group, Inc. v. Connell, 793 F. Supp. 1277, 1304-1305 (D. Del. 1992)].)

Quite simply, despite its desperate efforts to argue to the contrary, it is clear that SpinLife has failed to adequately and plausibly allege a dangerous probability of success, which, in and of itself, warrants the dismissal of Count One of its Amended Counterclaim.

### 3. Under the Noerr-Pennington doctrine, TSS is immune from antitrust liability.

TSS maintains that, even if SpinLife's pleadings could be read to establish that TSS's lawsuit was actionable antitrust conduct, SpinLife's Sherman Act claim still fails because immunity from antitrust liability attaches to TSS's filing.  Again, SpinLife does not contest the legal principles at issue here, including the premise that, "it has been settled that the filing of a lawsuit generally cannot expose a party to Sherman Act liability." Dell, Inc. v. 3K Computers, LLC, No. 08-80455-CIV, 2008 WL 6600766, at *2 (S.D. Fla. Oct. 7, 2008).  What SpinLife does contest is TSS's claim that SpinLife has not plausibly pled that TSS's lawsuit fits the limited sham exception to the Noerr-Pennington doctrine.  However, as set forth below, SpinLife's contentions are without legal or factual basis, and TSS remains immunized from antitrust liability on SpinLife's attempted monopolization claim.

With regard to the two-part definition of sham litigation, as set forth in Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60-61 (1993), SpinLife remains unable to satisfy even the first prong of establishing that the lawsuit at issue (here, TSS's infringement action) is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merit." In attempting to argue this prong, SpinLife contends that it "alleged the 'objectively baseless' nature of The Scooter Store's lawsuit given the USPTO's refusal to give The Scooter Store a mark for the phrase 'The Scooter Store' in the area of retail sales." (Opposition at 27.)  SpinLife concludes its argument by claiming that, because "SpinLife is

exclusively active in the retail sale of power mobility devices…it cannot infringe non-related trademark registration." (Opposition at 27-28.)

Here again, though, SpinLife completely ignores that: (1) TSS possesses valid trademarks for insurance claims processing, delivery, repair and maintenance; and (2) the plain face of SpinLife's website indicates its involvement in claims processing, delivery, repair and maintenance. (Amended Complaint at Exhibit C-1 and Exhibit C-2.)  Therefore, TSS's claims are not "objectively baseless," and for that reason alone, SpinLife has failed to plausibly plead the sham exception to the Noerr-Pennington doctrine. *See* Dell, 2008 WL 6600766, at *2-3 (finding that the trademark owner's infringement claims did not constitute sham litigation and granting judgment on the pleadings in favor of the trademark owner on the defendant's counterclaim for attempted monopolization under the Sherman Act); *see also* Hartford Life Insurance, 964 F. Supp. at 627-628 (dismissing the defendant's attempted monopolization counterclaim against the trademark owner for failure to satisfy the sham exception to the Noerr-Pennington doctrine).

> **B.    TSS remains entitled to the dismissal of Count II of SpinLife's Amended Counterclaim, alleging unfair competition, because it fails to state a claim upon which relief may be granted against TSS.**

SpinLife does not dispute that the sole basis of its Count II claim for unfair competition claim is its allegation that TSS's commencement of this litigation constitutes "unfair competition against SpinLife and others." (Amended Counterclaim at ¶ 91.)  In its Partial Motion to Dismiss, TSS urged this Court to dismiss Count II in accordance with this Court's precedent in Baxter Travenol Laboratories, Inc. v. LeMay, 536 F. Supp. 247, 248-249 (S.D. Ohio 1982). (Partial Motion to Dismiss at 19-20.)  In Baxter, this Court granted judgment on the pleadings in favor of the plaintiffs on the defendants' counterclaims, including the defendants' counterclaim for "unfair competition," reasoning that, "under Ohio law, it is well settled that in order to bring an action for malicious prosecution, the prosecution of a civil proceeding must be at an end and must terminate in

14

favor of the person bringing the claim." Id.  It necessarily follows that where, as here, an unfair competition claim is based solely on purportedly malicious litigation that remains pending, the claim must be dismissed. *See* id.

Obviously unable to claim that the subject malicious prosecution – namely, TSS's infringement suit – has terminated in its favor, SpinLife instead contends that "The Scooter Store incorrectly argues that an unfair competition claim may only be based upon an already terminated litigation," which was undeniably the very basis for this Court's decision in Baxter Travenol (Opposition at 32.)  SpinLife bases its contention on its argument that Baxter Travenol was later distinguished in Microsoft Corp. v. Action Software, 136 F. Supp. 2d 735, 740 (N.D. Ohio 2001). (Id. at 32-33.)  Yet, SpinLife does not cite, and cannot cite, to any Southern District of Ohio cases to refute that Baxter Travenol remains the precedent of this Court.  Therefore, contrary to SpinLife's contentions, Baxter Travenol *does* govern Count II, and moreover, it dictates the dismissal of the same.

Moreover, in its Opposition, SpinLife does not even address TSS's additional argument in support of dismissal of Count II – namely, that SpinLife's unfair competition claim also fails because TSS's trademark infringement action at issue constitutes an objectively reasonable exercise of TSS's constitutional right to petition the government to protect its trademark rights. Accordingly, TSS's initiation of the suit does not amount to unfair competition, but rather, it constitutes "fair competition."  Weber, 112 F. Supp. 2d at 672.  For all of these reasons, SpinLife has failed to allege a claim for unfair competition, thereby warranting dismissal of Count II of its Counterclaim.

      **C.**      **TSS remains entitled to the dismissal of Count IV of SpinLife's Amended Counterclaim, seeking declaratory judgment that TSS's trademarks are invalid, because it fails to state a claim upon which relief may be granted against TSS.**

In Count IV of its Amended Counterclaim, SpinLife seeks a declaratory judgment that TSS's trademarks are invalid due to fraud and inequitable conduct by TSS during the prosecution of the trademarks at the USPTO. (Amended Counterclaim at ¶¶ 104-115.)  However, as set forth in Section III(A)(2)(b)(ii) of this Memorandum, *supra*, SpinLife has failed to adequately allege fraud on the USPTO.  Accordingly, SpinLife's Count IV claim for declaratory judgment regarding invalidity, which claim is based entirely upon those insufficient allegations of fraud, fails as a matter of law, and it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**D.  TSS remains entitled to the dismissal of Count VI of SpinLife's Amended Counterclaim, seeking declaratory judgment that trademarks are unenforceable, because it fails to state a claim upon which relief may be granted against TSS.**

In Count VI of its Amended Counterclaim, SpinLife seeks a declaratory judgment that TSS's trademarks are unenforceable due to fraud and inequitable conduct during their prosecution at the USPTO. (Amended Counterclaim at ¶¶ 123-132.)  However, as set forth above in Section III(A)(2)(b)(ii) of this Memorandum, *supra*, SpinLife has failed to adequately allege fraud on the USPTO.  Accordingly, SpinLife's Count VI claim for declaratory judgment regarding unenforceability, which claim is based entirely upon those insufficient allegations of fraud, fails as a matter of law, and it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IV.  CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in TSS's Partial Motion to Dismiss, TSS respectfully submits that Counts One, II, IV and VI of SpinLife's Amended Counterclaim fail to state claims upon which relief may be granted against TSS.  Accordingly, pursuit to Fed. R. Civ. P. 12(b)(6), TSS remains entitled to, and hereby requests, the issuance of an Order dismissing those claims.

Respectfully submitted,


 /s/ *Stephen D. Jones*
Stephen D. Jones (0018066)
Jeremy S. Young (0082179)
Roetzel & Andress, LPA
155 East Broad Street, 12th Floor
Columbus, OH 43215
Telephone: 614.463.9770
Facsimile: 614.463.9792
E-mail:  sjones@ralaw.com
            jyoung@ralaw.com

Donald Scherzer (0022315)
Roetzel & Andress, LPA
1375 East Ninth Street
One Cleveland Center, Suite 900
Cleveland, OH 44114
Telephone:  216.615.7418
Facsimile:  216.623.0134
E-mail:   dscherzer@ralaw.com

*Trial Attorneys for Plaintiffs, The Scooter Store, Inc. and The Scooter Store, Ltd.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing has been served upon the following parties via the Court's electronic filing system this 12th day of July, 2010:

Michael Hiram Carpenter, Esq.
Angela M. Paul Whitfield, Esq.
Timothy R. Bricker, Esq.
Carpenter Lipps & Leland LLP
280 Plaza Suite 1300
280 North High Street
Columbus, Ohio  43215

*Counsel for Defendant, SpinLife.com, LLC*

                                          /s/ Stephen D. Jones
                                          Stephen D. Jones

471674.01.122865.0001