**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **THE SCOOTER STORE, INC., ET AL.,** | : | |
| | : | **Case No. 2:10-cv-18** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **SPINLIFE.COM, LLC,** | : | |
| | : | **MAGISTRATE JUDGE DEAVERS** |
| **Defendant.** | : | |
| | : | |

## OPINION AND ORDER

## I. INTRODUCTION

This matter is before the Court on Defendant/Counterclaimant's, SpinLife.com, LLC ("SpinLife") Motion for Partial Summary Judgment (Dkt. 99).  SpinLife moves the Court to establish that Plaintiffs, The Scooter Store, Inc. and The Scooter Store, Ltd. (collectively, "TSS") have no trademark rights or any other actionable rights to the phrases "scooter store," "my scooter store" and other phrases that include "scooter" and "store" in them.  SpinLife requests summary judgment on all TSS's affirmative claims, and Counts three and five of its Amended Counterclaim.  For the reasons stated below, SpinLife's Motion for Partial Summary Judgment is hereby **GRANTED** in part.

## II. STATEMENT OF FACTS

### A. Factual Background

#### 1. The Parties

Plaintiff, The Scooter Store, Inc., is a Nevada corporation whose principal place of business is Comal County, Texas.  Plaintiff, The Scooter Store, Ltd., is a Texas limited partnership having its principal place of business in Comal County, Texas.  Since it was founded

in 1991, the majority of TSS's business has been in providing insurance claims processing services related to the purchase of electric wheelchairs and scooters by, and delivery and repairs to, the Medicare Part B Program, and its beneficiaries.  TSS owns four federal trademark registrations—Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227—of the mark THE SCOOTER STORE in connection with "insurance claims processing for others; maintenance and repair services for wheelchairs, power chairs, lift chairs and motorized scooters; delivery of wheelchairs, power chairs, lift chairs and motorized scooters."

Defendant, SpinLife.com LLC, is an Ohio corporation having its principal place of business in Columbus, Ohio.  In 1991, Edwin Trautman founded Ohio Mobility as a sole proprietorship in Akron, Ohio.  During the 1990s, Ohio Mobility started using the name "The Scooter Store," and in 1995 it formally obtained and recorded the trade name "The Scooter Store" with the Ohio Secretary of State.  In 1997, it incorporated as Ohio Mobility, Inc., d/b/a The Scooter Store.  SpinLife was then founded in 1999, and since then has been engaged in the retail sale of durable medical supplies through the internet.  Unlike TSS, SpinLife does not accept assignments of its customers' Medicare claims, nor does Medicare pay SpinLife for the products it provides to its customers.

During the 1990s, Trautman spoke by telephone several times with Doug Harrison, the President and CEO of TSS.  During each of these conversations, Trautman introduced himself as from "Ohio Mobility, The Scooter Store."  At no time during these conversations did Harrison object to this use of "The Scooter Store."  In 2006 and 2008, Trautman retained attorneys to send communications to TSS, advising them that their use of "The Scooter Store" in the state of Ohio violated Ohio Mobility, The Scooter Store's trade name rights and requesting that they cease and desist their improper use of that phrase.  In addition to these conversations, TSS had knowledge

of Ohio Mobility, The Scooter Store as a result of investigations it undertook.  In 2006, 2008, and 2010, TSS sent an investigator to look into Mr. Trautman's business.

In 2000, TSS applied for a trademark of "The Scooter Store" for use in insurance claims processing and retail sales.  TSS did not disclose Trautman's Ohio trade name registration, actual use, or right to use the mark to the USPTO when it filed its applications.  The USPTO denied TSS's application for a trademark of "The Scooter Store" in the retail sales market.  It issued a determination finding "The Scooter Store" to be generic for retail sales, merely descriptive of the retail and mail order sale of scooters, and incapable of identifying The Scooter Store's services and distinguishing them from others.

The USPTO ultimately granted TSS's application for a composite trademark of "THE SCOOTER STORE" covering insurance claims processing for others; maintenance and repair services for wheelchairs, power chairs, lift chairs, and motorized scooters; and delivery of wheelchairs, power chairs, lift chairs, and motorized scooters.  TSS was assigned U.S. Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227.  TSS does not own any registered trademarks for the retail sale of goods.

## 2. The Dispute

TSS's allegations are based on SpinLife's purchases of Google AdWords, and use of "metadata" phrases on its website.  Google, like most Internet search engines, engages in advertising sales in which it auctions search keywords to advertisers.  If a person searches on Google using one of the keywords, the advertiser's ad will appear next to the search results.  This feature allows retailers to target potential customers searching for their products.  TSS alleges that SpinLife purchased the phrase "the scooter store" and other combinations using those words,

such as "scooter store," "my scooter store" and "your scooter store," from Google AdWords as part of a plan to confuse TSS's customers.  TSS also complains that SpinLife placed the term "the scooter store" in so-called "meta tags" on its website, www.spinlife.com, which could also cause internet traffic searching for TSS to be directed to SpinLife's website instead.  These actions, TSS contends, constitute trademark infringement and unfair competition.

SpinLife counterclaimed, alleging, *inter alia*, fraud on the part of TSS in connection with its trademark applications and anticompetitive motivations behind TSS's lawsuit.  In 2005, the United States Department of Justice ("DOJ") alleged that TSS had engaged in improper business practices related to Medicare and its beneficiaries.  TSS settled with the DOJ in 2007.  Following the settlement, TSS expanded its services in the retail sales market.  After the expansion, it approached SpinLife about acquiring the company, but no agreement was ever reached.  In 2009, TSS again contacted SpinLife and indicated that it believed that SpinLife was violating its trademark rights.  SpinLife contends that TSS used the threat of litigation to force SpinLife to agree to anticompetitive terms.  When SpinLife still did not agree, TSS brought suit.  SpinLife alleges that TSS is using litigation to eliminate competition and obtain a monopoly through the unjustified expansion of their trademarks.  Further, SpinLife alleges that TSS seeks to use the costs of litigation to drive SpinLife out of the retail sales market for power mobility devices.

### B. Procedural History

In its Amended Complaint, TSS asserts the following claims: (1) Federal Unfair Competition; (2) State Unfair Competition (based on Texas law); (3) State Dilution (based on Texas law); (4) Federal Trademark Infringement; (5) State Trademark Infringement (based on Texas law); and (6) Unjust Enrichment and Misappropriation.  TSS requests punitive and

exemplary damages, a declaratory judgment that SpinLife's actions are unlawful, and injunctive relief.

The case was then transferred to this Court, at which time SpinLife filed its Counterclaim, asserting: (1) a Sherman Act violation and (2) Ohio Unfair Competition. SpinLife also requests (3) a declaratory judgment of non-infringement of Trademark Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227 under the Lanham Act; (4) a declaratory judgment that U.S. Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227 are invalid; (5) a declaratory judgment that purchase of "The," "Scooter" and "Store" keywords and related phrases does not infringe Trademark Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227; and (6) a declaratory judgment that Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227 are unenforceable.

TSS moved to dismiss counts one, two, four, and six of SpinLife's Amended Counterclaim. On April 18, 2011, the Court granted TSS's motion in part, dismissing counts four and six of SpinLife's counterclaim (seeking invalidation of TSS's trademarks due to fraud in its trademark applications in the USPTO). Now comes Defendant/Counterclaimant SpinLife, moving for partial summary judgment to establish that TSS has no trademark rights, or any actionable rights, to the phrases "the scooter store," "scooter store," "my scooter store" or other phrases encompassing combinations of "scooter" and "store." The matter is fully briefed and ready for decision.

### III. STANDARD OF REVIEW

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant therefore has the burden of establishing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.  But the non-moving party may not rest merely on allegations or denials in its own pleading.  Fed. R. Civ. P. 56(c).  *See also Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).  The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  In other words, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to survive summary judgment.  *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

## IV. LAW AND ANALYSIS

SpinLife's Motion is for partial summary judgment to establish that TSS has no trademark rights or other rights to the generic phrases "scooter store," "mobility scooter store," "your scooter store," "SpinLife scooter store," or other such combinations.  SpinLife asserts that establishing this entitles it to declaratory judgments, as requested in Counts three and five of its

6

Amended Counterclaim (Dkt. 61), that its purchases of the above phrases as Adwords and placing them in metadata on its website do not infringe TSS's registered trademarks for THE SCOOTER STORE. SpinLife asserts that granting this Motion will resolve all of TSS's claims in its favor.

### A. Are Purchases of Adwords Actionable Under the Lanham Act?

First, SpinLife claims that Adword purchases, even of another's registered trademarks, are not actionable for infringement, and therefore its purchases of Adwords for phrases containing "scooter" and "store" are simply not actionable by TSS. For support, SpinLife relies almost exclusively on a case out of the District Court of Utah, *1-800 Contacts, Inc. v. Lens.com, Inc.*, 2010 U.S. Dist. LEXIS 132389 (D. Utah Dec. 14, 2010), which held that "[b]ecause a consumer cannot see a keyword, nor tell what keyword generated an advertisement, the court concludes that the mere purchase of a trademark as a keyword cannot alone result in consumer confusion" under the Lanham Act. *Id.* at *1174. SpinLife argues that based on the holding of *1-800 Contacts*, alone, it is entitled to summary judgment.

TSS downplays the significance of *1-800 Contacts*, and provides rebuttal cases which have allow similar claims of infringement to proceed, including within the specific context of keyword purchases of another's trademarks. *See, e.g., T.D.I. Intern, Inc. v. Golf Preservations, Inc.*, 2008, No. 6:07-313-DCR, WL 294531 (E.D. Ky. Jan. 31, 2008). In the alternative, TSS alleges that even if, *arguendo*, Adwords are not actionable, SpinLife's use of the phrases in its website's metadata is a distinct and separate basis for infringement, and so its claim is not defeated.

7

While *1-800 Contacts* supports SpinLife's argument, this Court will not rely on a single out-of-circuit case to conclude that the Adword purchases are not actionable under any circumstances.  Even the court in *1-800 Contacts* acknowledged that "other courts have concluded that use of another's mark 'to trigger internet advertisements for itself,' is a use in commerce."  *1-800 Contacts, Inc.*, 2008 WL at *1170 (quoting *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC,* No. 06-0597, 2007 U.S. Dist. LEXIS 288, at *13, 17 (E.D. Pa. Jan. 4, 2007)).  Moreover, SpinLife does not respond to TSS's argument that its metadata uses are also at issue here, and metadata, at least, are indisputably subject to consumer confusion infringement claims.  *See Tdata Inc. v. Aircraft Technical Publishers*, 411 F. Supp. 2d 901, 907 (S.D. Ohio 2006) ("Several other courts have recognized that the [consumer confusion] doctrine applies 'when a confusingly similar designation is used in a hidden 'metatag' on an Internet web site.'") (citations omitted).  The Court therefore rejects SpinLife's claim that it should be awarded summary judgment because Adwords are not actionable.

### B. "Consumer Confusion" Under the Lanham Act

SpinLife's fundamental argument is that the phrases "scooter store," "my scooter store," and the other combinations are all generic terms, and therefore are not entitled to any trademark protection.  Specifically, SpinLife contends that since all of the phrases at issue are generic, they "are not subject to secondary meaning or likelihood of confusion analyses," and TSS therefore cannot claim that SpinLife's use of them infringes its trademarks. (Motion at 11.)  TSS's response is somewhat confusing.  TSS initially insists that "TSS makes no such claim of trademark rights to the phrases "scooter store," "your scooter store," etc.,"  (Opp. at 4), but then later maintains that SpinLife's "use of those phrases as internet keywords (Adwords and

metadata) causes consumer confusion with TSS's registered marks."  (*Id.* at 5).  For SpinLife to

be liable for infringing TSS's marks by creating consumer confusion, TSS must necessarily be

asserting exclusive rights to the disputed terms.  *See Homeowners Grp., Inc. v. Home Mktg.*

*Specialists, Inc.*, 931 F.2d 1100, 1106 (6th Cir. 1991) ("Ownership of a mark confers both the

right to use a particular mark and the right to prevent others from using the same or a confusingly

similar mark.").  TSS's claim, therefore, is essentially that SpinLife's use of the phrases "scooter

store," etc. in Adwords and metadata creates consumer confusion with respect to TSS's goods

and services for which it owns registered marks.  (Opp. at 5.)

To establish its claims of trademark infringement or unfair competition under the Lanham

Act, TSS must first show that SpinLife "used in commerce" one of its marks.  *See* 15 U.S.C. §§

1114, 1125(a).  The Sixth Circuit has held that "[i]n federal trademark infringement claims under

15 U.S.C. § 1114, the 'touchstone of liability . . . is whether the defendant's use of the disputed

mark is likely to cause confusion among consumers regarding the origin of the goods offered by

the parties.'"  *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 355 (6th

Cir. 1998) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109

F.3d 275, 280 (6th Cir. 1997)); *see also PACCAR Inc. v. TeleScan Techs.*, 319 F.3d 243, 249 (6th

Cir. 2003).  The central focus is whether "the unauthorized use of a registered trademark when

selling or advertising a good or service using the trademark is likely to confuse or deceive

consumers." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1188 (6th Cir. 1997).

In this circuit, "both trademark infringement and unfair competition claims require

courts to determine whether there is a likelihood of confusion regarding the source of the

products and, therefore, these claims can be analyzed together."  *General Conf. Corp. of*

*Seventh-Day Adventists v. McGill*, 624 F. Supp.2d 883, 891 (W.D. Tenn. 2008) (citing *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 791 (6th Cir. 2004)). The success or failure of TSS's infringement claims will turn on a "likelihood of confusion" analysis, but only if one is warranted. If no trademark protection exists over the disputed marks in the first place, then the Court does not even reach the question of whether SpinLife's alleged use creates a likelihood of confusion. *See Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 762 n. 10 (6th Cir. 2005) (for infringement claims brought under the Lanham Act, courts first determine whether mark is protectable "and if so, whether there is a likelihood of confusion as a result of would-be infringer's use of the mark"). To resolve SpinLife's motion, therefore, the Court first must decide whether the "scooter store" terms at issue are protected, and then, if so, whether TSS has a viable claim that SpinLife's use of them creates consumer confusion.

### 1. Are the disputed phrases generic?

SpinLife argues that the terms it purchased as Adwords and placed in metadata are generic, for the USPTO has already determined that the term "the scooter store" is generic in the area of retail sales. Although at first TSS appears to concede that it "does not claim 'any trademark rights in such generic phrases,'" (Opp. at 1), later in its briefing, and at oral argument, it expressly disputed that the term "scooter store" and other combinations of the words "scooter" and "store" are generic. (Opp. at 11.)

Courts evaluate the strength, and level of protection, of a trademark in terms of "where the mark fits along a spectrum ranging from '(1) generic . . . and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful,'" *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 422 (6th Cir. 1999) (quoting *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th

Cir. 1984)).  The Sixth Circuit describes "'a generic or common descriptive term [a]s one which is commonly used as the name or description of a kind of goods.'"  *Bath & Body Works, Inc., v. Luzier Personalized Cosmetics*, 76 F.3d 743, 747 (6th Cir. 1996) (citations omitted).  The more distinctive "[s]uggestive, arbitrary, and fanciful marks . . . are protectable so long as the putative owner has actually used the mark," *Tumblebus, Inc.*, 399 F.3d at 761.  A "merely descriptive" mark is "not 'inherently distinctive,' but can become protectable by developing a secondary meaning."  *Id.*  It is well-established, however, that "[g]eneric marks, on the other hand, receive no protection," *id.*, and "cannot become a trademark under any circumstances."  *Bath & Body Works*, 76 F.3d at 747.

The test for genericness is "whether the public perceives the term primarily as the designation of the article."  *Id.* at 748.  This determination of whether a particular mark is generic is usually a question of fact, *see id.*, but the Sixth Circuit in *Natron Corp. v. STMicroelectornics, Inc.* affirmed genericness as an appropriate issue for the district court to decide on summary judgment where the evidence warrants:

> The district court correctly granted summary judgment in favor of ST on the issue of genericness of the term "smart power" as used in the semiconductor industry in connection with ST's products, including ST's VIPower tm line of products. In opposing ST's summary judgment motion on the issue of genericness, Nartron failed to present evidence demonstrating any genuine issues of material fact. A generic term can never function as a trademark.

305 F.3d 397, 403 (6th Cir. 2002) (affirming summary judgment determination of genericness where plaintiff "failed to rebut, that the term 'smart power,' as used by ST and other participants in the semiconductor industry, denotes a type of technology, not goods associated with Nartron" even where the "smart power" mark was incontestable, being federally registered).  If TSS fails to present adequate evidence to demonstrate a genuine issue of fact of the disputed phrases' non-

11

genericness, therefore, summary judgment will be appropriate. *See Bath & Body Works,* 76 F.3d at 748, *infra.*

In June 2001, on TSS's first application for trademark protection of the mark "THE SCOOTER STORE," the USPTO determined the proposed mark to be generic in the area of retail and mail order sales of scooters—which is the type service in which SpinLife engages. (Motion, Exh. C. at 1.) The USPTO's analysis in making this determination was thorough and unequivocal:

> [T]he proposed mark appears to be generic as applied to the services and, therefore, incapable of identifying the applicant's services and distinguishing them from those of others. Case law holds that the term "store" is generic for retail services, and that, where an applicant combines the generic name of goods, such as "liquor" and the generic term "store," the resulting mark "liquor store," is generic for retail services selling those goods. The term "scooter" appears to be generic for motorized scooters such as those sold by the applicant. The applicant has merely added the generic term SCOOTER to the generic term STORE, resulting in the generic mark THE SCOOTER STORE.

*Id.* (citing *In re Management Recruiters Int'l, Inc.*, 1 USPQ2d 1079, at *5 (TTAB 1986) ("A generic term, which has been called the ultimate in descriptiveness, is the common descriptive name of a class of goods or services and can never be registered as a trademark because such a term is 'merely descriptive' within the meaning of Section 2(e)(1) of the Act."); *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999) ("Generic marks are the weakest and not entitled to protection--they refer to a class of which an individual service is a member (e.g., 'liquor store' used in connection with the sale of liquor).")).

Accordingly, the USPTO initially denied registration of the "'502 mark" for "THE SCOOTER STORE," concluding that "the entire mark appears to be generic for retail store services featuring motorized scooters for the disabled." (*Id.* at 2.) On TSS's subsequent

application for the "'979 mark" of "THE SCOOTER STORE AND DESIGN," the USPTO noted the following disclaimer: "No claim is made to the exclusive right to use THE SCOOTER STORE apart from the mark *as shown*." (Motion, Exh. D at 3) (emphasis added). The USPTO only granted the registrations after TSS insisted that its particular display of the words "THE SCOOTER STORE" was presented in a distinctive manner, (Motion, Exhs. F-G), and granted them only for "insurance claims processing for others . . . maintenance and repair services for wheelchairs, scooters," as opposed to retail sales. (Motion at 7.)

The terms SpinLife purchased as Adwords and used as metadata which form the basis of TSS's infringement claims, therefore, are precisely the phrases that the PTO Examiner found to be generic. SpinLife merely uses the phrases "the scooter store," "scooter store" and the others containing combinations of "scooter" and "store" in the context of promoting its online retail sales of motorized scooters. TSS does not dispute that it has no registered trademarks covering the disputed phrases containing "scooter store." The burden is on TSS to prove their non-genericness, because "[i]f a trademark is not federally registered, once the defendant raises genericness as a defense, plaintiff must prove lack of genericness." *Bath & Body Works,* 76 F.3d at 748.

TSS's argument that "scooter store" is not generic is twofold. First, TSS asserts that the "10 year old USPTO office action" finding "scooter store" to be generic is outdated and nonbinding. Second, TSS proffers evidence in the form of the "BYU Corpora" database results for the term "scooter store" throughout various books or magazines to show that the consuming public perceives "scooter store" as a trademark for TSS, not a generic term.[1] (Opp. at 15.)

---

[1] The BYU Corpora, developed by Mark Davies, Professor of Linguistics at Brigham

TSS relies on the case of *Boston Duck Tours, LP v. Super Duck Tours, LLC,* 531 F.3d 1 (1st Cir. 2008) to downplay the weight that should be given to the USPTO's determination of the term "scooter store" as generic.  The First Circuit in *Boston Duck* warned courts against giving too much weight "to the decisions of the PTO regarding disclaimers."  *Id.* at 22.  The court did not discuss, however, the weight to be afforded a PTO examiner's overall determination on a mark's distinctiveness.  And while this Court is well aware that "an opinion by an examining attorney during the application process is not binding in court on an adversarial proceeding," *see Martha Elizabeth, Inc. v. Scripps Networks Interactive,* 2011 U.S. Dist. LEXIS 49702, at *59 (W.D. Mich. May 9, 2011), the considered determination by the PTO examiner, through multiple rounds of TSS's applications, that the mark "scooter store" by itself is generic should be given "appropriate consideration and due weight."  *GenDerm Corp. v. Ferndale Lab.*, 32 U.S.P.Q.2D (BNA) 1567, at *15 (E.D. Mich. 1994) (quoting *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir. 1985)).

TSS attacks the determination by the USPTO that the simple, descriptive term "scooter store" is generic, but then does very little to overcome "the deference that is due to a qualified government agency presumed to have properly done its job."  *See Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed. Cir. 1984) (referring to PTO examiners).  The only affirmative evidence TSS provides to show that "the scooter store" or "scooter store" is not a generic phrase, apart from statements about the amount it spends on advertising its products, are

Young University can be found online at www.corpus.byu.net.  According to its website ,The BYU Corpora is a large collection of searchable texts which has "many different uses, including: finding out how native speakers actually speak and write; looking at language variation and change; finding the frequency of words, phrases and collocates; and designing authentic language teaching materials and resources."

the results from a database search in the BYU Corpora. (Opp. at 15.) That evidence consists of database search for the terms "scooter store" in a single online "corpus" of entries from various books and magazines. The search produced a mere nine resulting entries, all of which TSS alleges "have to do with" its company.

TSS fails to meet its burden of creating a genuine issue of fact on the issue of non-genericness with only the evidence of the BYU Corpora. Even accepting, as the court must, that the nine entries returned from the search indeed refer to TSS, these results do not amount to significant enough evidence that "the public perceives the term primarily as a designation of" TSS, *see Bath & Body Works*, 76 F.3d at 748, particularly in light of the weight of evidence and findings suggesting that the term "scooter store" is generic for scooter sales. While this corpora data is in the category of "[e]vidence of consumer recognition," which can be "relevant to assessing the strength of the mark," *Citizens Banking Corp. v. Citizens Fin. Group, Inc.*, 320 F. App'x 341, 347 (6th Cir. 2009), a mere nine instances of the term "scooter store" referring to TSS from one data search does not create sufficient uncertainty of the term's genericness to overcome TSS's burden of persuasion. *See, e.g.*, *Schmidt v. Quigg*, 609 F. Supp. 227, 229-30 (E.D. Mich. 1985) (finding that two isolated pieces of evidence offered to show that "Honey Baked Ham" was common descriptive term was insufficient to "shift the burden of persuasion" on that party to show genericness).

Finding the terms at issue here "generic" as opposed to merely descriptive is significant, because unlike generic terms, "a term that is 'merely descriptive' may be used as a trademark if it has acquired a secondary meaning." *Natron Corp.*, 305 F.3d at 404. As recounted by the court

in *Natron Corp.*, "Judge Friendly illustrated the distinction between a generic and a merely descriptive mark with the 'Deep Bowl Spoon'" example:

> "Deep Bowl" identifies a significant characteristic of the article. It is "merely descriptive" of the goods, because it informs one that they are deep in the bowl portion . . . . It is not, however, "the common descriptive name" of the article (since) the implement is not a deep bowl, it is a spoon. . . . "Spoon" is not merely descriptive of the article, it identifies - the article - (and therefore) the term is generic.

*Id.* at n.7; *see also Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10, n.11 (2d. Cir. 1976).

Unlike the "Deep Bowl Spoon" mark, the term "the scooter store" merely identifies the retail establishment by the "common descriptive" name of the type of goods sold, and contains no such distinctive "adjective" or "identifying characteristic," which could potentially make it merely distinctive. *Id.* Therefore, "the scooter store" and its constituent parts, "scooter" and "store," are all generic terms.

TSS argues, alternatively, that even if "scooter store" and its parts are determined generic, the Court's inquiry on this issue does not end because the other phrases SpinLife purchased as Adwords, including "my scooter store," "your scooter store," "mobility scooter store," etc. also constitute infringement. TSS, however, provides no evidence, as it must, that these other phrases are not generic. *See Bath & Body Works*, 76 F.3d at 748. Instead, TSS merely cites cases which state that determining a trademark's genericness must be done by evaluating the mark "as a whole," (Opp. at 17), which is an accurate statement of law but does nothing to satisfy TSS's burden of proving a lack of genericness of these other phrases. This argument must also be rejected, therefore, as TSS provides no basis for the court to find that the other phrases using "scooter" and "store" are not generic.

16

### 2. Can SpinLife's use of generic phrases cause consumer confusion?

SpinLife argues that because the phrases containing "scooter store" are generic and TSS

has no trademark rights to them, SpinLife's use of the words cannot infringe TSS's trademarks

and therefore a "likelihood of confusion" analysis is unwarranted.[2]  SpinLife's argument reflects

established Sixth Circuit precedent, which states:

> "Generic terms, have no trademark significance and therefore are not entitled to protection." Thus, if a term is found to be generic, a court need not even reach the issue of the likelihood of confusion for no trademark protection exists.

*Barrios v. American Thermal Instruments, Inc.*, 712 F. Supp. 611, 614 (S.D. Ohio 1988) (quoting

*Sir Speedy, Inc. v. Speedy Printing Ctr.s, Inc.*, 746 F.2d 1479 (6th Cir. 1984), *cert. denied*, 469

U.S. 1217 (1985)).[3]

---

[2] The Sixth Circuit uses an eight-factor test to determine whether a likelihood of confusion is presented by the defendant's usage of the disputed terms.  These factors are as follows:

1. strength of the plaintiff's mark;

2. relatedness of the goods;

3. similarity of the marks;

4. evidence of actual confusion;

5. marketing channels used;

6. likely degree of purchaser care;

7. defendant's intent in selecting the mark; and

8. likelihood of expansion of the product lines.

[3] SpinLife also relies heavily on *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 357, 362-63 (11th Cir. 1997), which held that a composite mark made up of generic terms must be viewed "as a whole," and the plaintiff there was "not entitled to priority

Given the Court's holding, above, that the disputed "scooter store" terms are generic, SpinLife is therefore correct that the Court does not proceed to the question of whether its use of the terms creates a likelihood of confusion with TSS's products or service.  *Id.*

TSS insists that SpinLife need not be in use of the actual trademark to infringe it, and argues that while TSS may not have trademark rights to the disputed phrases, SpinLife's use of the phrases containing "scooter store" nevertheless infringes on its registered marks by creating a likelihood of consumer confusion.  (Opp. at 5.)  TSS maintains that its claim for infringement is similar to that upheld by the Sixth Circuit in the *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.* case, which affirmed the following jury instruction:

> Although plaintiffs [who hold a trademark for "BATH & BODY WORKS"] have no exclusive right to use the words "bath and body," you may consider the manner in which the defendant used those words on its product in determining likelihood -- . . . --likelihood of confusion and defendant's intent. Manner of use refers to the style and presentation of the words, not their meaning.

*Bath & Body Works*, 76 F.3d at 749 (affirming the district court's instruction on "plain error" review).

TSS's reliance on *Bath & Body Works* is misplaced, as the case cuts both ways to say the least.  *Bath & Body Works* highlights the same distinction that SpinLife urges in its Motion between, on the one hand, the actionable use of another's trademark for infringement based on its "likelihood of confusion," versus the non-actionable use of generic or descriptive terms which merely contain the same words which make up another's trademark.  The latter is all that TSS

---

over the descriptive words 'Lone Star'."  Likewise, TSS's registered trademarks for THE SCOOTER STORE must be viewed "as a whole," including their design aspects and the fact that they are not for retail sales.  As in *Lone Star*, TSS does not have priority over the merely descriptive words that make up its registered mark.

accuses SpinLife of in the case *sub judice*.  As the court in *Bath & Body Works* further

explained:

> The district court found that the evidence was overwhelming in favor of a finding
> of genericness. However, the record reveals that there was sufficient evidence
> from which a jury could have found otherwise. Thus, the district court's finding
> of genericness as a matter of law was erroneous. However, this finding was
> harmless error, as *Bath & Body Works stated repeatedly throughout the trial that
> it did not object to the use of the words "bath and body" in a descriptive context.
> Nor did it have any objection to the use of the words "bath and body" in
> combination with a trademark*. Bath & Body Works' objection, as stated in both
> the original complaint and the amended complaint, was to the *manner of use of
> the words "bath and body"* by Luzier on its product as it contends that causes
> confusion among consumers.

*Id.* at 748.

The plaintiff in *Bath & Body Works* understood that the defendant could use the same

descriptive words found in its trademark, so long as defendant did not use them in a manner that

would be confused with plaintiff's trademarked design.  Indeed, plaintiff's counsel insisted "that

we have not been trying to preclude the defense from using the words bath and body in ordinary

words."  *Id.* at 749 (adding that "our argument has been from the very beginning, it is the manner

in which they are using it in terms of the overall trade dress creates the appearance of a

trademark").  The implied acknowledgment behind the lawyer's distinction being that there is

nothing actionable about simply using the *words* "bath" and "body" alone.   TSS, however,

seems to be claiming precisely that, by suing SpinLife for its use of the ordinary, generic words

"scooter" and "store."

Even the affirmed jury instruction from *Bath & Body Works, supra,* which TSS relies on

for support, actually harms its position.  The court's instruction begins with "[a]lthough plaintiffs

have no exclusive right to use the words 'bath and body,' you may consider the *manner* in which

the defendant used those words *on its product.*" *Id.* at 749 (emphasis added).  As the instruction

plainly states, TSS has "no exclusive right" to the words "scooter" and "store," alone, and could

only present a genuine jury question of infringement if it contested SpinLife's *manner* of using

the words "on its product," which is not at issue here.  *Bath & Body Works*, accordingly, advises

against finding SpinLife's usage of the words "scooter store" in Adword purchases and/or

metadata being subject to a likelihood of confusion analysis.

In *Kegan v. Apple Computer, Inc.*, No. 95 C 1339, 42 U.S.P.Q.2d 1053 (N.D. Ill. 1996),

the court held that a plaintiff who holds a composite mark, such as TSS's "THE SCOOTER

STORE," cannot appropriate others' use of generic portions of that mark, such as SpinLife's use

of "scooter" and "store," in this case.  In *Kegan*, plaintiff sued Apple for its use of the suffix "–

GUIDE", which was a part of its composite registered trademark "MACGUIDE."  *Kegan*, 42

U.S.P.Q.2d at 1055.  Like SpinLife in this case, Apple moved for summary judgment on the

theory that its use of the generic suffix "—GUIDE" could not constitute infringement of

plaintiff's mark.  The court agreed with Apple:

> The question of whether the holder of a legitimate trademark can enjoin the use of
> a similar term that is likely to be confused with the trademark where that similar
> term is itself generic was raised but never decided in *Mil-Mar Shoe Co., Inc. v.
> Shonac Corp.*, 75 F.3d 1153, 1160 [ 37 USPQ2d 1633 ] (7th Cir. 1996). In this
> case, the court finds that in order to proceed on a trademark infringement claim,
> [plaintiff] must first show that the term --GUIDE may be protected. Because --
> GUIDE is not a registered trademark, the burden is on Elan to show that the term
> is not generic.

*Kegan*,  42 U.S.P.Q.2d at 1057 (citing *Technical Publ'g Co. v. Lebhar-Friedman, Inc.*, 729 F.2d

1136, 1139 (7th Cir. 1984) ("Plaintiff, as claimant to protection for an unregistered mark, bears

the burden of proving that 'Software News' is not generic.").

The *Kegan* court confirmed that it would conduct a "likelihood of confusion" analysis *only* if "—GUIDE" was deemed "suggestive or fanciful" as opposed to generic. *See id.* at 1060 (finding the term GUIDE to be generic as a matter of law and therefore ruling that "Apple cannot be said to have infringed on Elan's MACGUIDE trademark"). Other courts in this circuit have similarly held that a party's use of generic terms, without more, cannot constitute infringement of another's trademark. In *Gaylord Entm't Co. v. Gilmore Entm't Group*, *LLC*, the court stated:

> A generic term does not identify and distinguish the product of only one seller. Thus, the original maker of the product or the first user of the term cannot acquire an exclusive right to use the term. The policy behind denying trademark protection to generic names is that "[g]eneric names are regarded by the law as free for all of us to use. They are in the public domain."

187 F. Supp.2d 926, 936-37 (M.D. Tenn. 2001) (citing 2 McCarthy on Trademarks, § 12.1-2 (4th Ed.)).

The more recent case of *Borescopes R US v. 1800Endoscope.com, LLC,* 728 F. Supp. 2d 938 (M.D. Tenn. 2010), following *Gaylord*, held that "to be protected against unfair competition . . . a generic term must have acquired some secondary meaning," *Borescopes*, 728 F. Supp. 2d at 949. ("A party, however, cannot obtain relief under the Lanham Act for a claim of unfair competition which is 'predicated solely on the competing use of a generic term.'"). The Court therefore holds that TSS's infringement and unfair competition claims based on "likelihood of confusion" fail as a matter of law because SpinLife's Adword purchases and metadata uses are of generic terms.

Although TSS did not argue it in its briefing, at oral argument TSS asserted that sufficient evidence existed to create a genuine issue of material fact that the term "scooter store" has acquired a "secondary meaning" associated with TSS, and hence its infringement claim based on

consumer confusion is not foreclosed. The development of a "secondary meaning" can grant a party trademark rights in an otherwise unprotected mark:

> Marks which are merely descriptive of a product are not inherently distinctive. When used to describe a product, they do not inherently identify a particular source, and hence cannot be protected. However, descriptive marks may acquire the distinctiveness which will allow them to be protected under the Act. Section 2 of the Lanham Act provides that a descriptive mark that otherwise could not be registered under the Act may be registered if it 'has become distinctive of the applicant's goods in commerce.' §§ 2(e), (f), 15 U.S.C. §§ 1052(e), (f).

*Two Pesos, Inc., v. Taco Cabana*, *Inc.*, 505 U.S. 763, 769 (1992).

The Sixth Circuit has similarly stated that even merely descriptive marks "can, by acquiring a secondary meaning, i.e., becoming 'distinctive of the applicant's goods' . . ., become a valid trademark." *Bath & Body Works*, 76 F.3d at 748 (quoting *Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984)). The Supreme Court distinguishes a generic, or "common descriptive," mark from a "merely descriptive" mark, stating:

> Generic terms are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic. See §§ 2, 14(c), 15 U. S. C. §§ 1052, 1064(c). A "merely descriptive" mark, in contrast, describes the qualities or characteristics of a good or service, and this type of mark may be registered only if the registrant shows that it has acquired secondary meaning, *i.e.*, it "has become distinctive of the applicant's goods in commerce." §§ 2(e), (f), 15 U. S. C. §§ 1052(e), (f).

*Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 194 (1984).

As stated above, protection based on acquiring second meaning is not applicable to generic marks. This Court has determined, *supra*, that TSS has not met its burden for overcoming the disputed marks' genericness. Thus, TSS's argument for secondary meaning of the term "scooter store," to the extent it argued for one, must be denied.

In conclusion, because the Court finds that the disputed terms are generic, they are not protectable and cannot infringe TSS's "THE SCOOTER STORE" mark based on creating consumer confusion. *Barrios*, 712 F. Supp. at 614. TSS therefore has no trademark rights in the phrases "the scooter store," "my scooter store" and other phrases containing "scooter" and "store" which could form the basis of its lawsuit. SpinLife's purchase of generic "scooter store" phrases as Google Adwords and placing them in its website metadata do not infringe TSS's registered trademarks under Section 43(a) of the Lanham Act and Texas state law. *See Tumblebus, Inc.*, 399 F.3d at 761; *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010) (holding that the court's decision on trademark infringement claims and unfair competition claims under the Lanham Act were "dispositive of its corresponding claims under Texas law as well" as "'[a] trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions'") (citations omitted).

TSS's state and federal claims for unfair competition under the same analysis fail as well. *See AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 792 (6th Cir. 2004), *superseded in unrelated part by Hershey Co. v. Art Van Furniture, Inc.*, 2008 U.S. Dist. LEXIS 87509 at *38 (E.D. Mich. 2008) (noting that "unfair competition claim entails the same analysis" as infringement claims under Section 43(a) of the Lanham Act); *see also Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 604 (6th Cir. 1991) ("Wynn II") (applying "likelihood of confusion" test to an unfair competition claim brought pursuant to § 1125).

### C.     TSS's Unjust Enrichment and Misappropriation Claim

Turning to TSS's affirmative claim for unjust enrichment and misappropriation, SpinLife argues that the use of unregistered, generic phrases is not actionable under a Texas common law unjust enrichment theory.  SpinLife argues that because its use of the generic phrases is not "wrongful," under Texas law, unjust enrichment is not a basis for recovery.  *See Cistobal v. Allen*, 2010 Tex. App. LEXIS 5829, at *17 ("Unjust enrichment occurs when the defendant wrongfully secures a benefit which would be unconscionable to retain.").

A plaintiff may recover under unjust enrichment theory "if a defendant obtains a benefit from the plaintiff 'by fraud, duress, or the taking of an undue advantage.'"  *Id.* (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).  Texas federal courts have held, in the context of trademark infringement actions, that where "Plaintiffs have failed to establish a claim for federal or common law trademark infringement, Plaintiffs cannot establish that a genuine issue of material fact exists as to [their unjust enrichment] claim." *Cathey Assocs. v. Beougher*, 95 F. Supp. 2d 643, 656 (N.D. Tex. 2000).  The Court's dismissal of TSS's trademark infringement claims thus also negates its claim for unjust enrichment and misappropriation based on the same allegations of wrongdoing.

### D.     TSS's State Anti-Dilution Claim

TSS's lawsuit alleges that SpinLife's actions dilute the distinctiveness of its registered trademarks in violation of the Texas Anti-Dilution Act, (Amend. Compl. ¶¶ 104-05), and have unjustly enriched SpinLife by misappropriating TSS's property.  (*Id*. at ¶¶ 110-11.)  SpinLife contends that its uses of the generic phrases at issue are not actionable under the Texas anti-dilution statute or Texas common law unjust enrichment.  (Motion at 16, n. 5.)

Texas's anti-dilution statute states, in pertinent part:

> A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services.

Tex. Bus. & Com. Code § 16.29 (2011).

SpinLife relies on *Half Price Books, Records, Magazines, Inc.*, *v. Barnesandnoble.com, LLC*, 2003 U.S. Dist. LEXIS 24254, at *15 (N.D. Tex. 2003), which held that a plaintiff must show that its mark is distinctive to establish a dilution claim, to argue that its use of the generic phrases "the scooter store," etc. cannot be actionable for dilution.  Unlike the plaintiff's mark in *Half Price Books*, however, TSS's marks for "THE SCOOTER STORE" are federally registered marks.  TSS's anti-dilution claim does not automatically fail simply because of the Court's determination, *supra*, that the disputed phrases are generic.

> Under section 16.29, a plaintiff may seek an injunction to remedy ongoing dilution of a protected trademark *even if it is not in business competition with the defendant(s) and irrespective of the existence vel non of any likelihood of consumer confusion.* The owner of a distinctive mark may obtain relief under an anti-dilution statute if there is a "likelihood of dilution" due to 1) "blurring," a diminution in the uniqueness and individuality of the mark, or 2) "tarnishment," an injury resulting from another's use of the mark in a manner that tarnishes or appropriates the goodwill and reputation associated with the plaintiff's mark.

*Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1081 (5th Cir. 1997) (emphasis added) (citing 3 McCarthy, §§ 24:67-69; *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 965-966 (2d Cir. 1996)).

Thus, while "'[i]t is clear that anti-dilution statutes. . .are designed to protect only strong, well-recognized marks,'" *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1081 n. 14 (5th Cir. 1997) (citation omitted), SpinLife has offered no evidence against TSS's *registered* marks

being distinctive, so the Court must assume that they are for purposes of the instant motion. *Cf. Half Price Books*, 2003 U.S. Dist. LEXIS at *15 ("[T]he court concludes that the mark 'Half Price Books' is not distinctive and therefore Half Price has not shown a substantial likelihood of success on its anti-dilution cause of action."). Likewise, SpinLife did not address the "likelihood of dilution" alleged by TSS, which under *Exxon Corp.* does not depend on the "likelihood of consumer confusion" issue decided by the Court here. Accordingly, SpinLife's motion does not provide a sufficient basis for deciding TSS's state law anti-dilution claim at this time.

## V. CONCLUSION

For the reasons stated above, Defendant SpinLife's Motion for Partial Summary Judgment is hereby **GRANTED** in part, and **DENIED** in part. The phrases "the scooter store," "scooter store," and other such phrases containing "scooter store" are generic, and Plaintiff TSS has no trademark rights in the use of these phrases.

Defendant's requested relief for a declaratory judgment in Counts three and five of its Amended Counterclaim is hereby **GRANTED** in part. SpinLife's alleged use of the generic terms "the," "scooter" and "store," and combinations of the same do not infringe Plaintiff's trademark rights in U.S. Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227.

Plaintiff's affirmative claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), and Texas state law, are hereby **DISMISSED**. Plaintiff's claims for unfair competition under federal and state law are also hereby **DISMISSED**.

26

The Court makes no determination regarding Plaintiff's state law claim under Texas's anti-dilution statute, Tex. Bus. & Com. Code § 16.29.

**IT IS SO ORDERED.**

                                        **_s/Algenon L. Marbley_**
                                  **ALGENON L. MARBLEY**
                                  **UNITED STATES DISTRICT JUDGE**

**DATED: December 21, 2011**