IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE SCOOTER STORE, INC., ET AL., | ) | Case No. 2:10-CV-0018-ALM-EPD |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Judge Algernon L. Marbley |
| v. | ) | |
| | ) | |
| SPINLIFE.COM, LLC, | ) | Magistrate Judge Elizabeth Preston Deavers |
| | ) | |
| Defendant. | ) | |

---

**PLAINTIFFS' OBJECTION TO, AND MOTION FOR RECONSIDERATION OF, THE COURT'S OPINION AND ORDER ON SPINLIFE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

The Scooter Store, Inc. and The Scooter Store, Ltd. ("Plaintiffs" or "TSS") file this Objection to, and Motion for Reconsideration of, this Court's Opinion and Order on SpinLife's Motion for Partial Summary Judgment.

**I.
Summary of Grounds for Reconsideration**

1. Plaintiffs respectfully request that the Court reconsider its ruling on SpinLife's Motion for Partial Summary Judgment for the following related reasons:

a. The ruling adversely affects Plaintiffs' rights to its federally-registered trademark "THE SCOOTER STORE."[1]  Because SpinLife had expressly carved out of its motion for partial summary judgment any request for relief related to the federally-registered trademark, Plaintiffs had no notice that the Court would consider granting such relief.  In fact, relying on SpinLife's filings, Plaintiffs believed they were on notice that the issue was squarely *not* before the Court.

b. SpinLife failed to submit any evidence that would meet its burden of proof on whether

---

[1] Opinion and Order, p. 26.  (ECF No. 140)

THE SCOOTER STORE was a generic term. Because the mark was registered, it was presumptively not generic. SpinLife's failure to submit any evidence to show genericness is consistent with its briefing that it was not seeking summary judgment on whether the mark was generic, and constitutes further evidence that Plaintiffs lacked any notice that the Court would rule that its federally-registered mark was generic.

## II.
## Argument and Authorities

**A.     Plaintiffs Had No Notice that the Court Might Rule on "THE SCOOTER STORE."**

2.     District courts unquestionably possess the power to trigger summary judgment on their own initiative. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Jardines Bacata, Ltd. v. Diaz-Marquez*, 878 F.2d 1555, 1560 (1st Cir.1989). At the same time, however, district courts must temper their exercise of that power by the need to ensure that the parties receive adequate notice that they must bring forward all of their evidence. *See Celotex Corp.*, 477 U.S. at 326, 106 S. Ct. at 2554. Accordingly, the inquiry focuses upon whether a court provided sufficient notice prior to any sua sponte award of summary judgment.

3.     The restrictions upon the ability of the district court to award summary judgment sua sponte emanate from Rule 56 of the Federal Rules of Civil Procedure. The Rule provides that motions for summary judgment "shall be served at least 10 days before the time fixed for the hearing," and expressly allows nonmovants to "serve opposing affidavits" at any time prior to the day of the hearing. Fed.R.Civ.P. 56(c). *See Otis Elevator Co. v. George Washington Hotel Corp.* 27 F.3d 903 (3d Cir. 1994).

4.     Courts have recognized repeatedly that this notice provision is not an unimportant technicality, but a vital procedural safeguard. *National Fire Ins. v. Bartolazo*, 27 F.3d 518, 520 (11th Cir.1994); *Hanson v. Polk County Land, Inc.*, 608 F.2d 129, 131 (5th Cir.1979); *Wingard*

*v. Emerald Venture Fla. LLC,* 438 F.3d 1288, 1296 (11th Cir. 2006) (a sua sponte summary judgment, without notice to the non-moving party, is wrought with the potential for violations of litigants' procedural rights) (citing *Massey v. Cong. Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997). Most notably, the notice provision ensures that litigants will have an opportunity in which to formulate and prepare their best opposition to an impending assault upon the continued viability of their claim or defense. *Stella v. Town of Tewksbury*, 4 F.3d 53, 55 (1st Cir.1993); *see Bartolazo*, 27 F.3d at 520 (stating that the notice requirement ensures an adequate opportunity for litigants to prepare a reasoned, complete response to the motion before the court).

5. Notice is adequate when the target of the judgment has reason to believe the court might reach the issue, and has had "a fair opportunity to put its best foot forward" by presenting evidence on the essential elements of the claim. *Vives v. Fajardo*, 472 F.3d 19, 22 (1st Cir. 2007); *Jardines Bacata, Ltd. v. Diaz-Marquez,* 878 F.2d 1555, 1561 (1st Cir. 1989) (superceded by rule on other grounds); *Gibson v. Mayor and Council of City of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004).  Any question on this point should be resolved in favor of the losing party. *Jardines Bacata*, 878 F.2d at 1561. "[G]reat care must be exercised to assure that the [unsuccessful party] has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law." *Id.* (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2720 at 34 (1983)).

6. "Where the district court has allegedly granted summary judgment sua sponte, [the Sixth Circuit] looks to the totality of proceedings before the district court to determine whether the losing party had sufficient notice that summary judgment could be granted against him." *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 Fed. App'x 953, 960 (6th Cir. 2007) (citing *Celotex Corp.*); *Bennett v. City of Eastpointe,* 410 F.3d 810, 816 (6th Cir. 2005)). "The key inquiry is

whether the losing party was on notice that he had to muster the necessary facts to withstand summary judgment, lest he face the dismissal of his claims." *Excel Energy, Inc*., 246 Fed.Appx. 953 at 959-60.

7.  In making this determination, courts have looked to, for example, whether the prevailing party filed a motion for summary judgment, and if so, what claims that motion purported to address.  *Id.* at 960, citing *Employers Ins. of Wausau v. Petroleum Specialties, Inc*., 69 F.3d 98, 104 (6th Cir. 1995); *GBJ Corp. v. E. Ohio Paving Co*., 139 F.3d 1080, 1084, 1089-90 (6th Cir. 1998).  It also looks to what issues the parties focused on in their briefs, *see Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005); *GBJ Corp*., 139 F.3d at 1089-90; the factual materials that the parties submitted to the court, *see Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931-32 (6th Cir. 2000); Salehpour v. Univ. of Tenn., 159 F.3d 199, 204 (6th Cir. 1998); and whether the losing party had himself filed a motion for summary judgment.  *Pueblo of Santa Ana v. Mountain States Tel. and Tel. C*o., 734 F.2d 1402, 1408 (10th Cir. 1984).

8.  Applying these standards to the Court's rulings on SpinLife's motion for partial summary judgment, Plaintiffs did not have the procedural safeguards available to it under Rule 56, and thus did not have a fair opportunity to "put its best foot forward."  As demonstrated below, SpinLife, the movant, affirmatively did not move for summary judgment on Plaintiffs' federal registered trademark, THE SCOOTER STORE, nor did the parties focus on this federally registered mark in their summary judgment filings.  Moreover, the factual materials submitted by Plaintiffs were preliminary in nature, due to the undeveloped record at the time of the summary judgment filings.  Accordingly, the Court did not have before it the Plaintiffs' expert report showing that from a sample of 1053 usages of the term "scooter store," almost 84% of the usages

were definitive references to Plaintiffs, i.e., The Scooter Store. Finally, Plaintiffs did not file a cross-motion.

### a. SpinLife's Summary Judgment Briefing Excludes "THE SCOOTER STORE"

9. Plaintiffs do not believe there is any dispute that the Court did not provide affirmative notice that it would grant summary judgment relief broader than SpinLife requested. SpinLife's summary judgment briefings did not provide notice to Plaintiffs, and in fact SpinLife affirmatively stated it was not seeking the relief that the Court granted with regard to the federally-registered mark "THE SCOOTER STORE." Because Plaintiffs were not provided notice that "THE SCOOTER STORE" was under attack in SpinLife's summary judgment filings, Plaintiffs accordingly had no adequate opportunity to fully brief the issue, and to demonstrate to this Court that there is in fact a genuine issue, and that SpinLife is not entitled to summary judgment.

10. "The threat of procedural prejudice is greatly diminished if the court's sua sponte determination is based on issues identical to those raised by the moving party." *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 143 (2d Cir. 2000), citing (*Snider v. Melindez*, 199 F.3d 108, (2nd Cir. 1999). Here, the Court's sua sponte rulings were not identical to the issues raised by SpinLife in its summary judgment filings.

11. The Court's grant of summary judgment to SpinLife on Count Three of its amended counterclaim should be reconsidered because SpinLife specifically carved out the phrase "THE SCOOTER STORE" from its motion for partial summary judgment. Nowhere in SpinLife's motion for partial summary judgment or in its associated briefing does it seek a declaration that TSS's federally registered trademark for "THE SCOOTER STORE" is invalid. Nor does SpinLife rely on Count Three of its amended counterclaim to ask the court to invalidate "THE

SCOOTER STORE" as a registered mark.

12. Rather, SpinLife articulates the relief that it seeks as follows, "this Court should grant partial summary judgment on all of TSS's *claims to the extent they seek to preclude SpinLife from using such non-registered, generic phrases*, and on Counts III and V of SpinLife's Counterclaim which seeks a declaration that the use and purchase of *generic terms such as "scooter" and "store"* and combinations of same do not implicate TSS's rights….."[2] Despite this limited request for partial summary judgment relief, the Court's Order grants SpinLife complete summary judgment on Count Three of its amended counterclaim.

13. In its motion for partial summary judgment, SpinLife moved the Court for judgment, **"on the ground that [Plaintiffs] have no trademark or other rights in the unregistered, generic phrase 'scooter store,' or other phrases containing 'scooter store' such as 'my scooter store,' 'mobility scooter store,' 'your scooter store,' 'the big scooter store,' 'SpinLife scooter store,' etc."**[3] Conspicuously missing from the relief sought by SpinLife is any request that the Court rule on the *federally registered* trademark, "THE SCOOTER STORE".

14. Similarly, in its Memorandum in Support of its motion for summary judgment, SpinLife states, **"TSS' attempt to preclude SpinLife from using *unregistered, generic phrases*, as well as its attempt to require SpinLife to use *unregistered, generic phrases* as negative keywords, is the subject of this Motion."**[4] In an accompanying footnote, SpinLife notes, **"SpinLife disputes all of TSS' claims, including that the phrase "the scooter store" as an Adword, or its alleged use, was improper. *It will address TSS' remaining claims at a later date*."**[5]

---

[2] Reply Memorandum of Defendant/Counterclaim Plaintiff Spinlife.com, LLC in Support of Motion for Partial Summary Judgment, p. 17. (ECF No. 123).
[3] Motion of Defendant/Counterplaintiff SpinLife.com, LLC for Partial Summary Judgment, p. 1. (ECF No. 99). (Emphasis added.)
[4] Memorandum in Support, p. 1. (ECF No. 99). (Emphasis added.)
[5] *Id.* (Emphasis added.)

15. At the conclusion of its Memorandum in Support, SpinLife states that it **"is entitled to partial summary judgment on all of TSS' claims** *to the extend they seek to preclude SpinLife from using non-registered, generic phrases* **such as 'scooter store,' 'SpinLife scooter store,' 'your scooter store,' 'my scooter store,' 'the scooter big store,' 'mobility scooter store, etc., or seek damages, the right to equitable relief, recovery of attorney's fees and costs, or any other relief based on the same."**[6]

16. As above, SpinLife's briefing consistently emphasized that it sought only partial relief on its Count III, and that it was not seeking a ruling that the federally registered term "THE SCOOTER STORE" was generic. Accordingly, lacking notice otherwise, Plaintiffs request that the Court reconsider the sua sponte portions of its Order.

    b.    <u>The Record Was Not Fully Developed.</u>

17. The evidentiary record in this case remained highly undeveloped at the time the summary judgment briefing was completed in August 2011. The parties undertook both additional factual discovery, and all expert discovery, after the briefing was concluded.[7] Much of that discovery involved the phrase "THE SCOOTER STORE."

18. For sua sponte summary judgment to be a viable option, discovery in the case must be sufficiently advanced and the party against whom judgment was ordered must have been on notice to bring forth all of its evidence on the essential elements of the critical claim or defense.

---

[6] *Id.*, p. 17.

[7] A timeline of pertinent pretrial events is attached as Appendix A.

Depositions taken after the summary judgment briefings focused heavily on the phrase "the scooter store," as opposed to simply "scooter" or "scooter store." For example, the phrase or composite mark "The Scooter Store" appears approximately 40 times in testimony in the December 8, 2011 deposition of former SpinLife employee Jared McKinley. SpinLife had identified Mr. McKinley as knowledgeable about facts relevant to trademark infringement issues. Plaintiffs' Second Request for Production, served July 27, 2011, contained several requests pertinent to the phrase "the scooter store," as a composite mark. Because SpinLife had refused to provide documents responsive to the request, Plaintiffs had provided it with a draft Motion to Compel on December 21, 2011, shortly before the parties received the Court's Order.

*See Celotex*, 477 U.S. at 326; *Artistic Entm't v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) (summary judgment should not be granted sua sponte if the dismissed claims have not been fully developed in the evidentiary record); *see also, R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 649-50 (7th Cir. 2003) (reversing sua sponte judgment because record did not support district court's conclusions and plaintiff would have introduced additional evidence).

19. In *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996), the court stated:

> Before granting summary judgment sua sponte, the district court must assure itself that following the procedures set out in Rule 56 would not alter the outcome. Discovery must either have been completed, or it must be clear that further discovery would be of no benefit. The record must, therefore, reflect the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment.

20. The parties exchanged critical expert opinions on October 28, 2011. Plaintiffs' expert report includes overwhelming evidence that the phrase "the scooter store" as used by Plaintiffs, denotes and refers to Plaintiffs, and is not generic.[8] In his report, Dr. Robert Leonard stated, in part, the following:

> [I]t is not disputed that the words, "the," and "store" are, in isolation, generic terms. The word "scooter" however is a word that can be descriptive of the goods or services, or indicative of the goods or services, or it can even have no logical connection with the goods or services, all depending on how the word is used. When (The) Scooter Store is being used to indicate a store selling mobility products then "Scooter" and "store," relate to and are characteristic of an entire group or class or things—a store (head noun) in which scooters (modifying proper adjective) are sold. But, when (The) Scooter Store is being used to describe the providing of warranties, maintenance and repair services, or delivery of wheelchairs, and the like, the words and entire phrase are not being used descriptively. In these situations it either takes some imagination to understand how the words or entire phrase relate to the services or the words or entire phrase do not inform the user what is being provided. For example, when being used to indicate a company providing warranties, the words or entire phrase give no indication. But, when being used to indicate the delivery of wheelchairs a user with some imagination can link the words or entire phrase to the services.

---

[8] A true and correct copy of Dr. Leonard's report is attached hereto as Exhibit 1.

…

In conducting my linguistic analysis of the term(s) (The) Scooter Store, I consulted the Lexis/Nexis data bank…In my research in connection with this matter, my focus was on analyzing uses of the term (The) Scooter Store in order to determine whether the predominate usage of the term is to identify or describe the source of goods and services emanating from The Scooter Store, a store based in Texas, or as a descriptive term for *any* store that sells scooters.

In making this determination, I paid close attention to the capitalization (or lack thereof) of that term in common usage. This is because, in standard English, names considered to represent specific entities (e.g., New York, Randy Johnson, The Container Store) are denoted by the use of capital letters, as opposed to common names (e.g., city, baseball pitcher, business), which are not denoted by the use of capital letters. Writers use capital letters with names they associate with a particular entity, demonstrating that the name directly refers to or is proprietary to that entity. (See *The Cambridge Grammar of the English Language*, Rodney Huddleston and Geoffrey K. Pullum, Cambridge University Press, 2002, pages 1757-1759)

…

Based upon my review of the empirical evidence, the predominant usage of the term(s) (The) Scooter Store is to refer to the Texas based The Scooter Store. My conclusions in this respect are based upon my analysis of the usage of (The) Scooter Store in Lexis/Nexis. Under my supervision, a search was conducted in the All News/US News English language portion of the LexisNexis database for the term "scooter store" from 1993-present which returned 1053 hits. These fell into three categories:

1. Definite reference to Plaintiff(s) The Scooter Store  883      **83.9%**

2. Likely, but cannot confirm, that reference is to the Plaintiff(s)  18   **1.7%**

3. References are not to the Plaintiff(s) The Scooter Store  152     **14.4%**

…

Thus, we can see that by a wide margin the term(s) (The) Scooter Store is used to refer to the Plaintiff(s), the Texas-based company The Scooter Store. From this, the data indicate, with a high degree of certainty, that the predominant usage of (The) Scooter Store is as a composite phrase to refer to The Scooter Store.

…

Based on my training and experience in the field of linguistics I conclude that the mark The Scooter Store is not generic. I also conclude that the mark, depending on how it is being used, can be either descriptive (e.g., for a store selling mobility products), suggestive (e.g., delivery of wheelchairs), or arbitrary (e.g., for providing extended warranties). I further conclude that when the mark is being used, as we see from the LexisNexis, the vast majority of the public identifies the Texas based The Scooter Store as the source of those goods and services. As such, I conclude that the primary significance of the term is as a brand identifying

Plaintiff(s), the Texas-based company.

21. Dr. Leonard's finding that almost 84% of all references to "The Scooter Store" are to Plaintiffs is critically significant to Plaintiffs' claims. The Lanham Act states that "The primary significance of the registered mark to the relevant public…shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used." McCarthy, § 12.6, citing Lanham Act § 14(3).

22. Because the Court did not have Dr. Leonard's report before it when it entered its ruling, Plaintiffs respectfully request that the Court reconsider its Order, taking into consideration the study of data and opinions rendered by Dr. Leonard, which conclusively show that the public associates "the scooter store" with Plaintiffs, and otherwise meets the standards under the Lanham Act with respect to nongeneric terms and phrases.

    **c.**    **The Pertinent Issue was Largely Factual**

23. As above, SpinLife's motion was limited to so-called generic words and phrases, and it expressly did not move for judgment with regard to Plaintiffs' federally-registered mark, THE SCOOTER STORE. SpinLife's Motion for Partial Summary Judgment offers neither argument nor evidence seeking to invalidate TSS's rights under the federal registration "THE SCOOTER STORE." Consequently, TSS had no opportunity to demonstrate its rights in its federally registered trademark prior to the Court's ruling that in effect nullifies those rights.

24. The essence of SpinLife's claim on summary judgment is that the generic components of a composite mark can, as a matter of law, never be used in a way that causes a likelihood of consumer confusion. Plaintiffs disagree with this assertion. The question of the appropriate use of a generic component of a composite mark was the issue that was briefed and argued by the parties. There was no motion, briefing, or argument on the standards required before a court

may properly invalidate or otherwise nullify a federally registered and incontestable trademark.

25. Notice before a court grants a sua sponte summary judgment is more critical when the summary judgment ruling turns on factual issues, rather than legal issues. *See Coach Leatherware Co. v. Ann Taylor, Inc.,* 933 F.3d 162 (2nd Cir. 1991). As with most trademark disputes, and as demonstrated by the Court's analysis, the parties' respective claims and defenses rely heavily on issues of fact.

26. The crucial test in resolving trademark disputes is where there is a genuine issue of material fact as to whether the term or phrase "THE SCOOTER STORE" is generic. *Nartron Corp. v. STMicroelectronics, Inc.,* 305 F.3d 397, 404, 64 U.S.P.Q.2d 1761 (6th Cir. 2002). The appropriate "test for genericness is whether the [relevant] public perceives the term primarily as the designation of the article." *Nartron, id.,* citing *Blinded Veterans Association v. Blinded Veterans Foundation*, 277 U.S. App. D.C. 65, 872 F.2d 1035, 1041 (D.C. Cir. 1989). The classification of a mark is generally a factual question. *Courtenay Comm. Corp.*, 334 F.3d at 215

27. When a trademark has been registered, it is presumed not to be generic. *Reese Pub. Co. v. Hampton Int'l Comm'ns, Inc*., 620 F.2d 7, 11 (2nd Cir. 1980). Thus, the party challenging the validity of the registered trademark must present evidence sufficient to overcome the presumption that the trademark is valid. Given the statutory presumption of validity accorded to registered marks, the determination of the primary significance of Plaintiffs' marks requires evidence that was never before the Court. Even as a threshold matter, SpinLife failed to submit any evidence to rebut the presumption that Plaintiffs' registered mark is not generic. Thus, there was nothing for the Court to consider, in terms of evidence from SpinLife, whether to grant summary judgment on a sua sponte basis on the registered mark. In such cases, sua sponte summary judgment rulings are rightfully subject to objection, or for reconsideration. See *Frito-

*Lay, Inc. v. Bachman Co.*, 704 F.Supp. 432, 440 (S.D.N.Y. 1989).

28.     Granting summary judgment on Count Three of SpinLife's amended counterclaim is also improper because SpinLife has offered no summary judgment evidence demonstrating the manner in which it used Plaintiffs' "THE SCOOTER STORE" mark. The Court places emphasis on the fact that, in its application to the PTO, TSS pointed out that it does not use the phrase "THE SCOOTER STORE" generically, but rather uses the mark with distinct type face and set apart from surrounding text in order to identify the company itself.  The manner in which a federal trademark applicant uses its own mark is, of course, relevant for the PTO to consider in deciding whether to grant the requested protection.

29.     The question in this case, however, is not the manner in which Plaintiffs use the mark, but rather the manner that it is used by the consuming public in the time period relevant. As Judge Learned Hand explained, "The single question, as I view it, in all these cases, is merely one of fact:  What do buyers understand by the word for whose use the parties are contending?" *Bayer Co. v. United Drug Co.*, 272 F. 505 (D.N.Y. 1921).  The 1984 amendments to the Lanham Act are viewed as codifying the Learned Hand test into federal law.  *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 19 U.S.P.Q.2d 1551 (Fed. Cir. 1991).  As the Third Circuit has put it: "It is the relevant consumers, not the courts, who determine whether the term signifies the genus of [products].  *Berner Int'l Corp. v. Mars Sales Go.*, 987 F.2d 975, 26 U.S.P.Q.2d 1044 (3d Cir. 1993).

30.     This Court has ruled that "THE SCOOTER STORE" mark is not valid for "retail services."  However, the Court has not invalidated the mark and the mark was indisputably issued for specified purposes. As the Court has acknowledged, "THE SCOOTER STORE" mark is valid for "insurance claims processing for others; maintenance and repair services for

wheelchairs, power chairs, lift chairs, and motorized scooters; and delivery of wheelchairs, power chairs, lift chairs, and motorized scooters."[9] Consequently, the question in SpinLife's Count Three is whether SpinLife is engaged in the activities for which the trademark was granted and whether SpinLife has improperly used TSS's mark in engaging in such activities. SpinLife's summary judgment is bereft of any evidence demonstrating either (1) the activities in which SpinLife engages, or (2) the manner in which SpinLife uses the mark "THE SCOOTER STORE." Absent such evidence, this Court has no basis on which to grant SpinLife summary judgment on its Count Three.

31. If given the opportunity to respond to the Court's deliberation on the protectiveness of the "THE SCOOTER STORE" trademark, Plaintiffs, at a minimum, would have offered the report of its expert witness, Dr. Robert A. Leonard, which provides overwhelming evidence that consumers who utilize the phrase "the scooter store" are referring to Plaintiffs, and not using the term in a generic manner.[10]

Wherefore, Plaintiffs pray that this Motion be granted and that the Court reconsider those portions of its Order that appear to be sua sponte, or otherwise based on the arguments and authorities contained herein, and for general relief.

---

[9] Opinion and Order, at 3.
[10] See Exhibit 3.

Respectfully submitted,


     /s/ *Lamont A. Jefferson*
Lamont A. Jefferson
Texas State Bar No. 10607800
HAYNES AND BOONE, L.L.P.
112 E. Pecan, Suite 1200
San Antonio, Texas 78205
Telephone: (210) 978-7413
Facsimile: (210) 554-0413
E-mail: lamont.jefferson@haynesboone.com

- and –

Stephen D. Jones (0018066)
Jeremy S. Young (0082179)
ROETZEL & ANDRESS, LPA
155 East Broad Street, 12th Floor
Columbus, OH 43215
Telephone: 614.463.9770
Facsimile: 614.463.9792
E-mail:  sjones@ralaw.com
        jyoung@ralaw.com

Donald Scherzer (0022315)
ROETZEL & ANDRESS, LPA
1375 East Ninth Street
One Cleveland Center, Suite 900
Cleveland, OH 44114
Telephone:  216.615.7418
Facsimile:  216.623.0134
E-mail:   dscherzer@ralaw.com

**ATTORNEYS FOR PLAINTIFFS,
THE SCOOTER STORE, INC. AND
THE SCOOTER STORE, LTD.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of Plaintiffs' Motion to Compel was served upon the following counsel of record via email on Friday, Jan. 6, 2012, and again via the Court's electronic Filing system on this 9th day of January, 2012.

Michael Hiram Carpenter, Esq.
Angela M. Paul Whitfield, Esq.
Timothy R. Bricker, Esq.
CARPENTER LIPPS & LELAND LLP
280 Plaza Suite 1300
280 North High Street
Columbus, Ohio  43215

                                           /s/ *Lamont A. Jefferson*
                                           Lamont A. Jefferson

## CERTIFICATE OF CONFERENCE

This certifies that counsel for Plaintiffs conferred with counsel for Defendant regarding the merits of this Motion, and agreement could not be reached.

                                           /s/ *Lamont A. Jefferson*
                                         Lamont A. Jefferson (Lisa S. Barkley, with permission)

## Appendix A

| Date | Filing |
|---|---|
| May 19, 2011 | SpinLife filed its Motion for Partial Summary Judgment (ECF 99) |
| June 9, 2011 | TSS filed their Unopposed Motion to Extend Summary Judgment Briefing Schedule (ECF No. 113). |
| June 27, 2011 | TSS deposed SpinLife's principal, Lisa Stein. (Originally noticed for June 8, 2011) |
| July 11, 2011 | TSS filed its Memorandum in Opposition to SpinLife's Motion for Partial Summary Judgment. (ECF No. 116) |
| July 19, 2011 | SpinLife deposed TSS' principal, Doug Harrison. |
| July 27, 2011 | SpinLife filed its Unopposed Motion for Extension of Time to File its Response/Reply to TSS' Memorandum in Opposition. (ECF No. 117) |
| July 28, 2011 | Court entered its Order granting SpinLife's request for an extension to file its Reply. (ECF No. 118). |
| August 11, 2011 | SpinLife filed its Reply Memorandum. (ECF No. 123) **Summary Judgment Briefing Over.** |
| August 30, 2011 | The parties filed their Joint Motion to Amend the Deadlines set in the Court's its February 8 and June 9, 2011 Orders (ECF Nos. 90 and 112) (ECF No. 126).<br>The Motion stated:<br>In addition, the Court, in its June 9, 2011 Order, specifically required that the parties retain the December 1, 2011 deadline for Case Dispositive Motions. (See ECF No. 12). However, if that deadline is not similarly extended in line with the parties' request to extend the other deadline…**the parties would be required to file Case Dispositive Motions before expert disclosures are due and finalized.** Accordingly, the parties request that the Court extend the deadline for Case Dispositive Motions…from December 1, 2011 to January 6, 2012. (emphasis added) |
| August 31, 2011 | Court entered its Order modifying certain deadlines set in its February 8 and June 9, 2011 Orders (ECF Nos. 90 and 112) (ECF No. 127):<br>• Primary Expert Disclosure – October 14, 2011<br>• Non-Expert Discovery Cutoff – October 14, 2011<br>• Rebuttal Expert Disclosure – December 1, 201<br>• Supplemental Disclosures – December 1, 2011<br>• Expert Discovery Cutoff – January 6, 2012<br>• Case Dispositive Motions – January 6, 2012 |
| October 14, 2011 | SpinLife served its Responses to TSS' Second Set of Requests for Production. |

| October 28 through November 1, 2011 | All parties exchanged their primary expert witness disclosures.  (ECF Nos. 134 and 135). |
|---|---|
| November 28, 2011 | Oral argument. |
| November 14 to December 1, 2011 | The parties exchanged emails about open discovery matters and scheduling to take place over the next six weeks, and reached an agreement to extend the deadline for supplementing discovery responses to December 20, 2011.[11] |
| December 7, 8, 2011 | TSS deposed former SpinLife employees Keith Emigh and Jared McKinley. |
| December 9, 2011 | SpinLife deposed TSS' corporate representative, Robert Berger. |
| December 21, 2011, 9:00 a.m. | TSS emailed SpinLife a draft Motion to Compel, noting "I'm hopeful that we can come to some agreement before having to approach the court," and requesting to confer on the motion on either December 22 or 23.[12] |
| December 21, 2011, 12:30 p.m. | Opinion and Order Granting and Denying in Part SpinLife's Motion for Summary Judgment.  (ECF No. 140). |
| January 6, 2011 | Deadline for filing case dispositive motions.  (ECF No. 127). |

---

[11] A copy of this email string is attached hereto as Exhibit 2.
[12] A copy of this email is attached hereto as Exhibit 3.