**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **THE SCOOTER STORE, INC.,** *et al.,* | : | |
| | : | **Case No. 2:10-cv-18** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **SPINLIFE.COM, LLC,** | : | |
| | : | **Magistrate Judge Deavers** |
| **Defendant.** | : | |
| | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on two motions.  First is Plaintiffs' The Scooter Store, Inc. and The Scooter Store, Ltd. ("collectively "TSS") Motion for Reconsideration of the Court's December 21, 2011 Opinion and Order granting, in part, Defendant/Counterclaimant, SpinLife.com, LLC's ("SpinLife") Motion for Partial Summary Judgment.  (Dkt. 144.)  TSS asserts that the new evidence provided in the report of its expert, Dr. Robert Leonard, which TSS disclosed after briefing had concluded on SpinLife's motion for partial summary judgment, warrants reconsideration of certain of the Court's determinations.  Second is SpinLife's Motion for Summary Judgment with respect to TSS's sole remaining claim for trademark dilution based on Texas Business & Commerce Code § 16.29.  (Dkt. 143.)

The Court finds that, under Fed. R. Civ. P. 59(e), the new record evidence submitted through Dr. Leonard's expert report fails to warrant reconsideration of the Court's prior Opinion and Order on partial summary judgment.  TSS's evidence still fails to create a genuine issue of material fact as to whether SpinLife's alleged uses of the three-word phrase "the scooter store" creates a likelihood of confusion necessary to support its affirmative claims for trademark

infringement, unfair competition, unjust enrichment and misappropriation.  TSS's Motion for Reconsideration is therefore **DENIED**.

Further, the Court finds, that TSS has failed to provide any evidence in support of its sole remaining claim for dilution under Tex. Bus. & Com. Code § 16.29.  SpinLife's motion for summary judgment with respect to TSS's claim is **GRANTED**.

## II. BACKGROUND

### A. Factual Background

The facts relevant to this motion are described in greater detail in the Court's prior Opinion and Order on partial summary judgment.  *See Scooter Store, Inc. v. SpinLife.com, LLC*, No. 10-cv-0018, 2011 WL 6415516, *1–3 (S.D. Ohio, Dec. 21, 2011).  TSS's allegations are based on SpinLife's purchases of Google AdWords, and use of "metadata" phrases on its website.  Google, like most Internet search engines, engages in advertising sales in which it auctions search keywords to advertisers.  TSS alleges that SpinLife purchased the phrase "the scooter store" and other combinations using those words, such as "scooter store," "my scooter store" and "your scooter store," from Google AdWords as part of a plan to confuse TSS's customers.  TSS also complains that SpinLife placed the term "the scooter store" in so-called "meta tags" on its website, www.spinlife.com, which could cause internet users searching for TSS to be directed to SpinLife's website instead of TSS's.  These actions, TSS contends, constitute trademark infringement and unfair competition.

SpinLife counterclaimed, alleging, *inter alia*, fraud on the part of TSS in connection with its trademark applications and anticompetitive motivations behind TSS's lawsuit.  In 2005, the United States Department of Justice ("DOJ") alleged that TSS had engaged in improper business

practices related to Medicare and its beneficiaries.  TSS settled with the DOJ in 2007.  Following

the settlement, TSS expanded its services in the retail sales market.  After the expansion, it

approached SpinLife about acquiring the company, but no agreement was ever reached.  In 2009,

TSS again contacted SpinLife and indicated that it believed that SpinLife was violating its

trademark rights.  SpinLife alleges that TSS is using litigation to eliminate competition and

obtain a monopoly through the unjustified expansion of their trademarks.  Further, SpinLife

alleges that TSS aims to use the costs of litigation to drive SpinLife out of the retail sales market

for power mobility devices.

### B. Procedural History

TSS's Amended Complaint asserts the following claims: (1) Federal Unfair Competition;

(2) State Unfair Competition (based on Texas law); (3) State Dilution (based on Texas law); (4)

Federal Trademark Infringement; (5) State Trademark Infringement (based on Texas law); and

(6) Unjust Enrichment and Misappropriation.  SpinLife filed its Counterclaim, asserting: (1) a

Sherman Act violation and (2) Ohio Unfair Competition.  SpinLife also requests (3) a

declaratory judgment of non-infringement of Trademark Registration Nos. 2,710,502; 2,714,979;

2,912,774; and 3,017,227 under the Lanham Act; (4) a declaratory judgment that U.S.

Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227 are invalid; (5) a declaratory

judgment that purchase of "The," "Scooter" and "Store" keywords and related phrases does not

infringe Trademark Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227; and (6) a

declaratory judgment that Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227 are

unenforceable.

On April 18, 2011, the Court granted, in part, TSS's motion to dismiss, and dismissed

Counts Four and Six of SpinLife's Counterclaim (seeking invalidation of TSS's trademarks due

to fraud in its trademark applications in the USPTO).  On May 19, 2011, SpinLife filed a motion for partial summary judgment to establish that TSS has no trademark or any other rights in the unregistered, generic phrase, "scooter store," or other phrases containing "scooter store" such as "my scooter store," "mobility scooter store," "your scooter store," "the scooter big store," "SpinLife scooter store," etc.  (Dkt. 99.)  SpinLife's partial summary judgment motion was ripe for determination on August 11, 2011, when SpinLife filed its Reply brief.  On August 31, the parties jointly moved to extend the deadlines including expert disclosures, which the Magistrate Judge granted.  (Dkt. 127.)  On October 31, 2011, pursuant to the Court's extended expert disclosure deadlines and Fed. R. Civ. P. 26(a)(2), TSS disclosed its expert witnesses to SpinLife. (*See* Dkt. 134.)

In its December 21, 2011 Opinion and Order, the Court granted, in part, SpinLife's motion for partial summary judgment.  The Court ruled that "[t]he phrases 'the scooter store,' 'scooter store,' and other such phrases containing 'scooter store' are generic, and Plaintiff TSS has no trademark rights in the use of these phrases."  (Dkt. 140 at 26.)   The Court ruled that "SpinLife's alleged use of the generic terms 'the,' 'scooter' and 'store,' and combinations of the same do not infringe [TSS]'s trademark rights in U.S. Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227."  (*Id*.)  As a result of its findings the Court dismissed all of TSS's affirmative claims against SpinLife except for the trademark dilution claim brought under Texas state law.  (*Id*); (*see also* Compl. ¶¶ 104-05.)

On January 6, 2012, SpinLife filed a motion for summary judgment on TSS's remaining claim of trademark dilution.  On January 9, 2012, TSS filed a motion requesting reconsideration of the Court's decision on summary judgment to dismiss its claims with respect to SpinLife's alleged uses of the phrase "the scooter store."  TSS attached to its motion, and for the first time

4

on the record, the study of data and opinions rendered by Dr. Leonard.  Both SpinLife's motion

for summary judgment and TSS's motion for reconsideration are now fully-briefed and ripe for

determination.

### III. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not expressly provide for "motions for

reconsideration."  *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949,

959 (6th Cir. 2004).  Under Rule 59(e), however, a party may "motion to alter or amend a

judgment" with "28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  The Sixth

Circuit has held that "[a] Court may grant a Rule 59(e) motion to alter or amend if there is: (1) a

clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law;

or (4) a need to prevent manifest injustice."  *ACLU of Ky. v. McCreary County*, 607 F.3d 439,

450 (6th Cir. 2010) (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).

Additionally, Rule 60(b) provides that "[o]n motion and just terms, the court may relieve

a party or its legal representative from a final judgment, order, or proceeding" for reasons

including "mistake, inadvertence, surprise, or excusable neglect . . . . newly discovered evidence

that, with reasonable diligence, could not have been discovered."  Fed. R. Civ. P. 60(b).  Motions

for reconsideration are not intended as an opportunity "to re-litigate issues previously considered

by the court or to present evidence that could have been raised earlier."  *Keymarket of Ohio, LLC

v. Keller*, Case No. 08-cv-325, 2010 U.S. Dist. LEXIS 17933, *7-8 (S.D. Ohio 2010).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  Summary judgment on a claim or issue "will not lie if the . . . evidence is such that a

reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant has the burden of establishing that there is no genuine issue of material fact to be tried by the factfinder.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).  The non-movant must then come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find in its favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

### IV. LAW AND ANALYSIS

### A.  TSS's Motion for Reconsideration

### 1.  Requirements for Reconsideration Under Rule 59(e)

TSS requests the Court reconsider its prior decision on partial summary judgment for the following reasons: (1) TSS had no notice that any issues regarding its federally-registered trademarks were before the Court, and thus TSS did not have sufficient opportunity to brief fully the issue; (2) the record was not fully developed at the time of the briefing was completed on SpinLife's motion for partial summary judgment; and (3) SpinLife failed to submit sufficient evidence to meet its burden of proving that "THE SCOOTER STORE" is a generic term.  (Dkt. 144, at 1-2.)  TSS's request for reconsideration is limited, apparently, to the Court's rulings made with respect to the full three-word phrase, "the scooter store."  SpinLife argues that TSS's motion is ambiguous in the scope of its request for reconsideration.  SpinLife contends that the Court's determinations of genericness and grants of summary judgment were appropriate, even in light of TSS's expert report of Dr. Leonard.

Although TSS does not bring its motion to reconsider under any express legal provision, the Court will treat TSS's motion as a request to alter judgment under Rule 59(e).  TSS's request is timely, having been brought within 28 days of the Court's December 21, 2011 Order.  *See* Fed. R. Civ. P. 59(e).

In its December 21, 2011 Order, the Court determined that "[t]he phrases 'the scooter store,' 'scooter store,' and other such phrases containing 'scooter store' are generic, and Plaintiff TSS has no trademark rights in the use of these phrases," and, thus, "SpinLife's alleged use of the generic terms 'the,' 'scooter' and 'store,' and combinations of the same do not infringe [TSS]'s trademark rights in U.S. Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227."  (Dkt. 140 at 26.)  Pursuant to these determinations, the Court granted SpinLife summary judgment, dismissing all of TSS's claims that rely on a theory of TSS having trademark rights to the generic phrases.  (*Id.*)

TSS's first basis for reconsideration, that it was "not provided notice that 'THE SCOOTER STORE' was under attack," (Dkt. 144 ¶ 9), is misguided.  The Court's ruling was limited to alleged use of the phrases by SpinLife in its *retail sale* of durable medical supplies through the internet, by purchasing internet "Adwords" and using the phrases in website metadata.[1]  The Court made no ruling with respect to TSS's federal trademark registrations of the mark "THE SCOOTER STORE" used in connection with "insurance claims processing for others; maintenance and repair services for wheelchairs, power chairs, lift chairs and motorized scooters; delivery of wheelchairs, power chairs, lift chairs and motorized scooters."  (*See* TSS's

---

[1] With respect to this count, the Court ruled that, "[d]efendant's requested relief for a declaratory judgment in Counts three and five of [SpinLife's] Amended Counterclaim is hereby **GRANTED** in part.  SpinLife's alleged use of the generic terms 'the,' 'scooter' and 'store,' and combinations of the same do not infringe Plaintiff's trademark rights in U.S. Registration Nos. 2,710,502; 2,714,979; 2,912,774; and 3,017,227."  (Dkt. 140, at 26.)

FAC ¶ 17.)  The Court determined that the simple phrases containing "scooter" and "store," over which TSS is attempting to claim trademark rights, are generic and not protected under TSS's limited "THE SCOOTER STORE" trademarks.

Second, TSS argues the Court's particular rulings that: (1) the phrase "the scooter store" is generic, and (2) SpinLife's alleged uses of the phrase "the scooter store" in internet Adword purchases and website metadata do not infringe TSS's "The SCOOTER Store" trademarks, should be amended because of new material evidence discovered since briefing concluded on the motion for partial summary judgment.  Specifically, TSS has now provided the expert report of Dr. Robert Leonard.  (Dkt. 144-1.)  TSS submits that Dr. Leonard's analysis and conclusions establish a genuine issue of material fact that the consumer public associates the phrase "the scooter store" with TSS, and that the phrase meets the standards under the Lanham Act for nongenericness.  (Dkt. 144 ¶ 22.)  Hence, argues TSS, the Court should find that Dr. Leonard's report creates a genuine issue of material fact to whether SpinLife's alleged uses of the phrase "the scooter store" infringe TSS's trademark rights.

To constitute "newly discovered evidence" warranting reconsideration under Rule 59(e), the evidence must have been previously unavailable.  *See Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  TSS's newly-submitted expert opinion of Dr. Leonard was actually unavailable to it prior to the completion of briefing on SpinLife's motion for summary judgment.  TSS is not at fault for having failed to obtain Dr. Leonard's report before briefing concluded, given the Magistrate Judge's order granting parties an extension on time to disclose experts.

SpinLife argues that since TSS had Dr. Leonard's report as of October 28, 2011, it should have supplemented its briefing.  While the Court agrees that TSS was negligent in failing to move to supplement its briefing with the evidence from the report, the Court also finds some merit in TSS's argument that it had inadequate notice of a need to defend the nongenericness of the three-word phrase "the scooter store" prior to the Court's ruling.  SpinLife's initial request for partial summary judgment arguably did not extend to that full phrase.  (*See* Motion for Partial Summary Judgment, Dkt. 99, at 1.)  TSS's failure to supplement its briefing on partial summary judgment with the evidence of Dr. Leonard's expert report is excusable, at least with respect to the full phrase "the scooter store."  Thus, if Dr. Leonard's report is sufficient to create a material issue of genuine fact on issues decided in SpinLife's motion, under Rule 59(e) the Court will amend its prior decision based on the new evidence brought before it.

### 2.  Whether Dr. Leonard's Report Creates any Genuine Issue of Material Fact

TSS claims that the opinions rendered by Dr. Leonard establish a genuine issue of material fact as to whether the public associates "the scooter store" with TSS's business, and whether it otherwise meets the standards under the Lanham Act with respect to nongeneric terms and phrases.  (*See* Dkt. 144 ¶ 22.)  SpinLife contends that the LexisNexis searches conducted by Dr. Leonard and survey results of various news articles prove nothing in regard to the genericness of the phrase "the scooter store," and are of no relevance.  SpinLife attacks Dr. Leonard's analysis and methodology, arguing that his conclusions do not create any genuine issues of material fact of the genericness of the phrase "the scooter store," or the possibility that SpinLife's actions create a likelihood of consumer confusion between SpinLife's goods and services and that of TSS's.

In its prior decision on partial summary judgment, this Court found that the purchasing of another's trademarked phrases as Adwords and/or use of such phrases in website metadata may give rise to an actionable claim of trademark infringement under the Lanham Act.  *See Scooter Store*, 2011 WL 6415516 at *4 (rejecting SpinLife's claim that "it should be awarded summary judgment because Adwords are not actionable").

The Court then turned to the application of the "consumer confusion" test for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).  The Sixth Circuit has held that "the 'touchstone of liability [under the Lanham Act] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'"  *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 355 (6th Cir. 1998) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)).  The "consumer confusion" analysis asks first whether the plaintiff's mark is protectable, "and if so, whether there is a likelihood of confusion as a result of would-be infringer's use of the mark."  *See Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 762 n. 10 (6th Cir. 2005).

A trademark's distinctiveness at any given time falls into one of five categories, in ascending order of strength: "generic, descriptive, suggestive, and fanciful or arbitrary." *Therma–Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 631 (6th Cir. 2002) (internal citations omitted).  The three categories termed suggestive, fanciful, and arbitrary "are inherently distinctive and are protectable so long as the putative owner has actually used the mark." *Tumblebus*, 399 F.3d at 762 n. 10.  A mark that is "merely descriptive," while "not 'inherently distinctive' . . . can become protectable by developing a secondary meaning."  *Id.*  Generic

10

marks, however, receive no trademark protection under any circumstances.  *See id.* at 761; *see also Bath & Body Works, Inc., v. Luzier Personalized Cosmetics*, 76 F.3d 743, 747 (6th Cir. 1996).

Hence, the Court's threshold question is whether the phrase "the scooter store" is generic.  *See Scooter Store*, 2011 WL 6415516 at *5–7.  Only if the phrase "the scooter store," by itself, is not generic does the Court proceed to the question of whether a reasonable jury could find that SpinLife's use of the phrase creates a likelihood of confusion with TSS's trademarked goods or services.  *See Scooter Store*, 2011 WL 6415516 at *9 (holding, "if a term is found to be generic, a court need not even reach the issue of the likelihood of confusion for no trademark protection exists" (quoting *Barrios v. Amer. Thermal Instruments, Inc.*, 712 F. Supp. 611, 614 (S.D. Ohio 1988)).  The test for genericness is "whether the public perceives the term primarily as the designation of the article," and this is usually a question of fact.  *Id.* at *6 (quoting *Bath & Body Works*, 76 F.3d at 747–78).

It is well-established that "if a trademark has been registered, there is a presumption that term is not generic and the defendant must overcome the presumption."  *Bath & Body Works*, 76 F.3d at 748.  Registrations for a mark, however, only serve as "prima facie evidence of [the] registrant's exclusive rights to use the mark" for those "goods or services *specified in the registration*."  *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir. 1988) (emphasis added); 15 U.S.C. §§ 1057(b),[2] 1115(a);[3] *see also Gameologist Group, LLC v. Scientific Games*

---

[2] (b) Certificate as prima facie evidence:

A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark

*Intern., Inc*., 838 F. Supp. 2d 141 (S. D. N. Y. 2011).  TSS currently owns four registered

trademarks for the mark THE SCOOTER STORE, used "in connection with 'insurance claims

processing for others; maintenance and repair services for wheelchairs, power chairs, lift chairs

and motorized scooters; delivery of wheelchairs, power chairs, lift chairs and motorized

scooters.'" *See Scooter Store*, 2011 WL 6415516 at *2.  Critically, TSS did not specify retail

sales in connection with the mark's registration.

      In *Gameologist Group*, as here, the plaintiff claimed trademark infringement under the

Lanham Act for the defendant's use of the plaintiff's registered mark with regard to goods and

services not specified in the plaintiff's registration of the mark.  *See id.* at 153 ("The plaintiff has

obtained federal registration protection for its mark for "entertainment in the nature of online

three dice casino games" and for "casino games and equipment therefor . . . [h]owever, the

plaintiff claims that the defendants infringed its mark by using the word 'bling' in connection

with lottery tickets, and the plaintiff owns no registrations for its mark for lottery tickets.").  The

district court explained that the "presumption of an exclusive right to use a registered mark

extends only to the goods and services noted in a registration certificate," and thus "the plaintiff

is not entitled to a presumption of an exclusive right to use the 'BLING BLING 2002' mark for

---

    in commerce on or *in connection with the goods or services specified in the certificate*, subject to
    any conditions or limitations stated in the certificate.

15 U.S.C. §§ 1057(b) (emphasis added).

[3] 15 U.S.C. § 1115(a) states, in relevant part:

    Any registration issued under the [Lanham Act], or of a mark registered on the principal register
    provided by this chapter and owned by a party to an action shall be admissible in evidence and
    shall be prima facie evidence of the validity of the registered mark and of the registration of the
    mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the
    registered mark in commerce on or in connection with the goods or services specified in the
    registration . . .

lottery tickets." *Id.* (concluding, "[b]ecause the plaintiff's registrations do not provide presumptive or conclusive evidence of the mark's validity, the plaintiff has the burden of proving that its mark is a valid trademark") (citations omitted).  Since TSS did not specify retail of scooters in its registration of "THE SCOOTER STORE" mark – the class of goods and services for which SpinLife allegedly uses or used the mark – it does *not* enjoy a presumption of trademark protection over its "THE SCOOTER STORE" mark for the retail sale of scooters.  *See Scooter Store*, 2011 WL 6415516, at *7.

        This Court determined, in its December 21, 2011 Opinion and Order, that "'the scooter store' and its constituent parts, 'scooter' and 'store,' are all generic terms[,]" *id.* at *9, because "the USPTO has already determined that the term 'the scooter store' is generic in the area of retail sales," *id.* at *6,[4] and because in TSS's opposition to SpinLife's partial summary judgment motion, "the only affirmative evidence TSS provide[d] to show that 'the scooter store' or

---

[4] As stated previously, a USPTO examiner found TSS's proposed mark for "THE SCOOTER STORE" to be a generic mark for retail sales.  The examiner's report reasons as follows:

> [T]he proposed mark appears to be generic as applied to the services and, therefore, incapable of identifying the applicant's services and distinguishing them from those of others. Case law holds that the term "store" is generic for retail services, and that, where an applicant combines the generic name of goods, such as "liquor" and the generic term "store," the resulting mark "liquor store," is generic for retail services selling those goods. The term "scooter" appears to be generic for motorized scooters such as those sold by the applicant. The applicant has merely added the generic term SCOOTER to the generic term STORE, resulting in the generic mark THE SCOOTER STORE.

*Id.* (quoting USPTO Action, Ref. No. T-5778, Exh. C to SpinLife's Motion for Partial Summary Judgment, Dkt. 99-3, at 1.); *see also Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) ("Generic marks are the weakest and not entitled to protection—they refer to a class of which an individual service is a member (e.g., 'liquor store' used in connection with the sale of liquor).").

The Court stated that "the considered determination by the PTO examiner, through multiple rounds of TSS's applications, that the mark 'scooter store' by itself is generic should be given 'appropriate consideration and due weight.'" *Id.* at *8 (quoting *GenDerm Corp. v. Ferndale Lab.*, 32 U.S.P.Q.2D (BNA) 1567, at * 15 (E.D. Mich. 1994) (additional citations omitted).

'scooter store' is not a generic phrase, apart from statements about the amount [TSS] spends on advertising its products, [was] the results from a database search in the BYU Corpora." *Id.* at *8.[5]  The BYU Corpora results, alone, were insufficient to create a triable issue that "scooter store" or "the scooter store" is a nongeneric phrase.  While the Court acknowledged the BYU Corpora data "is in the category of '[e]vidence of consumer recognition,' which can be 'relevant to assessing the strength of the mark,'" *id.* (quoting *Citizens Banking Corp. v. Citizens Fin. Group, Inc.*, 320 F. App'x 341, 347 (6th Cir. 2009)), it found that "a mere nine instances of the term 'scooter store' referring to TSS from one data search" does not create doubt as to whether the term is actually generic sufficient to satisfy TSS's burden to raise a genuine issue of material fact. *Id.*

Since TSS had provided insufficient evidence to create a triable issue fact as to whether "the scooter store" was not a generic phrase in the context of retail sales, there was no need for the Court to "proceed to the question of whether its use of the terms creates a likelihood of confusion with TSS's products or service." *Id.* at *10 (holding, "TSS's infringement and unfair competition claims based on 'likelihood of confusion' fail as a matter of law because SpinLife's Adword purchases and metadata uses are of generic terms").

On this Motion, TSS discloses a new expert report from Dr. Leonard which provides evidence suggesting that a majority of market-wide references to "the scooter store" are for TSS's goods and services.  Dr. Leonard has performed his own LexisNexis database research and analysis of the consumer public's association of the phrase "(The) Scooter Store."  His report

---

[5] The BYU Corpora evidence "consists of database search for the terms 'scooter store' in a single online 'corpus' of entries from various books and magazines. The search produced a mere nine resulting entries, all of which TSS alleges "have to do with" its company." *Id.*

states "the data indicate, with a high degree of certainty, that the predominant usage of (The)

Scooter Store is as a composite phrase to refer to [TSS's] The Scooter Store."   (Leonard Report,

Dkt. 144-1, p. 5.)[6]  Dr. Leonard concludes, based on these results, that "the mark The Scooter

Store is not generic," and rather, "depending on how it is being used, can be either descriptive

(e.g., for a store selling mobility products), suggestive (e.g., delivery of wheelchairs), or arbitrary

(e.g., for providing extended warranties)."  (*Id.* at p. 6.)  He "further conclude[s] that when the

mark is being used, as we see from LexisNexis, the vast majority of the public identifies the

Texas-based The Scooter Store as the source of those goods and services," thus, "the primary

significance of the term is as a brand indentifying [TSS's] company."  (*Id.*)

     Since Dr. Leonard's conclusions regarding consumer recognition and perception of

"(The) Scooter Store" are based solely on his LexisNexis database search, they are of dubious

methodological integrity and, thus, insufficient to create a genuine issue of material fact

necessary to defeat summary judgment.  Even if the conclusions had more substantial support,

however, they suffer from the same limited relevance as the BYU Corpora data analysis which

this Court already found insufficient to defeat summary judgment.  Dr. Leonard's report adds

little, if anything, of probative value to answer the ultimate question of whether SpinLife's usage

of the mark creates consumer confusion over the goods and services offered by the Plaintiffs and

Defendant.

---

[6] Dr. Leonard addresses the heightened distinctiveness of the composite, three-word phrase, opining that "[a]lthough 'scooter' may describe a class or group of things, when it is placed before another class or group of things, it is used adjectivally, not nominally, in the same way that 'container' is used adjectively in the brand 'The Container Store.'" (Leonard Report, p. 5.)

To determine whether there is a likelihood of confusion, federal courts in the Sixth

Circuit consider the following factors (the "*Frisch*'s factors," *see*):

> (1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the
> marks; (4) evidence of actual confusion; (5) marketing of channels used; (6)
> degree of purchaser care; (7) defendant's intent in selecting the mark; and (8)
> likelihood of expansion in selecting the mark.

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.

1982).  The Court's application of these eight factors is a flexible exercise, *see id.*, and "[n]ot all

of these factors will be relevant in every case."  *Id.* (citations omitted).   This Court has held that

"[t]o resist summary judgment on the issue of likelihood of confusion, the non-moving party

must establish . . . that there are genuine factual disputes concerning those of the *Frisch*'s factors

which may be material in the context of the specific case."  *Id.* (quoting *Homeowners Group,

Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991)).  In every case,

however, "'the ultimate question remains whether relevant consumers are likely to believe that

the products or services offered by the parties are affiliated in some way.'"  *Id.* (quoting *Therma–

Scan*, 295 F.3d at 630.)

Consideration of the *Frisch's* factors leads the Court to conclude that the additional

evidence in Dr. Leonard's report is legally insufficient to raise a genuine issue that SpinLife's

alleged uses of "the scooter store" create a likelihood of consumer confusion with respect to

TSS's products to infringe TSS's trademark rights.

First, on the question of the strength of the mark, which "focuses on the distinctiveness of

a mark and its recognition among the public," *Therma–Scan*, 295 F.3d at 631, Dr. Leonard

concludes that in the retail sale of mobile products, the composite mark "(The) Scooter Store is

at *most* "descriptive."  (Leonard Report, at 6.)   Thus, even by the definition of TSS's own

expert, the mark's strength is weak, and in a category which entitles it to protection only if it has acquired secondary meaning. *See Scooter Store*, 2011 WL 6415516, at *13 (stating that a "merely descriptive" can only command trademark protection if "it has acquired secondary meaning"). Dr. Leonard's report does not provide evidence that the term "The Scooter Store" has indeed acquired a secondary meaning. Moreover, Dr. Leonard's methods and analysis are far from entirely sound. His conclusion, for example, that "when the [(The Scooter Store] mark is being used . . . the vast majority of the public identifies the Texas based [TSS] The Scooter Store as the source of those goods and services," does not necessarily follow from the LexisNexis search data which is Dr. Leonard's sole factual basis.

The USPTO Trademark Trial and Appeal Board has held that even overwhelming results from these sorts of LexisNexis searches, without more, say nothing about the extent to which consumers associate the term with the plaintiff's business vis-à-vis any other. As the Board reasoned in *In re Greenliant Systems, Ltd.*:

> Applicant contends that "48 of 52 hits on an internet search of the term NANDRIVE (representing 92.3% of the hits) were references to Applicant, and that 132 of 132 references found in a LexisNexis search of the term NANDRIVE were to applicant (which represents 100% of the references found) . . . [and] is strong evidence that the public regards the term NANDRIVE as a trademark for Applicant's goods." We disagree.

> First, as indicated above, because applicant may be the only user of the compound term NANDRIVE, its internet and Lexis/Nexis hits are going to be heavily skewed to articles referencing applicant. Second, it is not clear to us how consumers will perceive the term NANDRIVE as used in the articles.

97 U.S.P.Q.2d 1078, 1084 (T.T.A.B. 2010) (finding, accordingly, "that the term NANDRIVE is generic when used in connection with 'electronic integrated circuits'"). Thus, as a matter of established trademark law, the relevance of Dr. Leonard's report is significantly

undercut by his methodological flaws, so similar to those in *In re Greenliant Systems, Ltd.*.[7] *See also Career Agents Network, Inc. v. www. careeragentsnetwork.biz*, Case No. 09–CV–12269–DT, 2010 WL 743053, at *14 (E.D. Mich. 2010) ("Under Lanham Act jurisprudence, it is irrelevant whether customers would be confused as to the origin of the websites, unless there is confusion as to the origin of the respective products.").

In short, Dr. Leonard's report does nothing to overcome this Court's previous finding on the first *Frisch's* factor, that TSS's trademark is simply too weak for the infringement claim to survive Defendant's Motion for Summary Judgment. For retail sales, the service for which Defendant uses the mark, there is still no evidence the mark is anything more than "merely descriptive." Thus, further examination of the other *Frisch* factors is unnecessary. *See Scooter Store*, 2011 WL 6415516, at *9, (holding, "because the Court finds that the disputed terms are generic, they are not protectable and cannot infringe TSS's "THE SCOOTER STORE" mark based on creating consumer confusion"). In fact, Dr. Leonard's report actually *reinforces* the Court's prior finding that the mark is not entitled to trademark protection. Since Dr. Leonard describes the mark as descriptive (though not "generic" as this Court previously found) it could only be protectable if it had acquired a secondary meaning. *See Bath & Body Works*, 76 F.3d at 748. There is no evidence in the record that "The Scooter Store" mark has acquired such a

---

[7] As this Court noted in *Safe Auto*, "courts generally hold that flaws in survey methodology go to the evidentiary weight of the survey rather than its admissibility," 2009 WL 3150328 at *2 (quoting *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F. Supp. 2d 772, 778 (W.D. Mich. 2006)), however, as affirmed by the Sixth Circuit, "[w]here a survey presented on the issue of actual confusion reflects methodological errors, a court may choose to limit the importance it accords the study in its likelihood of confusion analysis." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 518 (6th Cir. 2007); *see also Ashland Oil, Inc. v. Olymco, Inc.*, 1995 WL 499466, at *4 (6th Cir., Aug. 21, 1995) ("It is the trial court's responsibility to determine the probative value of a consumer survey, and it is appropriate for the trial court to accord little or no weight to a defective survey.").

secondary meaning.  Therefore, whether the mark is generic or descriptive, it is not protectable as a matter of law in the Sixth Circuit.

Although it is not necessary to review the other seven factors, having reaffirmed the generic or merely descriptive nature of the contested mark, it is worth noting that TSS has presented no evidence whatsoever with respect to the fourth *Frisch* factor, "evidence of actual confusion."  The Sixth Circuit has said that evidence of actual confusion is "undoubtedly the best evidence of likelihood of confusion." *Daddy's Junky Music Stores*, 109 F.3d at 283.  Evidence of actual consumer confusion would be highly relevant in this case, where TSS's central allegation is that SpinLife's actions cause internet consumers looking for TSS to be unknowingly and unintentionally misdirected to SpinLife's online scooter business instead.  TSS offers no explanation as to why it has failed to produce evidence of the primary harm it alleges.

In conclusion, the limited relevance and probative value of TSS's new evidence in Dr. Leonard's report is not sufficient for TSS to create a genuine issue of material fact as to whether the composite phrase, "the scooter store," is not generic or descriptive for the retail sale of scooters, as found both the USPTO and this Court have previously found.

### B.  SpinLife's Motion for Summary Judgment on TSS's State Anti-Dilution Claim

SpinLife renews its motion for summary judgment on TSS's remaining claim under Texas state law for trademark dilution.  TSS alleges that SpinLife's purchasing of the disputed Adword phrases containing "scooter" and "store" and uses of metadata containing the same dilute the distinctive quality of TSS's registered trademarks in violation of the Texas Business & Commerce Code § 16.29.  (*See* FAC, ¶¶ 104–05.)  In its December 21, 2011 Opinion and Order, the Court denied SpinLife's initial request for summary judgment on this claim because

19

"SpinLife did not address the 'likelihood of dilution' alleged by TSS."  *See Scooter Store*, 2011

WL 6415516, at *14.  SpinLife argues that TSS's dilution claim must fail for two reasons: (1)

the phrase "the scooter store" does not appear anywhere on SpinLife's website, or as an ad

heading or in metadata, and thus the alleged violating conduct has ceased; and (2) TSS cannot

prove that its marks are distinctive, as required for succeeding on its claim under § 16.29.

Texas's anti-dilution statute states, in pertinent part:

> A person may bring an action to enjoin an act likely to injure a business
> reputation or to dilute the distinctive quality of a mark registered under this
> chapter or Title 15, U.S.C., or a mark or trade name valid at common law,
> regardless of whether there is competition between the parties or confusion as to
> the source of goods or services.

Tex. Bus. & Com. Code § 16.29 (2012).[8]

Texas courts have described "trademark dilution" as "the gradual 'whittling away' of a

party's distinctive mark through unauthorized use by another."  *Horseshoe Bay Resort Sales Co.*

*v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 812 (Tex. App. Ct. 2001).  The

owner of a "distinctive mark" may obtain relief under the Texas anti-dilution statute if the

defendant's actions cause a "likelihood of dilution" due to either of the following:  "1) 'blurring,'

a diminution in the uniqueness and individuality of the mark, or 2) 'tarnishment,' an injury

resulting from another's use of the mark in a manner that tarnishes or appropriates the goodwill

and reputation associated with the plaintiff's mark."  *Exxon Corp. v. Oxxford Clothes, Inc.*, 109

F.3d 1070, 1081 (5th Cir. 1997).  The two theories, "[t]arnishment and dilution of

distinctiveness, although conceptually distinct, both undermine the selling power of a mark, the

---

[8] Section 16.29 states further, that, "[a]n injunction sought under this section shall be obtained pursuant to
Rule 680 et seq. of the Texas Rules of Civil Procedure."  Tex. Bus. & Com. Code § 16.29.

latter by disturbing the conditioned association of the mark with the prior user and the former by displacing positive with negative associations." *V Secret Catalogue, Inc. v. Moseley*, 605 F.3d 382, 386 n. 3 (6th Cir. 2010) (citations omitted).

The "Texas anti-dilution law requires [only] that the plaintiff establish 'an act *likely* to injure a business reputation or to dilute the distinctive quality of a mark.'" *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 489 n. 9 (5th Cir. 2004) (quoting Tex. Bus. & Com. Code § 16.29) (emphasis added). A showing of actual dilution is not necessary. As the language of the statute implies, however, the law does not provide for an award of damages. Hence, relief for trademark dilution under Texas law is limited to an injunction to remedy ongoing harm to the plaintiff's marks. *See id.* at 1081 ("Under section 16.29, a plaintiff may seek an injunction to remedy ongoing dilution of a protected trademark even if it is not in business competition with the defendant(s) and irrespective of the existence *vel non* of any likelihood of consumer confusion.").

### 1. SpinLife's Voluntary Cessation of its Use of the Challenged Phrase

SpinLife argues that TSS's requested injunctive relief is no longer necessary or possible. SpinLife acknowledges that when it launched its website in January, 2000, the phrase "the scooter store" appeared on the website in reference to SpinLife's scooter product line. (*See* Motion, Dkt. 143, p. 4.) Relying on sworn affidavits and deposition testimony of its CEO, Lisa Stein, SpinLife claims that it "*ended the phrase's appearance on its website in the mid-2000s— well before this lawsuit was filed—and the phrase has not appeared on its website since that time.*" (*Id*) (emphasis in the original); (Motion Exh. A, Stein Aff., Dkt. 143-1, ¶ 5) ("'The scooter store' does not appear anywhere on SpinLife's website and we have no intentions of

using 'the scooter store' on SpinLife's website in the future.").  In addition, SpinLife states that the phrase "the scooter store" has not appeared as a heading in SpinLife ads, or as a metatag related to SpinLife's website, since early 2009.  (*See* Motion, p. 3.)

TSS insists that although SpinLife may have ceased its use of the phrase "the scooter store" on its website and in search engines, TSS is nevertheless entitled to an injunction to ensure that SpinLife will not resume its use of "the scooter store" on its website in the future.  (*See* TSS Opp., Dkt. 149, pp. 2–3.)  TSS claims that Ms. Stein's deposition testimony is insufficient to provide the Court with a firm statement about when SpinLife ceased use of "the scooter store," and SpinLife's efforts in this litigation evidence its intention to resume use of "the scooter store" in the future.  TSS insists that for the purposes of this motion, the Court may "make a reasonable inference that SpinLife's use of TSS's THE SCOOTER STORE trademarks will recur."  (*Id.* at p. 4.)[9]

Neither party has deigned to file the relevant, relied-upon portions of Ms. Stein's deposition transcript on the record.  Nevertheless, TSS does not dispute SpinLife's assertion that it no longer uses, or permits the use of, the phrase "the scooter store" either in search database Adwords associated with SpinLife or within metadata.  An injunction to prevent any potential "likelihood of dilution" could only serve to prevent prospective harm in the event that SpinLife resumes using the contested phrase it has already once voluntarily agreed to cease using.

The fact that an injunction would be purely preventative in nature does not preclude the claim as a matter of law.  Prospective injunctive relief is appropriate in some cases, even where the defendant has ended the conduct complained of.  *See Friends of the Earth, Inc. v. Laidlaw*

---

[9] The Court notes that, in its opposition, TSS apparently acquiesces to limiting the scope of its dilution claim to

Case: 2:10-cv-00018-ALM-EPD Doc #: 152 Filed: 09/28/12 Page: 23 of 27 PAGEID #: 3174

*Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (holding, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice"). It is not difficult for a company to make changes to its website. Should TSS manage to prove a likelihood of dilution, an injunction would serve to ensure that its offending use of "the scooter store" conduct would not be repeated.

### 2. Whether TSS has Shown Provided Evidence to Support a Claim of Dilution

Secondly, SpinLife argues that TSS has failed to provide any evidence that its registered trademark for THE SCOOTER STORE is particularly "distinctive" in nature—a required prerequisite for proving anti-dilution claims. The Texas statute, like other state anti-dilution laws, is "'designed to protect only strong, well-recognized marks.'" *Exxon Corp.*, 109 F.3d at 1082 n. 14 (quoting *Accuride International, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1539 (9th Cir. 1989) (citations omitted)). To prove a likelihood of dilution, plaintiffs must show a heightened degree of distinctiveness than that required for a mark's protection under the Lanham Act's "likelihood of confusion" analysis. *See Advantage Rent-A-Car v. Enterprise Rent-A-Car*, 238 F.3d 378, 381 (5th Cir. 2001) (holding, "a somewhat stricter standard is to be applied in determining 'strength' in [a] dilution analysis than in [a] likelihood of confusion analysis").

TSS argues that because its registered trademarks enjoy a presumption of inherent distinctiveness, the burden is on SpinLife to prove that the mark is not distinctive, which it has no done. (Dlt. 149, at pp. 5–6.) Although TSS is correct that, for the purposes of standard trademark distinctiveness under the Lanham Act, a registered, incontestable trademark "is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong

---

SpinLife's use of the full phrase, "the scooter store," alone.

mark." *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 600 (6th Cir. 1991), "[t]he law governing dilution is independent from the law attendant to claims of trademark infringement." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 801 (6th Cir. 2004).

The Sixth Circuit has expressly held that "a finding that the mark was distinctive does not address the degree of distinctiveness, which is part of the test for determining whether the use of a junior mark causes dilution." *Id.* at 802; *see also Deere & Co. v. MTD Products, Inc.,* 41 F.3d 39, 42 (2d Cir. 1994) (holding, to prevail on dilution claim under New York law "a plaintiff must prove, first, that its trademark either is of truly distinctive quality or has acquired secondary meaning") (citation omitted). SpinLife's failure to adduce any specific evidence of THE SCOOTER STORE's distinctive quality in support of its claim of a likelihood of dilution augurs against TSS's ability to prove the claim, as a matter of law.

TSS has also failed to provide any evidence that SpinLife's alleged uses of "the scooter store" could support a finding of trademark dilution under either the "tarnishment" or "blurring" theory of recovery.  First, "blurring involves a diminution in the uniqueness or individuality of a mark because of its use *on unrelated goods*." *Scott Fetzer Co.*, 381 F.3d at 489 (emphasis added) (citing *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 670 n. 12 (5th Cir. 2000); 4 McCarthy on Trademarks and Unfair Competition § 24:68).  The challenged uses of its trademarks at issue in TSS's claim are SpinLife's prior internet Adword purchases and metadata tags of the phrase "the scooter store" embedded in websites.

There is no possibility of SpinLife's uses "blurring" TSS's marks, as blurring can only result from the defendant's unauthorized use of the mark "on unrelated goods."  *See id.*; *see also Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1567 (S.D. Tex. 1996) ("Dilution by

24

blurring occurs when customers or prospective customers . . . see the plaintiff's mark used on a plethora of different goods and services.") (citations omitted).  There is no allegation by TSS that SpinLife has used its marks on any unrelated goods—only that SpinLife used the phrase "the scooter store" in *hidden* places within websites and search engines to attract customers.  As customers cannot "see the plaintiff's mark" at all from SpinLife's challenged uses of the phrase, *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. at 1567, "blurring" is not an available theory of recovery to TSS for dilution.

TSS, similarly, has failed to provide any evidence of trademark dilution from SpinLife's actions through "tarnishing" of its registered marks.  Actionable trademark dilution from "tarnishing occurs when a trademark is 'linked to products of shoddy quality, or is *portrayed* in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'"  *Id.* (emphasis added) (quoting *Hormel Foods Corp. v. Jim Henson Productions*, 73 F.3d 497, 507 (2d Cir. 1996)) (additional citations omitted).   Tarnishing, like blurring, generally requires a showing that SpinLife used TSS's mark on its own goods, which is not alleged here.  *See John Paul Mitchell Systems and Ultimate Salon Services, Inc. v. Randalls Fod Markets, Inc.*, et al, 17 S.W.3d 721, 736-737 (Ct. App. Tx. 2000) (holding, "both forms of dilution . . . require that the defendant use the plaintiff's trademark on the defendant's own goods").

Even if, *arguendo*, SpinLife's actions could support a claim of dilution, TSS has failed even to make an argument that the evidence on record establishes dilution.  TSS does not address the required elements for proving dilution through either "blurring" or "tarnishing."
In sum, even if some meaningful injunctive relief is obtainable by TSS through its anti-dilution

claim, and even if TSS has provided sufficient evidence showing that its mark for THE
SCOOTER STORE is highly distinctive, its claim for dilution fails because neither theory of
recovery is applicable to TSS's challenged uses of its mark by SpinLife. As the non-movant,
TSS must "come forward with specific facts, supported by the evidence in the record, upon
which a reasonable jury could find in its favor." *See Anderson v. Liberty Lobby*, 477 U.S. 242,
252 (1986). TSS has failed to provide such specific facts in support of its dilution claim, and as
such that claim must fail as a matter of law.

## V. CONCLUSION

TSS's asserted grounds for amending the Court's December 21, 2011 Opinion and Order
fail to warrant reconsideration of the Court's decisions rendered therein. TSS's Motion for
Reconsideration is **DENIED**, and the Court's rulings in its December 21, 2011 Opinion and
Order granting SpinLife's motion for partial summary judgment, in part, remain unchanged. The
Court makes no determination regarding the validity of TSS's registered trademarks of THE
SCOOTER STORE, but finds that TSS' has failed to create any genuine issue of material fact
sufficient to proceed on its asserted claims of trademark infringement in this lawsuit for
SpinLife's alleged uses of the composite phrase, "the scooter store," in internet Adwords and
website metadata.

SpinLife's Motion for Summary Judgment on TSS's Remaining Claim for Trademark
Dilution based on Texas Business & Commerce Code § 16.29 is hereby **GRANTED**. TSS's

sole remaining claim against SpinLife, for trademark dilution under Texas state law, is

**DISMISSED**.

     **IT IS SO ORDERED.**

                                                      **___s/Algenon L. Marbley_____**
                                                      **ALGENON L. MARBLEY**
                                                      **UNITED STATES DISTRICT JUDGE**

**DATED: September 28, 2012**